IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MANUEL YSASI,

    Plaintiff,

vs.                                                                                                   No. CIV 13-0183 JB/CG

DEPUTY SHERIFF KELLY BROWN, and
DEPUTY SHERIFF CHRIS RIDER,
individually and in their official capacities
as Deputy Sheriffs of Lea County, New Mexico,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on (i) the Plaintiff's Requested Voir Dire Examination, filed February 14, 2014 (Doc. 62)("Requested Voir Dire"); and (ii) the Defendants' Objections to Plaintiff's Proposed Voir Dire, filed February 14, 2014 (Doc. 65)("Objections"). The Court held a hearing on February 18, 2014. The primary issue is whether the Court should permit Plaintiff Manuel Ysasi in voir dire to ask the prospective jurors: "Are any of you opposed to granting recovery of punitive damages if the conduct of the officer violates the Constitution of the United States?" Requested Voir Dire ¶ 5, at 1. The Court will allow Ysasi to ask his requested voir dire questions with the exception of the question about punitive damages, which the Court will allow in a redrafted form.

## FACTUAL BACKGROUND

The Court has previously explained the facts and circumstances that Ysasi asserts give rise to this case. See Memorandum Opinion and Order, filed February 28, 2014 (Doc. 89)("MOO"). On February 25, 2010, Defendants Deputy Sheriff Kelly Brown and Deputy Sheriff Chris Rider arrived at Ysasi's property in Hobbs, New Mexico, in response to a 911 call

requesting assistance in recovering personal property.  The caller's sister was Heather Thompson, Ysasi's girlfriend.  While Brown and Rider were outside Ysasi's property, Ysasi exited the mobile home, and began yelling profanities at Thompson, Brown, and Rider, and asking why they were at his property.  A heated verbal exchange ensued between Ysasi, Brown, and Rider.  Rider climbed a gate to enter the property and approached Ysasi, who was standing on the porch of the mobile home.  What happened next is disputed; Ysasi asserts that Rider pulled Ysasi off the porch, that Ysasi fell on top of Rider, that Ysasi wrapped his arms around Rider but did not strike Rider, and that Rider began hitting Ysasi with his fists, but the Defendants assert that, when Rider approached Ysasi, Ysasi lunged from the porch at Rider, and both men fell to the ground and scuffled.  Brown entered the property to help Rider handcuff Ysasi, and Rider deployed a Taser on Ysasi several times.

A Criminal Complaint was filed in Lea County Magistrate Court with charges of Battery upon a Peace Officer, Resisting/Evading/Obstructing an Officer, and Concealing Identity.  At a preliminary hearing, the Magistrate Judge found probable cause to support the criminal charges; a New Mexico district attorney entered a *nolle prosequi*, and the case was dismissed on September 27, 2010.

## PROCEDURAL BACKGROUND

On February 25, 2013, Ysasi filed suit against Brown, Rider, and Defendant Lea County Detention Center for "false arrest, unreasonable and excessive use of force against the person of the Plaintiff, failure to provide necessary and adequate medical care while in custody, and abuse of process when Deputies of the Lea County Sheriff's Department took him into custody." Complaint at 1.  After the Court granted in part and denied in part the Defendants' Motion for Partial Summary Judgment, filed December 16, 2013 (Doc. 43)("MSJ"), Ysasi's remaining

claims are that Rider and Brown unlawfully entered Ysasi's property in violation of the Fourth Amendment and that they used excessive force on Ysasi in violation of the Fourth Amendment.

Ysasi submits a list of questions he intends to ask during voir dire; one of the questions asks: "Are any of you opposed to granting recovery of punitive damages if the conduct of the officer violates the Constitution of the United States?"  Requested Voir Dire ¶ 5, at 1.  The Defendants object that Ysasi's question "misstates applicable law as to the imposition of punitive damages.  It would not be sufficient for the plaintiff to prove only that the conduct of an officer violates the Constitution for punitive damages to be awarded."  Objections at 1.

At the hearing, the Court suggested that Ysasi could state that the Court will give the jury instructions on punitive damages, and, if it is appropriate under those instructions to grant punitive damages, whether anyone is opposed to granting punitive damages if the conduct violates the Constitution.  Transcript of Trial at 2:4-11 (Court), taken February 18, 2014 ("Tr.").[1]  Ysasi and the Defendants agreed to that modification.  See Tr. at 2:12-18 (Court, Blenden, Childress).  The Court sustained the objection, but said it would allow the question as modified.  See Tr. at 2:19-21 (Court).

## LAW REGARDING JURY SELECTION

"To be meaningful, the adequacy of voir dire examination must allow a party an opportunity to make reasonably intelligent use of peremptory challenges and challenges for cause."  Lowery v. City of Albuquerque, No. 09-0457, 2012 WL 1372273, at 4 (D.N.M. Apr. 11, 2012)(Browning, J.)(citing United States v. Rucker, 557 F.2d 1046, 1049 (4th Cir. 1977)).  "[V]oir dire is within the sound discretion of the trial court, and the court's exercise of that

---

[1] The Court's citations to the Transcript of Hearing and the Transcript of Trial, taken February 19, 2014 (Trial Tr."), refer to the court reporter's original, unedited versions.  Any final transcripts may contain slightly different page and/or line numbers.

discretion will not be disturbed, absent a clear showing of abuse." United States v. Whitt, 718 F.2d 1494, 1497 (10th Cir. 1983). See United States v. Gibbons, 607 F.2d 1320, 1330 (10th Cir. 1979)("The trial court has broad discretion in conducting the voir dire examination."). "[D]istrict courts have broad discretion in fashioning the method of exercising peremptory challenges, and the jury selection procedure in general." United States v. Morris, 623 F.2d 145, 151 (10th Cir. 1980).

## RELEVANT LAW REGARDING PUNITIVE DAMAGES

Although the statute does not provide language of punitive damages for § 1983 claims, the Supreme Court looked to the common law of torts in holding that punitive damages are available. See Saavedra v. Lowe's Home Ctrs., Inc., 748 F. Supp.2d 1273, 1298 n.3 (D.N.M. 2010)(Browning J.)("Section 1983 'was intended to create a species of tort liability in favor of persons deprived of federally secured rights.'")(quoting Smith v. Wade, 461 U.S. 30, 56 (1983)). See also Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 306 (1986)(stating that the amount of the recovery in a § 1983 action is not capped by statute but rather "ordinarily determined according to principles derived from the common law of torts"). The Supreme Court concluded that there is "no reason why a person whose federally guaranteed rights have been violated should be granted a more restrictive remedy than a person asserting an ordinary tort cause of action." Smith v. Wade, 461 U.S. at 48-49. Accordingly, the Supreme Court looked to state and federal tort common law, holding that "a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. at 56. See Youren v. Tintic Sch. Dist., 343 F.3d 1296, 1308 (10th Cir. 2003)("Unquestionably, punitive damages are available in § 1983

actions and are to be awarded only when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.")(quoting Jolivet v. Deland, 966 F.2d 573, 577 (10th Cir.1992))(internal quotations and alterations omitted).  The Tenth Circuit has defined the recklessness standard as a defendant acting "in the face of a perceived risk that its actions will violate federal law to be liable in punitive damages."  Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 536 (1999).  The appropriate focus in awarding punitive damages "must be on whether the defendant's actions call for 'deterrence and punishment over and above that provided by compensatory damages.'"  Youren v. Tintic Sch. Dist., 343 F.3d at 1308 (quoting Smith v. Wade, 461 U.S. at 54).

## ANALYSIS

The Court will sustain the MIL for Ysasi's proposed question -- "[a]re any of you opposed to granting recovery of punitive damages if the conduct of the officer violates the Constitution of the United States?"  Proposed Voir Dire ¶ 5, at 1.  This question, as the Defendants correctly point out, misstates the applicability of punitive damages.  Punitive damages are available for § 1983 claims, but Ysasi must prove more than that the Defendants violated the Constitution; Ysasi must prove that the Defendants acted with malice or willfulness, or with reckless indifference to the safety or rights of others.  See Smith v. Wade, 461 U.S. at 56 ("We hold that a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.").

The Court will allow Ysasi to tell the jury panel that the Court will give the jury instructions on punitive damages and then ask, if it is appropriate to grant punitive damages,

whether anyone is opposed to granting punitive damages. As modified, this question allows Ysasi to gauge the jury panel members' feelings regarding punitive damages and gets to the heart of what Ysasi wants to know -- whether anyone is opposed to granting punitive damages, even if the law allows punitive damages -- without getting caught in detailed discussions of the legal standards, because it makes the jury panel aware that the Court will later instruct them on the standards for awarding punitive damages. Instruction No. 18 of the Court's Final Jury Instructions (Given)(without citations), filed February 19, 2014 (Doc. 86)("Final Jury Instructions"), provides the jury with the correct legal standard on punitive damages -- that Ysasi must prove that the Defendants "acted with malice or willfulness, or with reckless indifference to the safety or rights of others," and explains the purpose of punitive damages:

> You may consider punitive damages only if you find that Mr. Ysasi should recover compensatory or nominal damages. You may award punitive damages if the Mr. Ysasi has proved that Mr. Brown and/or Mr. Rider acted with malice or willfulness, or with reckless indifference to the safety or rights of others. Malicious conduct is the intentional doing of an act with knowledge that the act was wrongful. Willful conduct is the intentional doing of an act with knowledge that harm may result. Reckless conduct is the intentional doing of an act with utter indifference to the consequences.
> Punitive damages are awarded for the limited purpose of punishment and to deter others from the commission of like offenses. The law does not require you to award punitive damages, however, if you decide to award punitive damages, you must use sound reason in setting the amount of the damages. The amount of punitive damages must be based on reason and justice taking into account all the circumstances, including the nature of the wrong and such aggravating and mitigating circumstances as may be shown. The amount of an award of punitive damages must not reflect bias, prejudice, or sympathy toward any party. The amount awarded, if any, must be reasonable and not disproportionate to the circumstances.

Final Jury Instructions at 23. The Court will allow Ysasi to ask the jury panel the question regarding punitive damages as modified.

**IT IS ORDERED** that the Defendants' Objections to Plaintiff's Proposed Voir Dire, filed February 14, 2014 (Doc. 65), are sustained, and the Plaintiff's Requested Voir Dire

- 7 -

Examination, filed February 14, 2014 (Doc. 62), are modified so that the Plaintiff Manuel Ysasi may state to the jury panel that the Court will instruct the jury on punitive damages, and then ask whether, if punitive damages are appropriate under the instructions, anyone is opposed to granting punitive damages.

                                                         _____
                                                        UNITED STATES DISTRICT JUDGE

*Counsel*:

Jon C. Fredlund
Fredlund & Bryan
Hobbs, New Mexico

--and--

Max Houston Proctor
Hobbs, New Mexico

--and--

Dick A. Blenden
Blenden Law Firm, P.A.
Carlsbad, New Mexico

    *Attorneys for the Plaintiff*

Ronald J. Childress
Elaine R. Dailey
Klecan & Childress
Albuquerque, New Mexico

    *Attorneys for the Defendants*