IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MANUEL YSASI,

      Plaintiff,

vs.                                                                                                               No. CIV 13-0183 JB/CG

DEPUTY SHERIFF KELLY BROWN,
DEPUTY SHERIFF CHRIS RIDER,
individually and in their official capacities
as Deputy Sheriffs of Lea County, New Mexico
and the LEA COUNTY DETENTION CENTER,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Motion in Limine to Exclude Certain Testimony of William Flynn, filed February 11, 2014 (Doc. 59)("MIL").  The Court held a hearing on February 13, 2014.  The primary issue is whether the Court should exclude certain testimony from William Flynn, an expert in police procedure and techniques.  The Court will grant the MIL in part and deny it in part.  Flynn may testify about things that are uniquely in his experience and training as a police officer, such as how a Taser works or specific techniques police officers may use.  He may not testify whether he thinks Defendants Deputy Sheriff Kelly Brown or Deputy Sheriff Chris Rider violated Standard Operating Procedures ("SOPs") for police officers, because such testimony is irrelevant to whether Brown or Rider violated Plaintiff Manuel Ysasi's constitutional rights.  Flynn may not testify to his opinions on issues that are within the jury's common knowledge and experiences, and may not make legal statements regarding whether Rider or Brown had probable cause to enter Ysasi's property or whether they violated Ysasi's constitutional rights.

**FACTUAL BACKGROUND**

The Court has previously explained the facts and circumstances that Ysasi asserts give rise to this case.  See Memorandum Opinion and Order, filed February 28, 2014 (Doc. 89)("MOO").  On February 25, 2010, Defendants Deputy Sheriff Kelly Brown and Deputy Sheriff Chris Rider arrived at Ysasi's property in Hobbs, New Mexico, in response to a 911 call requesting assistance in recovering personal property.  The caller's sister was Heather Thompson, Ysasi's girlfriend.  While Brown and Rider were outside Ysasi's property, Ysasi exited the mobile home, and began yelling profanities at Thompson, Brown, and Rider, and asking why they were at his property.  A heated verbal exchange ensued between Ysasi, Brown, and Rider.  Rider climbed a gate to enter the property and approached Ysasi, who was standing on the porch of the mobile home.  What happened next is disputed; Ysasi asserts that Rider pulled Ysasi off the porch, that Ysasi fell on top of Rider, that Ysasi wrapped his arms around Rider but did not strike Rider, and that Rider began hitting Ysasi with his fists, but the Defendants assert that, when Rider approached Ysasi, Ysasi lunged from the porch at Rider, and both men fell to the ground and scuffled.  Brown entered the property to help Rider handcuff Ysasi, and Rider deployed a Taser on Ysasi several times.

A Criminal Complaint was filed in Lea County Magistrate Court with charges of Battery upon a Peace Officer, Resisting/Evading/Obstructing an Officer, and Concealing Identity.  At a preliminary hearing, the Magistrate Judge found probable cause to support the criminal charges; a New Mexico district attorney entered a *nolle prosequi*, and the case was dismissed on September 27, 2010.

**PROCEDURAL BACKGROUND**

On February 25, 2013, Ysasi filed suit against Brown, Rider, and Defendant Lea County

Detention Center for "false arrest, unreasonable and excessive use of force against the person of the Plaintiff, failure to provide necessary and adequate medical care while in custody, and abuse of process when Deputies of the Lea County Sheriff's Department took him into custody." Complaint at 1. After the Court granted in part and denied in part the Defendants' Motion for Partial Summary Judgment, filed December 16, 2013 (Doc. 43)("MSJ"), Ysasi's remaining claims are that Rider and Brown unlawfully entered Ysasi's property in violation of the Fourth Amendment and that they used excessive force on Ysasi in violation of the Fourth Amendment.

The Defendants explain that Ysasi has retained Flynn as "'a police practices and procedures expert' to offer opinions as to the conduct of the defendant deputies"; the Defendants move the Court to exclude part of Flynn's testimony. MIL at 3. The Defendants argue that "there is some question in general as to the qualifications of an expert offered as a 'police procedures' expert" and that a "purported police procedures expert must have special expertise in the specific area of conduct at issue." MIL at 4 (citing Berry v. City of Detroit, 25 F.3d 1342, 1352 (6th Cir. 1994)(stating that "there is no such 'field' as 'police policies and practices,'" and that any witness "may be allowed to opine based on observation and experience if a proper foundation is laid); Livingstone v. N. Belle Vernon Borough, 91 F.3d 515, 538 n.41 (3rd Cir. 1996)(noting the authority "suggesting that the qualifications of experts on police practices should be subjected to close scrutiny")). The Defendants take issue with Flynn offering testimony "as to every aspect of the deputies' conduct, beginning with how the deputies should have interpreted the dispatch report to how they should have reacted to the Plaintiff's behavior," because they assert that "there is certainly no indication that he is an expert in every aspect of police procedure." MIL at 4. In the Defendants' view, Flynn admitted that some of his opinions are not based on his expertise, because Flynn said "that the handling of a police 'stand by' or

- 3 -

'keep the peace' call is not 'rocket science.'" MIL at 4-5 (quoting Deposition of William Flynn at 29-30, taken October 18, 2013, filed February 11, 2014 (Doc. 59-1)("Flynn Depo.")). Further, the Defendants point out that Flynn admitted to not being "'an expert in self-defense,'" yet he opines that two officers should have been able to restrain one individual without the need for a Taser. MIL at 5 (quoting Flynn Depo. at 49-50). "Basically, then, Mr. Flynn merely proposes a '2 against 1' theory. Such a theory is not based on any expertise. The jury is capable of looking at the evidence and drawing its own conclusions as to a '2 against 1' proposition." MIL at 5. The Defendants also point out that, although admitting that he was relying only on the Police Video -- on which the struggle can be heard but not seen -- Flynn asserts that "'it's more likely than unlikely that Deputy Rider was the aggressor' in the altercation because Deputy Rider opted to climb the fence." MIL at 5 (quoting Flynn Depo. at 50-51). In the Defendants' view, Flynn's testimony on this issue improperly usurps the role of the jury, because the "jury can look at the evidence and draw its own conclusion about who was the aggressor in the altercation." MIL at 5.

The Defendants argue Flynn, at times, oversteps his expertise and "offers opinions that are clearly beyond the province of police procedures." MIL at 6. For example, Flynn says that he thinks that alcohol would not be a factor if an individual continued to fight after he was tased once; the Defendants argue that "Flynn is not a medical expert and should be precluded from giving such opinions." MIL at 6. The Defendants also take issue with Flynn's attempt to testify that Brown and Rider violated Ysasi's constitutional rights; they explain that Flynn said he will testify that Rider did not have probable cause to go onto Ysasi's property and that Rider violated Ysasi's Fourth Amendment rights. See MIL at 6. "While Mr. Flynn's factual conclusions usurp the role of the jury, his legal opinions usurp the role of the Court." MIL at 6.

Ysasi did not file a response; at the hearing, Ysasi said he opposes the MIL. See Transcript of Hearing at 83:16-22 (Court, Blenden), taken February 13, 2014 ("Tr.").[1] Ysasi said that he would "not attempt to elicit a statement from Mr. Flynn that [Brown and Rider] violated his Fourth Amendment" rights, because such a statement would be "a conclusion statement that he probably can't give," but that he intended for Flynn to testify that Brown and Rider entered Ysasi's property without probable cause, and that "a reasonable officer would not have done that." Tr. at 83:25-84:8 (Blenden). The Court said that it has dealt with similar types of witnesses in the past and that it has tended to "clip their wings pretty tightly." Tr. at 84:9-11 (Court). The Court said it would not exclude Flynn's testimony entirely, but it would not permit Flynn to say that there was a constitutional violation or that there was not probable cause. See Tr. at 84:11-17 (Court). The Court said that the United States Court of Appeals for the Tenth Circuit has circumscribed the admissibility of Standard Operating Procedures (SOPs), so the Court said it would not permit Flynn to state specific police practices and procedures, and then say that Brown and Rider did not comply with those practices and procedures, but that Flynn could testify as to specific techniques. See Tr. at 84:18-85:7 (Court). The Court said that Flynn could not testify that Brown and Rider should have been able to restrain one individual without the need for a Taser, because the Court was skeptical as to how Flynn would know that was true in this case. See Tr. at 85:8-16 (Court). The Court said that it would permit Flynn to talk about what a Taser is and what it does, and that he could demonstrate techniques, such as certain holds, or explain other aspects of police work that a lay citizen would not know. See Tr. at 86:10-16 (Court). The Court asked the Defendants if it had addressed their concerns, and they said that it

---

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcripts may contain slightly different page and/or line numbers.

had, noting that any remaining issues could be addressed during the trial during Flynn's testimony. See Tr. at 86:16-25 (Court, Childress). Ysasi argued that Flynn is entitled to testify, based on his experience, training, education, and thirty-five years as a police officer, whether it was reasonable under the circumstances for Brown and Rider to go onto Ysasi's property; the Court said that issue would be a legal question and that it would not permit Flynn to testify whether the entry was reasonable. See Tr. at 87:6-16 (Blenden, Court).

## **LAW REGARDING EXPERT TESTIMONY**

"Since the Supreme Court of the United States decided Daubert v. Merrell Dow Pharmaceuticals, Inc., trial courts have had the responsibility to make certain that proffered experts will assist the jury in understanding the evidence and in determining the factual issues it must decide." United States v. Gutierrez-Castro, 805 F. Supp. 2d 1218, 1224 (D.N.M. 2011)(Browning, J.). "The Court now must not only decide whether the expert is qualified to testify, but, under Daubert v. Merrell Dow Pharmaceuticals, Inc., whether the opinion testimony is the product of a reliable methodology." United States v. Gutierrez-Castro, 805 F. Supp. 2d at 1224. "Daubert v. Merrell Dow Pharmaceuticals, Inc. requires a court to scrutinize the proffered expert's reasoning to determine if that reasoning is sound." United States v. Gutierrez-Castro, 805 F. Supp. 2d at 1224.

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

   **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

   **(b)** the testimony is based on sufficient facts or data;

>   **(c)** the testimony is the product of reliable principles and methods; and
>
>   **(d)** the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  Rule 702 thus requires the trial court to "determine whether the expert is proposing to testify to (1) scientific, technical, or other specialized knowledge that (2) will assist the trier of fact to understand or determine a fact in issue."  United States v. Muldrow, 19 F.3d 1332, 1337 (10th Cir. 1994).  Rule 702 uses a liberal definition of "expert."  Fed. R. Evid. 702 advisory committee's note to 1972 proposed rules ("[W]ithin the scope of this rule are not only experts in the strictest sense of the word, e.g. physicians, physicists, and architects, but also the large group sometimes called 'skilled' witnesses, such as bankers or landowners testifying to land values.").  An expert is "required to possess such skill, experience or knowledge in that particular field as to make it appear that his opinion would rest on substantial foundation and would tend to aid the trier of fact in his search for truth."  LifeWise Master Funding v. Telebank, 374 F.3d 917, 928 (10th Cir. 2004).  The proponent of expert testimony has the burden of establishing by a preponderance of the evidence that the pertinent admissibility requirements are met.  See Morales v. E.D. Etnyre & Co., 382 F. Supp. 2d 1252, 1266 (D.N.M. 2005)(Browning, J.)(citing Bourjaily v. United States, 483 U.S. 171, 175 (1987)).  Once the trial court has determined that expert testimony would be helpful to the trier of fact, a witness "may qualify as an expert by knowledge, skill, experience, training, or education and . . . the expert . . . should not be required to satisfy an overly narrow test of his own qualifications."  Gardner v. Gen. Motors Corp., 507 F.2d 525, 528 (10th Cir. 1974)(internal quotation marks omitted).  Courts should, under the Federal Rules of Evidence, liberally admit expert testimony, see United States v. Gomez, 67 F.3d 1515, 1526 (10th Cir. 1995)(describing rule 702 as a "liberal standard"), and

the trial court has broad discretion in deciding whether to admit or exclude expert testimony, see Werth v. Makita Elec. Works, Ltd., 950 F.2d 643, 647 (10th Cir. 1991)(noting the trial court's decision will not be overturned "unless it is manifestly erroneous or an abuse of discretion").

### **RELEVANT LAW REGARDING SOPS IN CIVIL RIGHTS CASES**

In Whren v. United States, 517 U.S. 806 (1996), the Supreme Court of the United States examined the application of SOPs to traffic-stop cases as a method by which a court could determine if an officer made a pretextual stop. See 517 U.S. at 813-14. In concluding that the Fourth Amendment's reasonableness requirement "allows certain actions to be taken in certain circumstances, whatever the subjective intent," the Supreme Court stated:

> Indeed, it seems to us somewhat easier to figure out the intent of an individual officer than to plumb the collective consciousness of law enforcement in order to determine whether a "reasonable officer" would have moved to act upon a traffic violation. While police manuals and standard procedures may sometimes provide objective assistance, ordinarily one would be reduced to speculating about the hypothetical reaction of a hypothetical constable -- an exercise that might be called virtual subjectivity.
>
> Moreover, police enforcement practices, even if they could be practically assessed by a judge, vary from place to place and time to time. We cannot accept that the search and seizure protections of the Fourth Amendment are so variable and can be turned upon trivialities.

517 U.S. at 815 (citations omitted). See United States v. Botero-Ospina, 71 F.3d 783, 787-88 (10th Cir. 1995), cert. denied, 518 U.S. 1007 (1999).

The Supreme Court has stated that "[o]fficials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provisions." Davis v. Scherer, 468 U.S. 183, 194 (1984)(footnote omitted). Consistent with other circuit courts, the Tenth Circuit holds that the violation of state law and SOPs will not turn an otherwise constitutional use of force into a violation of § 1983. See

Tanberg v. Sholtis, 401 F.3d at 1167 ("Even if [the defendant officer] violated the SOPs, this violation would not create a violation of a clearly established constitutional right ex nihilo.")(McConnell, J.); Medina v. Cram, 252 F.3d 1124, 1133 (10th Cir. 2001)(excluding expert affidavit which stated that the "officers' use of force did not conform with accepted police guidelines and practices," because "claims based on violations of state law and police procedure are not actionable under § 1983")(Tacha, J.); Romero v. Bd. of Cnty. Comm'rs of Cnty. Lake, 60 F.3d 702, 704 (10th Cir. 1995)("[V]iolations of state law and police procedure generally do not give rise to a § 1983 claim.")(citations omitted)(Anderson, J.). See also Greenridge v. Ruffin, 927 F.2d 789, 792 (4th Cir. 1991)(upholding the trial court's decision to exclude officer's failure to follow standard arrest procedures, because it was not relevant to whether the officer acted reasonably in using force); Diaz v. Salazar, 924 F. Supp. 1088, 1097 (D.N.M. 1996)(Hansen, J.)("The fact that their conduct may not have conformed with police regulations or training does not operate to create constitutional liability under Section 1983.").

The clearly established law also does not permit a plaintiff to establish a constitutional violation with evidence that the officers violated SOPs. The clearly established law requires the exclusion of any evidence regarding the violation of SOPs, because such evidence is irrelevant to the Fourth-Amendment inquiry. In Tanberg v. Sholtis, Judge McConnell discussed the propriety of admitting SOPs as evidence of a constitutional violation in an excessive-force, and an assault-and-battery, case. The Tenth Circuit held that the proffered SOP was irrelevant to the issues in the case:

> In the exclusionary rule context, the Supreme Court has rejected the use of local police regulations as a standard for evaluating constitutionality of police conduct, on the ground that such a "basis of invalidation would not apply in jurisdictions that had a different practice." Whren v. United States, 517 U.S. 806, 815 (1996). That logic would seem to apply equally to damage suits under § 1983. This Court

- 9 -

> has consistently held that the violation of police regulations is insufficient to ground a § 1983 action for excessive force.  Marquez v. City of Albuquerque, 399 F.3d 1216 (10th Cir. 2005); Medina[ v. Cram], 252 F.3d at 1133; Romero v. Board of County Com[m]'rs of County of Lake, State of Colo., 60 F.3d 702, 705 (10th Cir. 1995) . . .   That an arrest violated police department procedures does not make it more or less likely that the arrest implicates the Fourth Amendment, and evidence of the violation is therefore irrelevant.  If Officer Sholtis violated the SOP governing the use of force in effecting arrest, that fact might well be pertinent to the Albuquerque Police Department's future decisions to promote, retain, or discipline him; it is not relevant to determining if Plaintiff's arrest violated the reasonableness requirement of the Fourth Amendment.

Tanberg v. Sholtis, 401 F.3d at 1163-64.  As the Tenth Circuit explained:

> Although plaintiffs frequently wish to use administrative standards, like the Albuquerque SOPs, to support constitutional damages claims, this could disserve the objective of protecting civil liberties.  Modern police departments are able -- and often willing -- to use administrative measures such as reprimands, salary adjustments, and promotions to encourage a high standard of public service, in excess of the federal constitutional minima.  If courts treated these administrative standards as evidence of constitutional violations in damages actions under § 1983, this would create a disincentive to adopt progressive standards.  Thus, we decline Plaintiffs' invitation here to use the Albuquerque Police Department's operating procedures as evidence of the constitutional standard.

401 F.3d at 1164.

In Medina v. Cram, the Honorable Deanell Reece Tacha, then Chief Judge for the Tenth Circuit, reviewed the relevance of SOPs to a Fourth-Amendment excessive-force claim.  The police responded to a call regarding Medina's refusal to return to jail on a bail bond violation and statement that he was armed with a gun.  See 252 F.3d at 1126.  After their arrival, the police tried to convince Medina to leave his house peacefully.  See 252 F.3d at 1126.  Instead, Medina told the officers that he needed more time, was suicidal, and was armed with a handgun.  See 252 F.3d at 1126.  Ultimately, Medina "emerged from the house with his left hand in a cup and his right hand wrapped in a towel concealing a staple gun, which Mr. Medina intended as a representation of a weapon."  252 F.3d at 1126.  Although ordered to stop, Medina "walked"

toward and onto the street.  252 F.3d at 1126.  The officers' use of bean-bag rounds did not stop Medina's movement.  See 252 F.3d at 1126.  After the bean-bag rounds failed to stop Medina, "an officer released an attack dog, which bit [Medina] and released, returning to the officer." 252 F.3d at 1126.  The "attack dog was released a second time," causing Medina to drop to the ground and expose the staple gun.  252 F.3d at 1126.  As he dropped to the ground, Medina pointed the staple gun in the direction of other officers.  See 252 F.3d at 1126.  Two officers shot Medina five times.  See 252 F.3d at 1126.

In response to the officers' assertion of qualified immunity, Medina submitted an affidavit of an expert who opined that the officers' use of force did not conform with accepted police guidelines and practices, and was therefore excessive.  See 252 F.3d at 1126.  The expert's affidavit did not persuade the Tenth Circuit:

> We have, of course, recognized that claims based on violations of state law and police procedure are not actionable under § 1983.  Romero, 60 F.3d at 705 (state law and police procedure); Wilson[v. Meeks, 52 F.3d 1547, 1554 (10th Cir. 1995), abrogated on other grounds by Saucier v. Katz, 533 U.S. 194 (2001)] (police department regulation); see also Davis v. Scherer, 468 U.S. 183, 194-96 (1984)(rejecting the argument that § 1983 liability may be based solely on a violation of a state statute or regulation).

252 F.3d at 1133.

In the cases in which the Court has addressed this issue, most, and all recent, cases have ruled that evidence regarding the violation of police procedure is not admissible in a § 1983 excessive force case.  See Solis-Marrufo v. Bd. of Comm'rs, No. CIV 11-0107 JB/KGM, 2013 WL 1658278, at *20 (D.N.M. March 29, 2013)(Browning, J.)(refusing to permit the plaintiffs to introduce violations of the SOPs to test the defendants' credibility, because doing so would circumvent the Tenth Circuit's rationale in excluding SOPs in excessive force cases to show a Constitutional violation); Montoya v. Sheldon, No. CIV 10-0360 JB/WDS, 2012 WL 5476882,

at *9-10 (D.N.M. Oct. 31, 2012)(Browning, J.)(excluding evidence that defendants violated SOPs, where plaintiffs sought to introduce the violations for the "jury to put into context and fully understand the significance of the Defendants' actions in detaining, arresting, charging and prosecuting Plaintiffs," and not to show that the Defendants' actions were unreasonable, because the Plaintiffs "hope the jury will use the APD SOPs to find that Sheldon and Lovato did not conform their conduct to the SOPs, and thus acted unreasonably under the circumstances"); Mata v. City of Farmington, 798 F. Supp. 2d 1215, 1219 (D.N.M. 2011)(Browning, J.)(excluding, under rule 402, "evidence that the Defendant Officers did not follow SOPs and police training, because this evidence is not relevant"); Jonas v. Bd. of Comm'rs of Luna Cnty., 699 F. Supp. 2d 1284, 1299 (D.N.M. 2010)(Browning, J.)("The clearly established law also does not permit a plaintiff to establish a constitutional violation with evidence that the officers violated SOPs and their training."); Vondrak v. City of Las Cruces, No. CIV 05-0172 JB/LAM, 2009 WL 3241555, at *14 (D.N.M. Aug. 25, 2009)(Browning, J.)(concluding that "expert testimony that refers to SOPs or other established law-enforcement standards" was inadmissible under Tenth Circuit precedent); Chamberlin v. City of Albuquerque, No. CIV 02-0603 JB/ACT, 2005 WL 2313527, at *4 (D.N.M. July 31, 2005)(Browning, J.)("[U]nder United States v. Marquez and Tanberg v. Sholtis, evidence of the SOPs is irrelevant to whether [defendant officer] acted objectively reasonably. Accordingly, the Court will preclude [plaintiff] from offering testimony or evidence about SOPs on his § 1983 claim.").

In Taylor v. Hudson, No. CIV 02-0775 JB/RHS, 2003 U.S. Dist. LEXIS 26736 (D.N.M. Nov. 21, 2003)(Browning, J.), which the Court decided before the Tenth Circuit's decision in Marquez v. City of Albuquerque, 399 F.3d 1216 (10th Cir. 2005), the Court found:

> The use of SOP evidence with respect to the reasonableness of the amount of

> force actually used in effecting the arrest implicates the rule of law that a violation of police procedures cannot serve as the basis for a constitutional violation. Accordingly, the Court would caution [the plaintiff] that, while he may be allowed to argue that the Defendants' use of force was unreasonable because [the Defendant Officer] was the initial aggressor, he cannot argue at trial that such force was unreasonable because [the Defendant Officer] violated a SOP requiring him to distance himself from an aggressive person.

Taylor v. Hudson, 2003 U.S. Dist. LEXIS 26736, at *16. The Court recognized that "courts have consistently held that a violation of a SOP is not equivalent to a constitutional violation," but noted that -- at the time of the opinion -- SOP evidence was not categorically excluded from excessive-force cases. 2003 U.S. Dist. LEXIS 26736, at *17-18 (noting that Medina v. Cram, Romero v. Bd. of Cnty. Comm'rs, and Bella v. Chamberlain, 24 F.3d 1251, 1256 n.7 (10th Cir. 1994), "do not unequivocally preclude the introduction of SOP evidence in excessive force cases."). The Court concluded that Tenth Circuit precedent clearly precluded admission of the SOPs to the extent the plaintiff wished to offer them as evidence of less intrusive alternatives to the amount of force used. See 2003 U.S. Dist. Lexis 26736, at *18. The Court distinguished introduction of the SOPs for purposes of assessing the reasonableness of the force used, opining that it would be permissible to admit the SOPs for this limited reason if two requirements were met:

> Evidence related to the appropriateness of the amount of force used is a different issue. This evidence would need to be unrelated to less intrusive alternatives. [The Plaintiff] would then face the additional burden of establishing that the SOP in question was designed or adopted for the benefit and protection of persons like himself.

2003 U.S. Dist. Lexis 26736, at *20 (citing Scott v. Henrich, 39 F.3d 912, 915-16 (9th Cir. 1994)). The Court concluded that it would presume any evidence of SOPs would be inadmissible; however, if the plaintiff could present a specific SOP to the Court that met the two requirements above, the Court would "consider the appropriateness of such evidence." 2003

U.S. Dist. LEXIS 26736, at *21.

Two years later, in Chamberlin v. City of Albuquerque, the primary issue was whether the Court should allow the plaintiff, Chamberlain, to introduce the APD's SOPs. See 2005 WL 3213527, at *1. Because of two recent Tenth Circuit decisions, the Court granted the defendant police officer's motion in limine to exclude the SOPs. The Court, after reviewing the two recent decisions pertaining to SOP admissibility that the Tenth Circuit decided after the Court's decision in Taylor v. Hudson -- Tanberg v. Sholtis and Marquez v. City of Albuquerque -- excluded any evidence or testimony pertaining to SOPs. The Court stated that, in light of these recent Tenth Circuit decisions, and in light of those holdings, it would not allow the plaintiff to offer evidence or testimony of the APD's SOPs. In light of the recent Tenth Circuit precedent, the Court, contrary to its decision in Taylor v. Hudson, held that the plaintiff could not introduce the APD's SOPs to support the allegation that the defendant officer acted unreasonably in directing his police service dog to attack the plaintiff in violation of his Fourth Amendment rights. Specifically, the Court would not allow the plaintiff to introduce SOPs that he had provided to the Court on use of force, use of canines, response to the mentally ill/suspected mentally ill, and rights of onlookers. See 2005 WL 3213527, at **2-4.

The Court in Chamberlin v. City of Albuquerque acknowledged that, although both of the Tenth Circuit decisions were distinguishable from the facts in Chamberlin v. City of Albuquerque in that the SOPs which the plaintiff sought to introduce in Chamberlin v. City of Albuquerque were different than those at issue in the two Tenth Circuit cases, and that, unlike Tanberg v. Sholtis, there was no suggestion that the plaintiff in Chamberlin v. City of Albuquerque also sought to introduce testimony whether the police department disciplined the defendant police officer for violating any SOP, the language of the Tenth Circuit's cases was

sufficiently broad and sweeping to encompass the SOPs at issue in Chamberlin v. City of Albuquerque. The Court stated that, under Marquez v. City of Albuquerque and Tanberg v. Sholtis, evidence of the SOPs was irrelevant to whether the Defendant Police Officer acted objectively reasonably. See 2005 WL 3213527, at **2-3. Accordingly, the Court precluded the plaintiff from offering testimony or evidence about the SOPs on his § 1983 claim. See 2005 WL 3213527, at **2-4.

## ANALYSIS

The Court will allow Flynn to testify, but will limit the scope of his testimony. With thirty-five years of experience as a police officer and other training he has received, Flynn may be able to offer specialized knowledge to help the jury understand the evidence or determine a fact in issue. For example, Flynn may testify about how a Taser works and may describe his experiences or training related to a Taser, which may help the jury in determining whether Brown and Rider used excessive force. Flynn may not testify, however, about specific SOPs that Brown and Rider may have violated, because whether Brown and Rider violated SOPs is irrelevant to whether they violated Ysasi's constitutional rights. See Tanberg v. Sholtis, 401 F.3d at 1163-64 ("That an arrest violated police department procedures does not make it more or less likely that the arrest implicates the Fourth Amendment, and evidence of the violation is therefore irrelevant."); Jonas v. Bd. of Comm'rs of Luna Cnty., 699 F. Supp. 2d at 1299 ("The clearly established law also does not permit a plaintiff to establish a constitutional violation with evidence that the officers violated SOPs and their training."); Chamberlin v. City of Albuquerque, 2005 WL 2313527, at *4 ("U]nder United States v. Marquez and Tanberg v. Sholtis, evidence of the SOPs is irrelevant to whether [defendant officer] acted objectively reasonably.").

Although Flynn has thirty-five years of experience as a police officer, the Court will not permit him to testify to matters that will not help the jury "to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). The Court must determine "whether expert testimony will be helpful to the trier of fact. In making that determination, the court should consider, among other factors, the testimony's relevance, the jurors' common knowledge and experience, and whether the expert's testimony may usurp the jury's primary role as the evaluator of evidence." Ram v. N.M. Dep't of Env't, CIV 05-1083 JB/WPL, 2006 WL 4079623 at *10 (D.N.M. Dec. 15, 2006)(Browning, J.)(citing United States v. Rodriguez-Felix, 450 F.3d 1117, 1123 (10th Cir. 2006)). The Court will not permit Flynn to testify, based on nothing more than the Police Video, that it is "more likely than unlikely" that Rider was the first aggressor; the jury will have the same evidence available to them, and Flynn's opinion will not help them in deciding how the altercation began. Similarly, Flynn may not testify that Brown and Rider should have been able to subdue Ysasi without using a Taser; he may have experience as a police officer, but the jurors also come to the table with common knowledge and experience, and they already have the tools they need to analyze the altercation between Ysasi, Rider, and Brown. The jurors are in the best position to test the credibility of the witnesses, and can listen to the various versions of the events and determine whether a Taser was excessive.

Flynn may not usurp the jury's factfinding role, and he also may not simply state legal conclusions; the Court will not allow Flynn to state that Brown and Rider lacked probable cause, or that they violated Ysasi's Fourth Amendment rights. Flynn may not "offer testimony that merely tells the jury what result they should reach," and "[e]xpert testimony of this type is often excluded on the grounds that it states a legal conclusion, usurps the function of the jury in deciding the facts, or interferes with the function of the judge in instructing the jury on the law."

United States v. Simpson, 7 F.3d 186, 188 (10th Cir. 1993).

**IT IS ORDERED** that the Motion in Limine to Exclude Certain Testimony of William Flynn, filed February 11, 2014 (Doc. 59), is granted in part and denied in part. William Flynn may testify, but only consistent with the limitations set forth in this opinion.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Jon C. Fredlund
Fredlund & Bryan
Hobbs, New Mexico

--and--

Max Houston Proctor
Hobbs, New Mexico

--and--

Dick A. Blenden
Blenden Law Firm, P.A.
Carlsbad, New Mexico

     *Attorneys for the Plaintiff*

Ronald J. Childress
Elaine R. Dailey
Klecan & Childress
Albuquerque, New Mexico

     *Attorneys for the Defendants*