IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MANUEL YSASI,

      Plaintiff,

vs.                                                                                          No. 13 CIV 13-0183 JB/CG

DEPUTY SHERIFF KELLY BROWN,
DEPUTY SHERIFF CHRIS RIDER,
individually and in their official capacities
as Deputy Sheriffs of Lea County, New Mexico
and the LEA COUNTY DETENTION CENTER,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Motion in Limine to Exclude Evidence of Conversations Between the Plaintiff and the Defendants After Defendants Tasered Plaintiff Four Times, filed January 16, 2014 (Doc. 49)("MIL"). The Court held a hearing on February 13, 2014. The primary issues are: (i) whether communications between Plaintiff Manuel Ysasi and Defendant Deputy Sheriff Chris Rider after Ysasi was handcuffed and placed in a police vehicle are relevant to this case; and (ii) if the communications are relevant, whether a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence substantially outweighs their probative value. The Court concludes that only one statement -- when Ysasi said "I took you down, punk . . . by myself" -- is relevant in this case, and that the remaining communications are irrelevant or unfairly prejudicial. The Court will permit the Defendants to introduce this statement, but it will exclude the remaining communications between Rider and Ysasi after Ysasi was placed in the police vehicle.

**FACTUAL BACKGROUND**

The Court has previously explained the facts and circumstances that Ysasi asserts give rise to this case. See Memorandum Opinion and Order, filed February 28, 2014 (Doc. 89)("MOO"). On February 25, 2010, Defendants Deputy Sheriff Kelly Brown and Deputy Sheriff Chris Rider arrived at Ysasi's property in Hobbs, New Mexico, in response to a 911 call requesting assistance in recovering personal property. The caller's sister was Heather Thompson, Ysasi's girlfriend. While Brown and Rider were outside Ysasi's property, Ysasi exited the mobile home and began yelling profanities at Thompson, Brown, and Rider, and asking why they were at his property. A heated verbal exchange ensued between Ysasi, Brown, and Rider. Rider climbed a gate to enter the property and approached Ysasi, who was standing on the porch of the mobile home. What happened next is disputed; Ysasi asserts that Rider pulled Ysasi off the porch, that Ysasi fell on top of Rider, that Ysasi wrapped his arms around Rider but did not strike Rider, and that Rider began hitting Ysasi with his fists. See MIL at 3. The Defendants assert that, when Rider approached Ysasi, Ysasi lunged from the porch at Rider, and both men fell to the ground and scuffled. See Affidavit of Kelly Brown ¶ 11, at 3, filed December 16, 2013 (Doc. 44-1)("Brown Aff."). Brown entered the property to help Rider handcuff Ysasi, and Rider deployed a Taser on Ysasi no more than four times. See MIL at 3; Brown Aff. ¶ 12, at 3.

After Brown and Rider handcuffed Ysasi and placed him in a police vehicle, Rider and Ysasi made several statements to each other. See Police Video. Rider asked Ysasi for his name, and Ysasi refused to state his name, but instead yelled profanities and insults at Rider. See Police Video. At one point, this exchange occurred:

Ysasi:   But you liked it when your ass was on the floor, didn't you?

|        |                          |
|--------|--------------------------|
| Rider: | Yours was too there for a while. |
| Ysasi: | Hey I took you down, punk |
| Rider: | Ok whatever. |
| Ysasi: | By myself. |

Police Video.  A Criminal Complaint was filed in Lea County Magistrate Court with charges of Battery upon a Peace Officer, Resisting/Evading/Obstructing an Officer, and Concealing Identity.  At a preliminary hearing, the Magistrate Judge found probable cause to support the criminal charges; a New Mexico district attorney entered a *nolle prosequi*, and the case was dismissed on September 27, 2010.

## PROCEDURAL BACKGROUND

On February 25, 2013, Ysasi filed suit against Brown, Rider, and Defendant Lea County Detention Center for "false arrest, unreasonable and excessive use of force against the person of the Plaintiff, failure to provide necessary and adequate medical care while in custody, and abuse of process when Deputies of the Lea County Sheriff's Department took him into custody." Complaint at 1.  In Count I, Ysasi alleges that Rider and Brown violated his rights under the Constitution by using excessive force and unreasonably seizing him, and that their actions constituted cruel and unusual punishment.  See Complaint ¶ 32, at 7.  In Count II, Ysasi brings state law claims against Rider and Brown for assault and battery.  See Complaint ¶ 35, at 8.  In Count III, Ysasi alleges that the LCDC, "through the acts of currently unknown employees and agents conspired with other named and unnamed persons to violate the rights of Mr. Ysasi by holding him incommunicado for a period of three days with[out] access to bail in an attempt to cover up the actions of Deputies Rider and Brown." Complaint ¶ 40, at 9-10.  The Defendants moved for summary judgment on all the claims except the claim for excessive force.  See

Defendants' Motion for Partial Summary Judgment, filed December 16, 2013 (Doc. 43)("MSJ"). The Court granted the MSJ in part and denied it in part; it dismissed the state law claims against all the Defendants, the unlawful arrest claim under the Fourth Amendment against Rider and Brown, and the claim against the LCDC.  Ysasi's remaining claims are that Rider and Brown unlawfully entered Ysasi's property in violation of the Fourth Amendment and that they used excessive force on Ysasi in violation of the Fourth Amendment.

Ysasi moves the Court to exclude the conversations between him and the Defendants during the time he was in the police car, because, in his view, the statements are irrelevant, and, if relevant, that the danger of unfair prejudice substantially outweighs the statements' probative value.  See MIL at 1-2.  He argues that, under rule 401 of the Federal Rules of Evidence, the communications after he was tasered are not relevant to his civil rights claims.  See Memorandum in Support of Motion in Limine at 4-5, filed January 16, 2014 (Doc. 50("MIL Memo.").  Ysasi argues that the communications are not relevant to the unlawful arrest claims, because they are not probative of the offenses with which he was charged -- battery on a police officer and resisting and evading an officer -- and that they are not relevant for the excessive force claims, because they are not probative of the reasonableness of the force used against him. See MIL Memo. at 5.  Ysasi contends that the Defendants are attempting to offer his statements "for an improper purpose."  MIL Memo. at 5.

Ysasi argues that, even if the communications are relevant, the Court should exclude the statements under rule 403 of the Federal Rules of Civil Procedure, because of the "danger of unfair prejudice to the Plaintiff and because the evidence will confuse the issues and mislead the jury."  MIL Memo. at 5.  Ysasi argues that the statements, which were made "[a]fter the fact," "would confuse the issues as to whether the Defendants violated the civil rights of the Plaintiff,

confuse the issues and mislead the jury." MIL Memo. at 5-6. In Ysasi's view, his statements were "by their very nature . . . emotional," because of the immediately preceding events, and that the statements "would suggest that the Plaintiff is a bad person" based on what he said after the events. MIL Memo. at 7. Ysasi asserts that the jury will need to determine whether Brown and Rider violated his Constitutional rights based on the preceding events, and that the communications in the police vehicle "would be unfairly prejudicial and the evidence would have an undue tendency to suggest a decision on an improper basis and an emotional one." MIL Memo. at 8.

The Defendants assert that, after Ysasi was in the police vehicle, the subject matter of the communications was not limited to the tasering. See Defendants' Response to Motion in Limine, filed January 30, 2014 (Doc. 57)("Response"). In the Defendants' view, the Police Video shows that Rider asked for Ysasi's name, and Ysasi "continued to be uncooperative and continued his tirade against Deputy Rider, which began before the deputies entered Plaintiff's property." Response at 3. The Defendants explain that the parties disagree how the altercation between Rider and Ysasi began; Ysasi asserts that Rider pulled him down, while Rider contends that Ysasi was the aggressor and resisted "lawful efforts to restrain him." Response at 4. In the Defendants' view, two statements that Ysasi made in the police vehicle are particularly relevant to demonstrate Ysasi's "pattern of aggression toward" Brown and Rider: "You catch me tomorrow . . . when I get out . . . right here in this f------ dirt . . . . You put your bags down . . . I will bury you . . . ," Police Video; and "I took you down, punk . . . by myself," Police Video. The Defendants argue that the communications between Rider and Ysasi in the police vehicle are not unfairly prejudicial, and point out that evidence is not unfairly prejudicial "merely because it is damaging to an opponent's case." Response at 5 (quoting MIL at 7 (citing United States v.

Carway, 534 F.3d 1290, 1301 (10th Cir. 2008)).

At the hearing, the Court said that it was inclined to let the Defendants play the portion of the Police Video where Ysasi states "I took you down, punk . . . by myself," but that it was inclined to grant the MIL regarding the rest of the communications, because a jury could get a picture of the person Ysasi was that night from earlier portions of the Police Video. See Transcript of Hearing at 79:6-80:13 (Court, Childress), taken February 13, 2014 ("Tr.").[1] The Court noted that, if it did not grant the MSJ on the unlawful arrest claim, then it would allow the Defendants to play the portion of the Police Video when Ysasi refuses to give his identity. See Tr. at 80:12-18 (Court). The Defendants argued that, because there is a factual dispute regarding whether Ysasi or Rider was the first aggressor, it would be helpful to the jury to hear what both parties said afterwards and how they said it. See Tr. at 81:7-20 (Childress, Court). The Defendants explained that Rider was asking Ysasi questions "the way a police officer might normally do that," and that the interaction "shows who may have been calm and who may have been agitated. It would give the jury that picture and give them some insight as to who was the aggressor in the altercation the way they acted afterwards." Tr. at 81:20-82:9 (Childress).

Ysasi urged the Court to remember that, when he was responding to Rider with profanities "over and over and over," he had "just been tased four times" and "was not in a very good mindset." Tr. at 82:11-16 (Blenden). Ysasi argued that whether he was calm in that situation does not "have a thing to do with this case," because the relevant events -- the altercation and the tasing -- occurred earlier. Tr. at 82:16-22 (Blenden). The Defendants argued that, if Ysasi thinks he reacted in the manner that he did because he had been tased, Ysasi could

---

[1] The Court's citations to the Transcript of Hearing and the Transcript of Trial, taken February 19, 2014 (Trial Tr."), refer to the court reporter's original, unedited versions. Any final transcripts may contain slightly different page and/or line numbers.

make that argument to the jury, but that profane behavior should not be a reason to exclude the evidence. See Tr. at 83:4-9 (Childress).

The Court said that it would allow in the statement -- "I took you down, punk, by myself" -- but it would exclude the other statements, because it did not think they were relevant. Tr. at 83:10-15 (Court).

## LAW REGARDING RELEVANCY OF EVIDENCE

"The rules of evidence contemplate the admission of relevant evidence, and the exclusion of irrelevant and potentially prejudicial evidence." Train v. City of Albuquerque, 629 F. Supp. 2d 1243, 1247 (D.N.M. 2009)(Browning, J.)(citing Fed. R. Evid. 401, 402, 403). "Relevant evidence is evidence that has a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." United States v. Gutierrez-Castro, No. CR 10-2072 JB, 2011 WL 3503321, at *3 (D.N.M. Aug. 6, 2011)(Browning, J.)(citing Fed. R. Evid. 401 ("Evidence is relevant if: **(a)** it has any tendency to make a fact more or less probable than it would be without the evidence; and **(b)** the fact is of consequence in determining the action.")). "Rule 401 contains a low threshold for relevance, because '[a]ny more stringent requirement is unworkable and unrealistic.'" United States v. Goxcon-Chagal, 885 F. Supp. 2d 1118, 1162 (D.N.M. 2012)(Browning, J.)(quoting Fed. R. Evid. 401 advisory committee's note). Irrelevant evidence, or that evidence which does not make a fact of consequence more or less probable, however, is inadmissible. See Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").

## LAW REGARDING RULE 403

Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice,

confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.  Under rule 403, the trial court must weigh the proffered evidence's probative value against its potential for unfair prejudice.  See United States v. Record, 873 F.2d 1363, 1375 (10th Cir. 1989).  "[I]t is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter [under rule 403]." United States v. Pettigrew, 468 F.3d 626, 638 (10th Cir. 2006)(quoting United States v. Sides, 944 F.2d 1554, 1563 (10th Cir. 1991))(internal quotation marks omitted).  "In performing the 403 balancing, the court should give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." Deters v. Equifax Credit Info. Servs., Inc., 202 F.3d 1262, 1274 (10th Cir. 2000).   The "exclusion of evidence under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly." United States v. Smalls, 605 F.3d 765, 787 (10th Cir. 2010).

The decision to admit or exclude evidence pursuant to rule 403 is within the trial court's discretion, see United States v. Lugo, 170 F.3d 996, 1005 (10th Cir. 1999), and the trial court's discretion to balance possible unfair prejudice against probative value is broad, see United States v. Bice-Bey, 701 F.2d 1086, 1089 (4th Cir. 1983); United States v. Masters, 622 F.2d 83, 87-88 (4th Cir. 1980).  As the Supreme Court of the United States has noted:

> In deference to a district court's familiarity with the details of the case and its greater experience in evidentiary matters, courts of appeals afford broad discretion to a district court's evidentiary rulings . . . .  This is particularly true with respect to Rule 403 since it requires an "on-the-spot balancing of probative value and prejudice, potentially to exclude as unduly prejudicial some evidence that already has been found to be factually relevant."

Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 384 (2008)(citation omitted).

Evidence is unfairly prejudicial if it makes a conviction more likely because it provokes

an emotional response from the jury, or if the evidence otherwise tends to adversely affect the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged. See United States v. Rodriguez, 192 F.3d 946, 951 (10th Cir. 1999). "Evidence is not unfairly prejudicial simply because it is damaging to an opponent's case." United States v. Caraway, 534 F.3d 1290, 1301 (10th Cir. 2008)(quoting United States v. Curtis, 344 F.3d 1057, 1067 (10th Cir. 2003)). Rather, "[t]o be unfairly prejudicial, the evidence must have 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" United States v. Caraway, 534 F.3d at 1301 (quoting Fed. R. Evid. 403 advisory committee note)(emphasis in original).

## ANALYSIS

The Court will exclude the communications between Ysasi and Rider for the portion of time he was sitting in the police vehicle, except for his statement, "I took you down, punk . . . by myself." The communications between Ysasi and Rider, apart from that statement, are irrelevant to his remaining claims. Rule 401 provides: "Evidence is relevant if: **(a)** it has any tendency to make a fact more or less probable than it would be without the evidence; and **(b)** the fact is of consequence in determining the action." Fed. R. Evid. 401. In the MOO, the Court dismissed the unlawful arrest claims against Rider and Brown. Had the unlawful arrest claims remained in the case, then the interaction between Ysasi and Rider in which Ysasi refuses to tell Rider his name would have been relevant to whether Rider had probable cause to arrest Ysasi for evading a police officer. The remaining claims in this case are that Rider and Brown unlawfully entered Ysasi's property, and that they used excessive force against Ysasi. Ysasi's statement that he "took" Rider "down" is probative of who may have been the first aggressor in the altercation, and whether Brown and Rider used excessive force against Ysasi. Ysasi was commenting on the

altercation between him and Rider, and his comment makes more likely that Ysasi was the first aggressor, which is relevant for the jury to gauge whether Rider responded with an appropriate or excessive amount of force.  This statement is in contrast with the other statement to which the Defendants specifically point -- "You catch me tomorrow . . . when I get out . . . right here in this f------ dirt . . . .  You put your bags down . . . I will bury you . . . ," Police Video -- which does not relate to the altercation, but threatens future action.  Although the Defendants argue that this statement demonstrates Ysasi's pattern of aggression toward Brown and Rider that night, it is Ysasi's aggression before and during the altercation that is relevant, and not what occurred after the arrest and the alleged use of excessive force .  The aggression that he exhibited before and during the altercation make more likely that Ysasi may have been the first aggressor, and that Brown and Rider were responding to that aggression, but these statements were made after Ysasi was handcuffed and in the police vehicle; his aggression at that point is not relevant to determine if Brown and Rider used excessive force or unlawfully entered Ysasi's property.

**IT IS ORDERED** that the Motion in Limine to Exclude Evidence of Conversations Between the Plaintiff and the Defendants After Defendants Tasered Plaintiff Four Times, filed January 16, 2014 (Doc. 49), is granted in part and denied in part.  The Court will permit the Defendants to introduce evidence regarding Plaintiff Manuel Ysasi's statement -- "I took you down, punk . . . by myself," which Ysasi made to Defendant Deputy Sheriff Chris Rider, but the Court will exclude the remaining communications after Ysasi was placed in the police vehicle.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Jon C. Fredlund
Fredlund & Bryan
Hobbs, New Mexico

--and--

Max Houston Proctor
Hobbs, New Mexico

--and--

Dick A. Blenden
Blenden Law Firm, P.A.
Carlsbad, New Mexico

    *Attorneys for the Plaintiff*

Ronald J. Childress
Elaine R. Dailey
Klecan & Childress
Albuquerque, New Mexico

    *Attorneys for the Defendants*

- 11 -