**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

MANUEL YSASI,

          Plaintiff,

vs.                                                                                          No. CIV 13-0183 JB/CG

KELLY BROWN, and CHRIS RIDER,
individually and in their official capacities
as Deputy Sheriffs of Lea County, New Mexico;
LEA COUNTY DETENTION FACILITY,

          Defendants.

<u>**MEMORANDUM OPINION AND ORDER**</u>

**THIS MATTER** comes before the Court on the Motion for Award of Attorney's Fees, Tax and Costs, filed March 24, 2014 (Doc. 94)("Motion").   The Court held a hearing on July 18, 2014.   The primary issues are: (i) whether Plaintiff Manuel Ysasi was the prevailing party in this case; (ii) whether it was reasonable for three attorneys to represent Ysasi; (iii) whether Ysasi's requested attorneys' fees are reasonable; and (iv) whether the Court should tax Ysasi's costs against the Defendants.   Because the Court concludes that Ysasi was the prevailing party, and because it was reasonable for three attorneys to represent him, the Court will permit him to recover attorneys' fees from the Defendants.   The Court will, however, reduce Ysasi's requested attorneys' fees by 80 hours, resulting in a total attorneys' fees award of $125,045.52.   The Court will also award Jon C. Fredlund $15.80 in copying costs.   Additionally, the Court will award Ysasi $10,228.74 in costs for expert witness fees and for depositions.   Ysasi, however, has not provided sufficient documentation to support his requested expert witness or deposition costs.   Ysasi may supplement the Motion within seven days of this Memorandum Opinion and Order being entered to provide the Court with documentation supporting his requested costs.   If Ysasi

fails to supplement the Motion, the Defendants may move for the Court to reconsider the Motion and to deny Ysasi's costs for expert witness fees and for depositions.   Without sufficient documentation, the Court will grant the Defendants' motion and will not award Ysasi these costs. Until then, the Court will grant the Motion in part and deny it in part by awarding Ysasi $135,290.06 in attorneys' fees and costs, recoverable against the Defendants.

## PROCEDURAL BACKGROUND

On February 25, 2013, Ysasi filed suit against Defendants Kelly Brown, Chris Rider, and Lea County Detention Center for "false arrest, unreasonable and excessive use of force against the person of the Plaintiff, failure to provide necessary and adequate medical care while in custody, and abuse of process when Deputies of the Lea County Sheriff's Department took him into custody."   Complaint for Damages for Violation of Civil Rights and Jury Demand at 1, filed February 25, 2013 (Doc. 1)("Complaint").   In Count I, Ysasi alleges that Rider and Brown violated his rights under the Constitution of the United States of America by using excessive force and unreasonably seizing him, and that their actions constituted cruel and unusual punishment. See Complaint ¶ 32, at 7.   In Count II, Ysasi brings state law claims against Rider and Brown for assault and battery.   See Complaint ¶ 35, at 8.   In Count III, Ysasi alleges that Lea County Detention "through the acts of currently unknown employees and agents conspired with other named and unnamed persons to violate the rights of Mr. Ysasi by holding him incommunicado for a period of three days with[out] access to bail in an attempt to cover up the actions of Deputies Rider and Brown."   Complaint ¶ 40, at 9-10.

The Defendants moved for summary judgment on all the claims except the claim for excessive force.   See Defendants' Motion for Partial Summary Judgment, filed December 16, 2013 (Doc. 43)("MSJ").   The Court granted the MSJ in part and denied it in part, dismissing the

state law claims against all the Defendants, the unlawful arrest claim under the Fourth Amendment

to the Constitution of the United States of America against Rider and Brown, and the claims

against Lea County Detention.   See Ysasi v. Brown, 3 F. Supp. 3d 1088, 1098 (D.N.M.

2014)(Browning, J.).[1]   Both sides also filed motions in limine.   See Motion in Limine to Exclude

Evidence of Conversations Between the Plaintiff and the Defendants After Defendants Tasered

Plaintiff Four Times, filed January 16, 2014 (Doc. 49)("Ysasi MIL"); Motion in Limine to

Exclude Certain Testimony of William Flynn, filed February 11, 2014 (Doc. 59)("Defendants

MIL").   Ysasi requested the Court to exclude certain statements made by Ysasi, Brown, and

Rider.   See Ysasi MIL at 1-2.   The Defendants requested the Court to exclude certain testimony

of Ysasi's expert witness, William Flynn.   See Defendants MIL at 1-7.   The Court granted and

denied in part each of the motions.   The Court permitted one statement between Ysasi and the

Defendants to be introduced into evidence but not the others.   See Memorandum Opinion and

Order, filed February 28, 2014 (Doc. 92)("Ysasi MIL MOO").   The Court also excluded some of

Flynn's testimony.   See Memorandum Opinion and Order, filed February 28, 2014

(Doc. 91)("Defendants' MIL MOO").   Specifically, the Court permitted Flynn to testify about

how a taser works and about his experience and training related to tasers.   See Defendants' MIL

MOO at 15.   The Court, however, excluded Flynn's testimony concerning factual conclusions,

such as whether Rider was the first aggressor and whether Brown and Rider should have been able

to subdue Ysasi without a taser.   See Defendants' MIL MOO at 15-16.   The Court also

prohibited Flynn from testifying about standard operating procedures ("SOPs").   See Defendants'

MIL MOO at 15.   After a two-day jury trial, the jury found that Brown did not violate Ysasi's

constitutional rights, but that Rider did.   See Final Judgment at 1-2, filed February 28

---

[1]The Court filed its opinion after the trial had ended, but, on the first day of trial, announced
its ruling to the parties.   See Transcript of Trial at 7:3-8:1 (taken February 18, 2014).

(2014)("Final Judgment").  The jury awarded Ysasi $75,000.00 in compensatory damages and $250,000.00 in punitive damages.  See Final Judgment at 2.

### 1.    The Motion and Supporting Documents.

After the trial, Ysasi moved for an award of attorneys' fees, taxes, and costs pursuant to 42 U.S.C. § 1988.  See Motion ¶ 4, at 1.  Ysasi asks for an award of $148,247.07 in attorneys' fees and $10,228.74 for costs.  See Motion ¶ 14, at 3.  Ysasi asserts that, under § 1988, a prevailing party is entitled to reasonable attorneys' fees in a 42 U.S.C. § 1983 action.  See Memorandum in Support of Attorney's Fees, Tax and Costs in Support of the Plaintiff's Motion for Attorney's Fees, Tax and Costs and Memorandum in Support of Said Motion at 2, filed March 24, 2014 (Doc. 95)("Memo.").  He argues that the Court has discretion to allow the prevailing party to recover reasonable attorneys' fees, taxes, and costs.  Memo. at 2 (citing Buckhannin Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 627-28 (2001)).  Ysasi, however, states that, while § 1988 "is literally discretionary, an award of attorney's fees to a prevailing Plaintiff is technically mandatory."  Memo. at 2.  He asserts that he is the prevailing party, because the Defendants offered him $77,000.00 to settle the case before trial and Ysasi won a $325,000.00 verdict at trial.  See Memo. at 2.

Ysasi contends that the Court has discretion in assessing the amount of reasonable attorneys' fees.  See Memo. at 2.  He asserts that the Supreme Court of the United States of America has identified twelve factors that a court should consider in calculating attorneys' fees pursuant to § 1988.  See Memo. at 2.  Ysasi contends that these factors are: (i) the time and labor required; (ii) the novelty and difficulty of the questions in the case; (iii) the skill required to properly perform the legal services; (iv) the preclusion of other employment because of accepting the case; (v) the customary fee; (vi) whether the fee is contingent or fixed; (vii) time limitations

that the client imposed; (viii) the amount of money involved and the end result; (ix) the attorney's experience, reputation, and ability; (x) the case's undesirability; (xi) the nature and length of the attorney's professional relationship with the client; and (xii) the awards in similar cases.   See Memo. at 2-3 (citing City of Riverside v. Rivera, 477 U.S. 561 (1986)).   Ysasi argues that § 1988's attorneys' fees provision creates an "incentive for attorney's [sic] to represent individual rights of persons whose constitutional rights have been violated by the government."   Memo. at 3. He maintains that a lot of § 1983 litigation "would evaporate" without § 1988's attorneys' fees provision, and that this litigation is needed to "make governments and their employees more accountable," and to reduce the amount of "bureaucratic abuse of people's individual rights" that the Constitution guarantees.   Memo. at 3 (citing Hensley v. Eckerhart, 461 U.S. 424, 429 (1983)).

Ysasi filed affidavits from his three attorneys that set forth the amount of time they spent working on his case.   First, Ysasi's attorney, Max Houston Proctor, represented that he graduated from Texas Tech Law School in 1967, and that he passed the Texas and New Mexico bars in 1976. See Affidavit in Support of Attorney's Fees ¶ 2, filed March 24, 2014 (Doc. 98)("Proctor Aff."). Mr. Proctor stated that he has practiced civil litigation, domestic litigation, criminal litigation, and general practice of law for thirty-four years.   See Proctor Aff. ¶ 3, at 1.   He asserted that his hourly rate for Ysasi was $250.00 per hour, and that a bill of $65,155.51 in attorneys' fees is fair and equitable in this case for an attorney with his experience, skill, and expertise.   See Proctor Aff. ¶¶ 4-6, at 2.   Mr. Proctor attached to his affidavit a time sheet from Ysasi's case.   See Max Houston Proctor Time Sheet, filed March 24, 2014 (Doc. 98-1)("Proctor Time Sheet").   The Proctor Time Sheet details each hour that he spent on the case and the amount billed for that hour, resulting in a total bill of $65,155.51.   Proctor Time Sheet at 1-12.

Second, Ysasi's attorney, Mr. Fredlund, represented that he graduated from the University of Arkansas School of Law in 1994 and that he passed the Arkansas bar in 1994 and the New Mexico bar in 1995.   See Affidavit in Support of Attorney's Fees ¶ 2, at 1, filed March 24, 2014 (Doc. 99)("Fredlund Aff.").   Mr. Fredlund stated that he has practiced civil litigation, domestic litigation, criminal litigation, and general legal practice for nineteen years.   Fredlund Aff. ¶ 3, at 1. He asserted that his hourly rate for Ysasi was $250.00 per hour, which he believes to be reasonable for an attorney with his education, experience, and skill, and that his total bill for this case is $29,016.56.   See Fredlund Aff. ¶¶ 5-6, at 2.   Mr. Fredlund attached to his affidavit his time sheets, detailing each hour he spent on Ysasi's case.   See Attorney Time Record for Jon C. Fredlund, filed March 24, 2014 (Doc. 99-1)("Fredlund Time Sheet").

Finally, Ysasi's third attorney, Dick A. Blenden, stated that Mr. Proctor contacted him about joining the case in August, 2013.   See Attorney Fee Affidavit of Dick A. Blenden, filed March 24, 2014 (Doc. 97)("Blenden Aff.").   Mr. Blenden represented that Mr. Fredlund brought Mr. Proctor into the case.   Blenden Aff. at 1.   Mr. Blenden asserted that, when he was brought into the case, no discovery had been conducted and that he hired an expert witness.   See Blenden Aff. at 1.   He further stated that he spent a lot of time reviewing the case file, attending the preliminary hearing, attending Ysasi's deposition, attending the deposition of Ysasi's expert witness, and generally preparing to try the case with Mr. Proctor.   See Blenden Aff. at 1. Mr. Blenden represented that he briefed the case with Mr. Proctor, and had numerous conversations with Mr. Proctor about the case and about trial strategies.   See Blenden Aff. at 1-2. He stated that he does mostly contingent fee work, but that, when he charges by the hour, he charges $300.00 per hour.   See Blenden Aff. at 2.   Mr. Blenden also stated that he has practiced law for over fifty years, and has had ten or more § 1983 cases in the last thirty years.   See Blenden

Aff. at 2.   He said that each case is different, and requires different skills and legal decisions.   See Blenden Aff. at 2.   Mr. Blenden asserted that this case was difficult, because Ysasi was not a "sophisticated witness," and that he had to spend a lot amount of time preparing Ysasi to testify. Blenden Aff. at 2.   He further said that the amount of time he spent on the case was reasonable for this case.   See Blenden Aff. at 2.   Mr. Blenden attached to his affidavit his time sheet, detailing the amount of time he spent on the case.   See Attorney Time Record for Dick A. Blenden, filed March 24, 2014 (Doc. 97)("Blenden Time Sheet").

Ysasi also filed a motion to tax costs, requesting $10,228.74 in costs that he spent on his Flynn, and on depositions.   Motion to Tax Cost, filed March 24, 2014 (Doc. 96)("Motion to Tax").   In the Motion to Tax, Ysasi asks the Court to tax the Defendants $9,100.50 for Flynn, $569.69 for Ysasi's deposition, and $558.55 for Flynn's deposition.   Motion to Tax at 1.   Ysasi notes that Flynn testified as an expert witness and that both depositions were used during cross examination at trial.   See Motion to Tax at 1.

### 2.     The Defendants' Response.

The Defendants responded to the Motion on April 7, 2014.   See Response to Motion for Award of Attorney's Fees, Tax and Costs, filed April 7, 2014 (Doc. 100)("Response").   The Defendants argue that a lot of the fees sought by Ysasi's attorneys are unreasonable, excessive, and duplicative, and that the Court should significantly reduce Ysasi's requested fees.   Response at 1. The Defendants maintain that the case did not require Ysasi to retain three attorneys.   See Response at 1.   They contend that the case was not complex, did not require numerous witnesses, and did not require the review of numerous documents.   See Response at 1.   The Defendants assert that Ysasi did not take any depositions or make any written discovery requests.   See Response at 1.   They assert that, after they filed a motion for summary judgment, Ysasi

abandoned his state-law claims and did not oppose the Defendants' arguments concerning Lea County Detention.   See Response at 1-2.   They also argue that many of the attorneys' time sheet entries "are not sufficiently detailed, are not allowed as taxable costs, and are excessive in terms of the amount expended on the activity at issue."   Response at 2.   The Defendants also assert that, because all three attorneys practice in southern New Mexico, Ysasi cannot argue that an additional attorney was needed to be in the city in which the case was pending: Albuquerque, New Mexico. See Response at 2, n.1.   They also argue that the Court should exclude or reduce Mr. Blenden's requested fees for travel time.   See Response at 2 n.2 (citing Ramos v. Lamm, 713 F.2d 546, 559 (10th Cir. 1983)("However, because there is no need to employ counsel from outside the area in most cases, we do not think travel expenses for such counsel between their offices and the city in which the litigation is conducted should be reimbursed."), abrogated on other grounds by Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 483 U.S. 711 (1987)).

The Defendants contend that a plaintiff has the burden in an application for attorneys' fees to prove and establish the reasonableness of every hour and dollar.   See Response at 2 (citing Jane L. v. Bangerter, 61 F.3d 1505, 1510 (10th Cir. 1995)).   They maintain that lawyers must keep meticulous time records to show all of the hours for which compensation is requested and to show how those hours were allotted to specific tasks.   See Response at 2.   The Defendants contend that a district court does not abuse its discretion by reducing a plaintiff's fee request when the request is based on sloppy and imprecise time records.   See Response at 2 (citing Robinson v. City of Edmond, 160 F.3d 1275, 1284-85 (10th Cir. 1998)).   They maintain that a prevailing party must make a good-faith effort to exclude from his or her fee request hours that are excessive, redundant, or unnecessary.   See Response at 3.   The Defendants assert that a fee request can be reduced if some of a plaintiff's interrelated claims are not successful.   See Response at 3.   They contend

that the delicateness of services should be considered and that a fee should be reduced if three attorneys attend a hearing when one would suffice. See Response at 3. They argue that the court must "'provide a concise but clear explanation of its reasons for'" a fee award. Response at 3 (quoting Stewart v. Donges, 979 F.2d 179, 182 (10th Cir. 1992)).

The Defendants argue that some of Ysasi's attorneys' time records are too imprecise to warrant payment, that the amount of time spent on many tasks is excessive, that Ysasi did not prevail against Brown or Lea County Detention, and that much of the work done by all three attorneys is duplicative. See Response at 3. The Defendants respond to Ysasi's contention that he prevailed, because he received a much larger award than the Defendants offered pursuant to a settlement offer, by arguing that Ysasi's pre-trial demands were four times the amount of the jury's verdict. See Response at 3 n.2.

The Defendants contend that this case is similar to Stewart v. Donges. See Response at 3. The Defendants assert that, there, the United States Court of Appeals for the Tenth Circuit held that the case was relatively straightforward even though the plaintiff retained three attorneys. See Response at 3-4. The Defendants argue that the Tenth Circuit reduced the district court's attorneys' fees award. See Response at 4. They contend that the Tenth Circuit refused to award any attorneys' fees to the attorney who was retained last in the case, because his presence in the case was unnecessary, and that the Tenth Circuit reduced the second retained attorney's fees by one half. See Response at 4-5. The Defendants argue that Mr. Proctor and Mr. Blenden have not explained why their presence in the case was necessary in such a straightforward § 1983 case. See Response at 5. The Defendants maintain that the Court should not allow all three attorneys to recover fees. See Response at 5. They also argue that a lot of Ysasi's attorney's time sheets are not sufficiently detailed to show that the time was reasonable and necessary. See Response at 5.

Additionally, the Defendants contend that the amount of time that Ysasi's attorneys spent on certain tasks was excessive.   See Response at 5.   Specifically, the Defendants argue that Mr. Proctor spent approximately ninety-seven hours preparing for the trial, which lasted two days and in which only five witnesses testified.   See Response at 5.

The Defendants next address Ysasi's request to recover costs for retaining Flynn as an expert witness.   See Response at 5-6.   They argue that, while § 1988 permits the court to award costs for expert witnesses, the local rules preclude recovery of expert witness costs unless the Court appoints the expert and approves the cost amount.   See Response at 5-6 (citing D.N.M.LR-Civ. 54.2).   The Defendants assert that the Court did not appoint Flynn.   See Response at 6.   They argue that, even if the Court could award Ysasi for Flynn's costs, it should not, because his testimony was limited in its impact and effectiveness.   See Response at 6.   The Defendants contend that, because the Court severely limited Flynn's testimony before trial, the Court should reduce any potential award for his costs.   See Response at 6.

Finally, the Defendants address each hour that Ysasi's attorneys assert that they worked on the case.   See Response at 6-23.   The Defendants state whether they believe that each hour entry is reasonable.   See Response at 6-23.

**3.      Order Denying Motion to Tax.**

On June 27, 2014, the Clerk of the Court entered an order denying the Motion to Tax.   See Clerk's Order Settling Costs, filed June 27, 2014 (Doc. 106)("Clerk's Order").   The Clerk stated that the "fees lack sufficient documentation, receipt or proof of payment, and are therefore disallowed."   Clerk's Order at 1.   The Clerk further noted that "expert witness fees are not taxable unless ordered by the Court."   Clerk's Order at 1 (citing D.N.M.LR-Civ. 54.2(c)(2)). The Clerk of the Court stated that a "motion for review by the Court, if desired, shall be made

within seven days of this order."   Clerk's Order at 2.   No party has filed a motion requesting the Court to review the Clerk's Order.

### 4.      **The July 18, 2014, Hearing**.

The Court held a hearing on July 18, 2014.   See Transcript of Hearing (taken July 18, 2014)("Tr.").[2]   At the hearing, Ysasi noted that Mr. Blenden mistakenly stated in his time sheet that he attended a preliminary hearing on September 24, 2013, when he did not.   See Tr. at 2:22-3:2 (Blenden).   Ysasi explained how three attorneys came to represent him.   See Tr. at 3:2-12 (Blenden).   He stated that an attorney, whose license was being suspended, represented him, and that the attorney referred his case to Mr. Fredlund.   See Tr. at 3:6-9 (Blenden).   Ysasi asserts that Mr. Fredlund then contacted Mr. Proctor to assist with the case and that Mr. Proctor asked Mr. Blenden to help try the case, because Mr. Blenden had tried several similar cases.   See Tr. at 3:10-12 (Blenden).   He argued that Mr. Blenden had the logistical support to do the necessary research to prepare for trial and that Mr. Blenden paid his expert witness, because Mr. Fredlund and Mr. Proctor had not.   See Tr. at 3:12-19 (Blenden).   Ysasi contended that Mr. Blenden and Mr. Proctor kept Mr. Fredlund in the case, because Mr. Fredlund had a relationship with Ysasi and they believed that Mr. Fredlund was necessary to help prepare Ysasi to testify at trial.   See Tr. at 4:8-14 (Blenden).

Ysasi addressed the Defendants' contention that the case was "straightforward" by arguing that the Defendants denied every element in the case, the Defendants filed the MSJ, and the Defendants "objected to everything."   Tr. at 4:14-5:2 (Blenden).   He asserted that his attorneys had to prepare for every issue that could have been raised at trial.   See Tr. at 4:23-10 (Blenden); id. at 5:22-25 (Blenden).   Ysasi conceded that he did not succeed on every claim against every

_____

[2]The Court's citations to the transcripts of the hearings and trial reflect the court reporter's original, unedited versions.   Any final transcripts may contain slightly different page and/or line numbers.

Defendant, but argued that his attorneys did not spend a lot of time on the unsuccessful claims, such as the claims against Lea County Detention and the tort claims, whose statute of limitations had ran. See Tr. at 5:10-20 (Blenden). He contended that his attorney, Mr. Blenden, spent only 180 hours working on the case during the six months that Mr. Blenden was on the case, which came out to about thirty hours per month. See Tr. at 6:12-16 (Blenden). Ysasi asserted that thirty hours a month is not a lot of time for this case. See Tr. at 6:16-18 (Blenden).

Ysasi argued that, while he did not take depositions, the decision was a strategic one to prevent the Defendants from changing their story from their testimony at his preliminary hearing. See Tr. at 6:19-7:7 (Blenden). He also contended that not succeeding on his claims against Brown is not substantial, because he needed Brown in the case to use Brown's testimony at trial and because he thought the jury could have found Brown liable as well. See Tr. at 7:8-24 (Blenden). Ysasi asserted that Mr. Proctor did most of the research in the case, which meant that there was not a lot of overlapping work between his attorneys except for conversations that the attorneys had about the case. See Tr. at 8:4-7 (Blenden). He argued that it is not unusual or improper for co-counsel to discuss the case with one another. See Tr. at 8:7-21 (Blenden). Ysasi asserted that the jury verdict was successful in light of the Defendants' $77,000.00 settlement offer. See Tr. at 8:22-9:3 (Blenden). He contended that $140,000.00 in attorneys' fees is not that much money for this case and that, for similar cases, the attorneys' fees are much larger. See Tr. at 9:6-11 (Blenden).

Ysasi argued that Mr. Blenden is not great at time keeping, because he normally practices for a contingent fee, but that his attorneys tried to keep accurate records and that the time sheets likely show less time than they spent on the case. See Tr. at 9:10-24 (Blenden). Ysasi contended that his attorney, Mr. Fredlund, began to represent him when his prior attorney, whose law license

was being suspended, asked Mr. Fredlund if he wanted to take the case.  See Tr. at 11:11-18 (Fredlund, Court).  He asserted that Mr. Fredlund had never tried a case like this one and that Mr. Fredlund did not have the necessary capital to fund the case, so he asked Mr. Proctor for assistance.  See Tr. at 11:20-12:2 (Fredlund, Court).  Ysasi contended that Mr. Proctor then asked Mr. Blenden to help with the case, because of Mr. Blenden's experience and because Mr. Blenden could provide the necessary funds.  See Tr. at 12:3-20 (Proctor, Court).

The Defendants responded by arguing that many of the hours of Ysasi's attorneys are duplicative.  See Tr. at 13:5-7 (Childress).  The Defendants noted that they are not objecting to Ysasi's attorneys' hourly rates.  See Tr. at 13:2-5 (Childress).  They contended that the Court should reduce Ysasi's requested attorneys' fees.  See Tr. at 13:7-15 (Childress).  The Defendants argued that, while no civil case is simple, this case was straightforward, because Ysasi called only five witnesses, Ysasi did not take depositions or submit written discovery requests, and Ysasi's only motion was a motion in limine.  See Tr. at 13:16-14:1 (Childress).  They also contended that Ysasi was not successful on all of his claims.  See Tr. at 14:3-16 (Childress).  The Defendants argued that Ysasi has undervalued their proposed settlement offer, because they offered Ysasi $77,500.00 in addition to reasonable costs and attorneys' fees.  See Tr. at 14:17-15:3 (Childress).  They asserted that a number of Ysasi's attorneys' time entries seem excessive.  See Tr. at 15:9-10 (Childress).  The Defendants argued that one of the attorney's entries, stating that he spent one hour looking at the nolle prosequi process,[3] is unreasonable and that it was unreasonable to have three attorneys at trial each day.  See Tr. at 15:10-16:2 (Childress).  The Defendants then directed the Court to a number of objections from their Response.  See Tr. at 16:8-17:7 (Childress).  They asserted that their attorney charges $150.00 an hour and that he billed them

---

[3]Nolle prosequi is a "legal notice that a lawsuit or prosecution has been abandoned." Black's Law Dictionary 1147 (9th ed. 2009).

around $47,000.00, not counting any additional fees for responding to the Motion and attending the hearing.  See Tr. at 17:14-18:1 (Childress, Court).

Ysasi addressed the Defendants' argument concerning the nolle prosequi entry by arguing that Mr. Blenden called both the prosecutor and his prior attorney to determine why the prosecutor dropped the prior criminal case.  See Tr. at 19:16-23 (Proctor).  The Court noted that it would likely reduce Ysasi's requested attorneys' fees, but that it did not think it was improper to have three attorneys in the case.  See Tr. at 18:12-19:10 (Court).

## LAW REGARDING JURISDICTION OVER ATTORNEY'S FEES

"'Questions of attorney's fees and costs are collateral to and separate from a decision on the merits.'"  Bell v. Bd. of Cnty. Comm'rs, 451 F.3d 1097, 1101 n.2 (10th Cir. 2006)(alterations omitted)(quoting Utah Women's Clinic, Inc. v. Leavitt, 75 F.3d 564, 567 (10th Cir. 1995)).   In White v. New Hampshire Department of Employment Security, 455 U.S. 445 (1982), the Supreme Court stated:

> Section 1988 provides for awards of attorney's fees only to a "prevailing party."  Regardless of when attorney's fees are requested, the court's decision of entitlement to fees will therefore require an inquiry separate from the decision on the merits -- an inquiry that cannot even commence until one party has "prevailed."  Nor can attorney's fees fairly be characterized as an element of "relief" indistinguishable from other elements.  Unlike other judicial relief, the attorney's fees allowed under § 1988 are not compensation for the injury giving rise to an action.   Their award is uniquely separable from the cause of action to be proved at trial.

455 U.S. at 451-52 (citing Hutto v. Finney, 437 U.S. 678, 695 n.24 (1978)).

The Supreme Court has since noted that "'it is well established that a federal court may consider collateral issues after an action is no longer pending.'"   Willy v. Coastal Corp., 503 U.S. 131, 138 (1992)(alterations omitted)(quoting Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 395-96 (1990)).   In Willy v. Coastal Corp., the Supreme Court explained that a district court's

consideration of such collateral issues implicates no constitutional concern, because it "'does not signify a district court's assessment of the legal merits of the complaint,'" and "therefore does not raise the issue of a district court adjudicating the merits of a 'case or controversy' over which it lacks jurisdiction." Willy v. Coastal Corp., 503 U.S. at 396 (quoting Cooter & Gell v. Hartmarx Corp., 496 U.S. at 396). Furthermore, the Tenth Circuit has held that "an award of attorney fees for the case at issue is perhaps the paradigmatic example of a collateral issue." McKissick v. Yuen, 618 F.3d 1177, 1196 (10th Cir. 2010). See Guidance Endodontics, LLC v. Dentsply Int'l, Inc., No. CIV 08-1101 JB/RLP, 2011 WL 1336509, at *3 (D.N.M. Mar. 31, 2011)(Browning, J.)("Attorneys' fees and expenses are a collateral matter the Court may consider after the parties compete [sic] their appeal.").

## LAW REGARDING 42 U.S.C. § 1988

"42 U.S.C. § 1983 and its fee-shifting provision, 42 U.S.C. § 1988, seek to encourage attorneys to litigate civil rights violations." Copar Pumice Co. v. Morris, No. CIV 07-0079 JB/ACT, 2012 WL 2383667, at *13 (D.N.M. June 13, 2012)(Browning, J.). Section 1988(b) provides: "[T]he court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). "[T]here are two elements in deciding whether to award attorney's fees. First, the party seeking fees must qualify as a 'prevailing party.' Second, the fee itself must be 'reasonable.'" Phelps v. Hamilton, 120 F.3d 1126, 1129 (10th Cir. 1997)(quoting 42 U.S.C. § 1988(b)).

For the purpose of determining attorney's fees, a court may determine that plaintiffs are "prevailing parties . . . if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." Hensley v. Eckerhart, 461 U.S. at 433 (internal

quotation marks omitted)(citation omitted).   In <u>Farrar v. Hobby</u>, 506 U.S. 103 (1992), the Supreme Court later elaborated on this description:

> Therefore, to qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim.   The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement.   Whatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement.   Otherwise the judgment or settlement cannot be said to affect the behavior of the defendant toward the plaintiff.   Only under these circumstances can civil rights litigation effect the material alteration of the legal relationship of the parties and thereby transform the plaintiff into a prevailing party.   In short, a plaintiff prevails when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.

506 U.S. at 111 (citations omitted)(internal quotation marks omitted)(alterations omitted).   The Supreme Court has stated that "this is a generous formulation that brings the plaintiff only across the statutory threshold."   <u>Hensley v. Eckerhart</u>, 461 U.S. at 433.   The district court must then determine what fee is "reasonable."   <u>Hensley v. Eckerhart</u>, 461 U.S. at 433; <u>Obenauf v. Frontier Fin. Grp., Inc.</u>, 785 F. Supp. 2d 1188, 1210 (D.N.M. 2011)(Browning, J.)("Once a court determines that a party is a prevailing party, it must then determine what amount of reasonable attorney's fees should be awarded.").

   "To determine a reasonable attorneys fee, the district court must arrive at a 'lodestar' figure by multiplying the hours plaintiffs' counsel reasonably spent on the litigation by a reasonable hourly rate."   <u>Jane L. v. Bangerter</u>, 61 F.3d at 1509 (citing <u>Blum v. Stenson</u>, 465 U.S. 886, 888 (1984); <u>Hensley v. Eckerhart</u>, 461 U.S. at 433).   This lodestar figure "provides an objective basis on which to make an initial estimate of the value" of an attorney's services.   <u>Hensley v. Eckerhart</u>, 461 U.S. at 433.   The prevailing party requesting an award of its fees must submit evidence to support its claim of time spent and rates claimed.   <u>See Hensley v. Eckerhart</u>, 461 U.S. at 434.   If

the evidence is inadequate, the district court may reduce the fee award accordingly.   See Hensley v. Eckerhart, 461 U.S. at 434.

A district court may also make adjustments to the lodestar to reflect a plaintiff's overall success level.   See Jane L. v. Bangerter, 61 F.3d at 1511 (citing Hensley v. Eckerhart, 461 U.S. at 435-36).   "In making such adjustments, however, Hensley requires that lower courts make qualitative comparisons among substantive claims before adjusting the lodestar either for excellent results or limited success."   Jane L. v. Bangerter, 61 F.3d at 1511.   The district court must consider the relationship between the fees awarded and the degree of success obtained, and must make a qualitative assessment to determine when limited results will nonetheless justify full recovery or to what extent a plaintiff's "limited success" should reduce the lodestar.   Jane L. v. Bangerter, 61 F.3d at 1511.   "There is no precise rule or formula" for making such determinations.   Hensley v. Eckerhart, 461 U.S. at 436.   In Hensley v. Eckerhart, the Supreme Court explained the rationale behind this approach:

> Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours on a claim-by-claim basis.   Such a lawsuit cannot be viewed as a series of discrete claims.   Instead, the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

461 U.S. at 435.

Furthermore, when a plaintiff brings related claims, failure on some claims should not preclude full recovery if the plaintiff achieves success on a significant, interrelated claim.   See Hensley v. Eckerhart, 461 U.S. at 440 ("Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised."); Jane L. v. Bangerter, 61 F.3d at 1512.   Claims are related when they are either based on "a common core of facts" or based on "related legal

- 17 -

theories." Hensley v. Eckerhart, 461 U.S. at 435.   In both cases, the district court should refrain from reducing the amount of the prevailing party's attorney's fee award.   See Jane L. v. Bangerter, 61 F.3d at 1512.   The Tenth Circuit has "refused to permit the reduction of an attorneys fee request if successful and unsuccessful claims are based on a common core of facts."   Jane L. v. Bangerter, 61 F.3d at 1512 (internal quotation marks omitted).   See Tidwell v. Fort Howard Corp., 989 F.2d 406, 412-13 (10th Cir. 1993)(holding that the trial court abused its discretion in reducing attorney's fees for a plaintiff who prevailed under some provisions of the Equal Pay Act, but failed on her Title VII and state law claims)).   The Tenth Circuit has also recognized that "'[l]itigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee."   Jane L. v. Bangerter, 61 F.3d at 1512 (quoting Hensley v. Eckerhart, 461 U.S. at 435).

## ANALYSIS

The Court will grant the Motion in part and deny it in part.   Ysasi was the prevailing party and is thus entitled to attorneys' fees.   The Court will, however, reduce Ysasi's requested attorneys' fees by $23,201.55, resulting in a total fee award of $125,045.52.   The Court will award Mr. Fredlund $15.80 in copying costs.   The Court will also award Ysasi $10,228.74 in costs for expert witness fees and for depositions.   Ysasi has not, however, provided sufficient documentation to support his requested expert witness or deposition costs.   Ysasi may supplement his Motion within seven days of this Memorandum Opinion and Order being entered, and provide the Court with documentation supporting his requested costs.   If Ysasi fails to supplement the Motion, the Defendants may move for the Court to reconsider the Motion and to deny Ysasi's costs for expert witness fees and for depositions.   Without any documentation, the Court will grant the Defendants' motion and will not award Ysasi these costs.

I.     **YSASI WAS THE PREVAILING PARTY, AND THE COURT WILL NOT REDUCE HIS ATTORNEYS' FEES BECAUSE OF HIS UNSUCCESSFUL CLAIMS.**

Ysasi was the prevailing party and is thus entitled to attorneys' fees pursuant to 42 U.S.C. § 1988(b).   A prevailing party is one that succeeds "on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing suit."   Hensley v. Eckerhart, 461 U.S. at 433.   Ysasi received a $325,000.00 jury verdict at the end of the two-day trial.   See Final Judgment at 2.   He, thus, succeeded on a significant issue and received a benefit from bringing suit.   See Hensley v. Eckerhart, 461 U.S. at 433.

Ysasi did not succeed on all of his claims, specifically his claims against Lea County Detention and Brown.   See Response at 3.   The Tenth Circuit has noted that an attorneys' fees award may be reduced if the party achieved only limited success.   See Jane L. v. Bangerter, 61 F.3d at 1510-11.   The Tenth Circuit and the Supreme Court, however, have held that an attorneys' fees award should not be reduced merely because a party did not succeed on some claims if those claims are related to the claims on which the party succeeded.   See Hensley v. Eckerhart, 461 U.S. at 440; Jane L. v. Bangerter, 61 F.3d at 1512.   Both the Supreme Court and the Tenth Circuit have held that claims are related if they involve a common core of facts.   See Hensley v. Eckerhart, 461 U.S. at 435; Jane L. v. Bangerter, 61 F.3d at 1512 ("We have refused to permit the reduction of an attorneys fee request if successful and unsuccessful claims are based on a 'common core of facts.'").   Ysasi's successful and unsuccessful claims share a common core of facts.   Each of Ysasi's claims, against Rider, Brown, and Lea County Detention, revolve around his February 25, 2010, arrest that occurred on his property.   See Complaint ¶¶ 5-41, at 2-11.   His federal claims against Brown and Rider concern Brown and Rider's actions in arresting and detaining him   See Complaint ¶¶ 31-33, at 7.   Ysasi's state law claims of assault and battery also

revolve around Brown and Rider's conduct during the arrest.  See Complaint ¶¶ 34-38, at 8. Additionally, his claim against Lea County Detention concern an allegation that Lea County Detention employees held him without bail to cover up Brow and Rider's actions from the arrest. See Complaint ¶¶ 29-41, at 9-11.   Ysasi's claims are, thus, "based on a 'common core of facts.'" Jane L. v. Bangerter, 61 F.3d at 1512.   Accordingly, the Court will not reduce Ysasi's requests for an attorneys' fees award merely because his claims against Brown and Lea County Detention were unsuccessful.

## II.   THE COURT WILL NOT SUBSTANTIALLY REDUCE YSASI'S ATTORNEYS' FEES AWARD SOLELY BECAUSE HE RETAINED THREE ATTORNEYS.

The Court will not substantially reduce Ysasi's requested attorneys' fees solely because he retained three attorneys.   The Defendants argue that the Court should not allow three of Ysasi's attorneys to recover attorneys' fees.   See Response at 5.   In making this argument, they rely heavily on the Tenth Circuit's case of Stewart v. Donges.   See Response at 3-5.   That case is inapplicable here.

In Stewart v. Donges, the plaintiff filed a § 1983 action against a police officer, the mayor of Rio Rancho, New Mexico, and the City of Rio Rancho.   See 979 F.2d at 180.   The plaintiff's claims included allegations of wrongful arrest and failure to train and supervise.   See Stewart v. Donges, 979 F.2d at 180.   The defendant officer filed a motion for summary judgment on the basis of qualified immunity.   See 979 F.2d at 180.   The district court denied the motion and the officer appealed the denial.   See 979 F.2d at 180.   The defendants filed a motion for the district court to stay the proceedings pending the resolution of the appeal.   See 979 F.2d at 180.   The plaintiff opposed the motion to stay, and the district court denied it.   See 979 F.2d at 180.   The case proceeded to trial, despite the pending appeal, and the jury found the defendant officer liable for $39,804.00 in compensatory damages and $47,000.00 in punitive damages.   See 979 F.2d

at 180-81.   The jury found in favor of the other two defendants.   See 979 F.2d at 181.   The district court then awarded the plaintiff almost all of his requested attorneys' fees of $252,538.11 for his three attorneys and their clerks.   See 979 F.2d at 181.

After the trial, the Tenth Circuit decided the defendant officer's appeal by holding that the district court properly denied the motion for summary judgment.   See 979 F.2d at 181.   In resolving the appeal, the Tenth Circuit "voided" the trial, by holding that, once the defendant officer filed his appeal, the district court lost jurisdiction over the case.   979 F.2d at 181. Consequently, the Tenth Circuit remanded the case to the district court to be resumed from its pre-trial status.   See 979 F.2d at 181.   The district court set a new trial date, but the parties settled the case before trial for $42,500.00 plus costs.   See 979 F.2d at 181.   The settlement agreement did not provide for the payment of attorneys' fees.   See 979 F.2d at 181.   The district court, however, awarded the plaintiff's attorneys $354,881.87 in fees.   See 979 F.2d at 181.

The Tenth Circuit, in an opinion that the Honorable Oliver Seth, United States Circuit Judge for the Tenth Circuit, authored and the Honorable Joseph T. Sneed, United States Circuit Judge for the Ninth Circuit, sitting by designation, joined, held that this award was unreasonable. See 979 F.2d at 185.   While the Tenth Circuit noted that the case "was a relatively straightforward case" and that the trial did not require three plaintiff's attorneys, see 979 F.2d at 181, the Tenth Circuit based its holding on the conclusions that the plaintiff was not the prevailing party and that special circumstances in the case required a reduction in attorneys' fees, see 979 F.2d at 183-85. The Tenth Circuit held that the plaintiff was not the prevailing party at the trial, because the trial was voided.   See 979 F.2d at 182-83.   The plaintiff, accordingly, was not entitled to attorneys' fees that were related to the trial or the trial preparation.   See 979 F.2d at 182-83.   The Tenth Circuit further held that the eventual settlement agreement, which was less than half of the voided

jury verdict, was not a result of the voided trial.   See 979 F.2d at 184.   The Tenth Circuit held that

the plaintiff's sole victory in the case was a procedural victory in prevailing in the appeal of the

district court's denial of the motion for summary judgment.   See 979 F.2d at 183-84.   Because

the plaintiff had only limited success on appeal -- the jury verdict was voided but the denial of

summary judgment was affirmed -- the Tenth Circuit permitted only two of the plaintiff's

attorneys to recovery attorneys' fees for the appeal and for only half the time they spent on appeal.

See 979 F.2d at 184.

The Tenth Circuit went onto hold that, even if the plaintiff was the prevailing party, his

attorneys' fees should be reduced under the special circumstances doctrine.   See 979 F.2d

at 184-85.   A prevailing plaintiff is normally awarded attorneys' fees unless "special

circumstances would render the award unjust."   979 F.2d at 184 (internal quotation marks

omitted).   The Tenth Circuit held:

> However, we see no reason why "special circumstances" should not be applied to
> clearly defined elements of an unusual proceeding such as the one before us.   The
> underlying purpose for the [Mitchell v. Forsyth, 472 U.S. 511 (1985),] rule is that a
> defendant can challenge the trial court's determination and need not go to trial at all
> until he has that opportunity.   Therefore, to proceed with a trial while such an
> appeal is pending unjustifiably causes a defendant to face a trial, incur attorneys'
> fees and to waste the trial court's and parties' time.   As mentioned above, because
> the Plaintiff resisted Defendant's Motion to Stay the trial and failed to file a motion
> to certify the appeal as frivolous, he was responsible for the district court
> proceeding with the trial without jurisdiction.   This case exemplifies the precise
> problem that the Supreme Court in Forsyth was trying to avoid.   Consequently, to
> award attorneys' fees to the Plaintiff for a trial which was caused by the Plaintiff to
> be conducted without jurisdiction would be unjust to the Defendant for whom the
> Forsyth decision was designed to protect.   This in our view constitutes special
> circumstances.   Cf. Palmer v. City of Chicago, 806 F.2d 1316 (7th Cir.
> 1986)(plaintiff may be prevailing for award of fees if case becomes moot, unless
> plaintiff caused the mootness).

979 F.2d at 185.   Because of these special circumstances, the Tenth Circuit did not allow one of

the plaintiff's attorneys to recover any fees and limited the fees of the other two attorneys to half of

their requested fees from the time between the filing of the appeal and the entering of the settlement agreement.   See 979 F.2d at 185.

    This case is distinguishable from Stewart v. Donges.   Here, Ysasi did not cause the case to erroneously proceed to trial.   The Defendants were not required to needlessly spend time and money defending themselves in a trial that was eventually voided.   Ysasi succeeded at trial, securing a verdict that was over four times as large as the Defendants' settlement offer, rather than settling for an amount that was less than half of a prior jury verdict.   Ysasi was the prevailing party, and the Defendants have not argued that there are any special circumstances -- other than Ysasi having three attorneys -- that would warrant substantially smaller attorneys' fees.   Ysasi has reasonably explained how all three attorneys came to represent him and their roles in the case.   It was reasonable for Mr. Fredlund to want to add another attorney with more civil rights experience -- Mr. Proctor -- and for Mr. Fredlund and Mr. Proctor to want to add an attorney with more trial experience and with the necessary resources to fund the case -- Mr. Blenden.   Mr. Fredlund is, in comparison to Mr. Blenden, a relatively young lawyer.   Mr. Proctor is experienced and well-known in South-Eastern New Mexico.   Mr. Blenden is an experienced, well known, and respected lawyer in New Mexico.   The Court has known about Mr. Blenden almost since the time it came to New Mexico.   Additionally, it is reasonable for Mr. Blenden and Mr. Proctor to keep Mr. Fredlund on the case because of Mr. Fredlund's relationship with Ysasi.   The Court finds nothing wrong with these three attorneys representing Mr. Ysasi.   While three attorneys may create duplicitous work, the Court will address the duplicitousness by reviewing the Defendants' line-by-line objections to Ysasi's attorneys' requested fees rather than arbitrarily cutting the requested fees by a substantial amount.

## III.    THE COURT WILL REDUCE SOME OF YSASI'S REQUESTED ATTORNEYS' <u>FEES.</u>

The Court will reduce some of Ysasi's requested attorneys' fees.   Mr. Blenden asserts that he worked 180.25 hours on the case.   <u>See</u> Blenden Time Sheet at 3.   Mr. Proctor asserts that he worked 244 hours on the case.   <u>See</u> Proctor Time Sheet at 1-12.   Mr. Fredlund asserts that he worked 106.5 hours on the case.   The Court will reduce Mr. Blenden's asserted hours by 38.25 hours, Mr. Proctor's asserted hours by 36.75 hours, and Mr. Fredlund's asserted hours by 5 hours. Ysasi addressed almost every hour that Ysasi's attorneys contend they worked on the case by arguing that the time is reasonable or unreasonable.   The Court will address only the entries that the Defendants contend are unreasonable.

One of the things that makes this Motion difficult is that the time records of Ysasi's three attorneys' are of poor quality, lack detail, and are general in their wording.   Their generality raises some concern that they were not done contemporaneously and had to be retrospectively re-created, at least in places.   When bills are recreated, some time is lost to the ages, [4] and some time will appear padded.   In any case, poor time keeping often penalizes the plaintiff's attorneys twice, because lost time can never be recovered if not sought, and because the Court has an obligation to reduce unreasonable fee requests.

Plaintiffs' attorneys often do not create good time records, because their records are rarely reviewed.   Insurance defense attorneys often have insurance adjustors scrutinize their bills, so their time records are usually bullet proof in their details.   While no one likes to do time sheets, in the end, they are important to all lawyers if they want and expect to get fully compensated.

Taking a helicopter view of Ysasi's total fees and costs request, it seem high given that there was little discovery done.   The trial lasted two days, and the pretrial briefing was not

---

[4]Ysasi's attorneys never, for example, request reimbursement for a number costs for which the Court suspects they expended their own money, such as gasoline costs, meals, and hotel bills.

extensive.   Their requested hours constitute essentially sixty days of full-time work for three

lawyers; that amount seems high.   Also, while the Court is allowing, under the circumstances of

the case, collection for three attorneys, the three attorneys did not always work together efficiently

and smoothly, and the Defendants should not have to pay for their inefficiency.   Finally, on a

line-by-line basis, some entries seek payment that the Court cannot justify.   In the end, these

factors put downward pressure on the fee award.

At the same time, while the briefing of Ysasi's attorneys was not the most extensive, their

efficiency in getting the case to trial was good, and they could not have hoped for a much better

result.   As the Court's Memorandum Opinion and Order, filed February 28, 2014 (Doc. 89)("MSJ

MOO") -- in which the Court considered the Defendants' objections to Ysasi's proposed jury

instructions -- demonstrates, the case had some legal complexity and wrinkles.   It was not the

easiest civil rights trial, and Ysasi's attorneys deserve to be paid more than what a straight-forward

excessive-force case might warrant.   The Court concludes that the fee award should be reduced,

but not greatly.

### A.    MR. BLENDEN'S REQUESTED ATTORNEYS' FEES.

Mr. Blenden asserts that he spent 180.25 hours on the case at a rate of $300.00 per hour.

The Defendants address almost all of Mr. Blenden's hourly entries.   The Court finds that some

reduction in time is appropriate, but that Mr. Blenden is entitled to an award for most of the time he

alleges.

### 1.    August 14, 2013, Telephone Conference.

Mr. Blenden states that he spent two hours on August 14, 2013, on: "Phone conference

with Proctor on file."   Blenden Time Sheet at 1.   The Defendants argue that, because three

attorneys were not necessary in the case, "conferences between the attorneys should not be

recoverable."   Response at 7.   The Court has already determined that it was not unreasonable to have three attorneys in this case.   Given Mr. Blenden's trial experience and his resources to fund the case, it is reasonable for Mr. Proctor and Mr. Fredlund to ask for his assistance.   This two-hour telephone conference is reasonable.

## 2.   **Entries Regarding Flynn.**

Mr. Blenden notes two time entries on August 14, 2013, for half an hour and one fourth of an hour that are titled: "Bill Flynn."   Blenden Time Sheets at 1.   He notes an entry on August 19, 2013, for half an hour titled: "Letter to Flynn and payment," and another entry for one hour titled: "Review Flynn Documents."   Blenden Time Sheets at 1.   The Defendants argue that these entries are not sufficiently detailed to justify payment.   See Response at 7.   They also contend that Mr. Fredlund is seeking to recover fees for five hours relating to communications with Flynn and, thus, the charges by Mr. Blenden and Mr. Fredlund are duplicative and excessive.   See Response at 7.   Finally, the Defendants argue that the half-hour entry for the payment letter is excessive, unreasonable, and appears to be a clerical cost.   See Response at 7.

First, the Court finds that these entries are sufficiently detailed to warrant payment.   While Mr. Blenden could have better explained what he was doing with Flynn on August 14, 2013, Flynn was Ysasi's expert witness, and it is reasonable to assume that Mr. Blenden was either reviewing the case with Flynn or discussing Flynn's testimony.   The United States Court of Appeals for the Third Circuit has stated the required specificity for attorney time sheets:

> In Rode [v. Dellarciprete, 892 F.2d 1177 (3d Cir. 1990)], the Third Circuit stated that "a fee petition is required to be specific enough to allow the district court 'to determine if the hours claimed are unreasonable for the work performed.'" (Rode, 892 F.2d at 1190 (quoting Pawlak v. Greenawalt, 713 F.2d 972, 978 (3d Cir.1983))).   A fee petition should include "some fairly definite information as to the hours devoted to various general activities, e.g. pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, e.g., senior partners, junior partners, associates."   However, "it is not necessary to know the

exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney." Rode, 892 F.2d at 1190 (quoting Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp., 487 F.2d 161, 167 (3d Cir.1973)). We found sufficient specificity where the computer-generated time sheet provided "the date the activity took place." Id. at 1191.

Keenan v. City of Philadelphia, 983 F.2d 459, 473 (3d Cir. 1992)(alterations omitted). Mr. Blenden's entries are sufficient enough for the Court to determine the general activity he was performing and that the amount of time spent was reasonable. Cf. Tenn. Gas Pipeline Co. v. 104 Acers of Land, More or Less, in Providence Cnty., State of R.I., 32 F.3d 632, 634 (1st Cir. 1994)(holding that district court did not abuse its discretion by finding that time sheets were not sufficiently detailed when they contained entries such as "'Confer with co-counsel,' 'Confer with client,' 'Review materials,' 'Review documents,' and 'Legal Research' without any indication of the subject matter involved").

Second, these entries are not duplicative with Mr. Fredlund's entries. While Mr. Fredlund may have noted five hours he spent communicating with Flynn, those five hours occurred in January, 2013. See Fredlund Time Sheet at 1-2. Mr. Blenden's communications with Flynn took place in August, 2013 -- seven months after Fredlund's communications. Mr. Blenden's communications also occurred closer to trial. These entries are, thus, not duplicative with Mr. Fredlund's.

Third, the Court concludes that Mr. Blenden's half-hour entry for writing a letter to Flynn with payment is recoverable as attorneys' fees because it is not a clerical task. It is true that clerical tasks are not recoverable as attorneys' fees. See Johnson v. District of Columbia, 850 F. Supp. 2d 74, 80 (D.D.C. 2012)(Facciola, J.). The Supreme Court, in the paralegal context, quoted a United States Court of Appeals for the Fifth Circuit case to distinguish between legal and clerical work. See Missouri v. Jenkins, 491 U.S. 274, 288 n.10 (1989).

> It is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available.   Such non-legal work may command a lesser rate.   Its dollar value is not enhanced just because a lawyer does it.

Missouri v. Jenkins, 491 U.S. at 288 n.10 (quoting Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717 (5th Cir. 1974), abrogated on other grounds by Blanchard v. Bergeron, 489 U.S. 87 (1989)).   Ysasi noted that, when he retained Mr. Blenden, Flynn had not yet been paid.   See Tr. at 3:12-19 (Blenden).   This letter appears to be connected to paying Flynn.   Drafting a transmittal letter concerning the payment of an expert witness and paying the expert witness are tasks that that can "be accomplished by non-lawyers."   Missouri v. Jenkins, 491 U.S. at 288 n.10.   But the letter may be more than a transmittal letter.   Mr. Blenden is investing his personal wealth in the case. Even if he had to tell a staff member to write the letter and cut the check, he should be compensated this one-half hour it takes to supervise the investment of hundreds of dollars of his money.   And if he gave Flynn any instruction or guidance, the letter is substantive.   The Court does not believe that the minimal amount of time on this project is all clerical.   The drafting of this letter and cutting a personal check to the expert is, thus, not a clerical task, and Mr. Blenden can recover attorneys' fees for drafting the letter and making the payment.   Accordingly, the Court will not deduct this half hour from Mr. Blenden's total time and will also not adjust the remaining entries.

### 3.     August 19, 2013, Review of the Complaint.

On August 19, 2013, Mr. Blenden notes a two hour entry, titled: "Review Complaint." Blenden Time Sheet at 1.   The Defendants argue that, because the Complaint is eleven pages, two hours reviewing the Complaint is excessive, especially after Mr. Blenden spent two hours conferring with Mr. Proctor about the case on August 14, 2013, and another two hours conferring with Mr. Proctor on September 3, 2013.   See Response at 7.   The Court agrees.   Mr. Blenden did

not need two hours to review an eleven page complaint.   Mr. Blenden already conferred with

Mr. Proctor about the case, and it is unlikely that Mr. Blenden was able to deduce much additional

information from the eleven pages in the Complaint.   The Court finds that this entry is excessive.

It is possible that Mr. Blenden did more -- such as research or writing in his initial review, but he

does not state that he did.   All that the Court has to go on is the naked entry.   As to that entry, the

Court concludes that one hour should have been sufficient to review the Complaint and will deduct

one hour from Mr. Blenden's total time.

### 4.    September 11, 2013, Meeting With Ysasi.

On September 11, 2013, Mr. Blenden notes that he spent six hours in an entry titled: "met

with client in Hobbs."   Blenden Time Sheet at 1.   The Defendants argue that, because

Mr. Fredlund also seeks to recover nine hours' worth of fees for meetings with Ysasi that took

place before Mr. Blenden's meeting, Mr. Blenden's request is duplicative and unnecessary.   See

Response at 8.   They again contend that the case did not require three attorneys.   See Response

at 8.   If Mr. Blenden were the only attorney, the Court would probably not have any concerns

about his time, but this is where the multiple lawyers for Ysasi creates some inefficiencies that

should not be billable to the Defendants.   As a result of multiple attorneys, the Court concludes

that Mr. Blenden spending six hours meeting with Ysasi is unreasonable.   If the Defendants'

contention is correct,[5] Mr. Blenden and Mr. Fredlund spent fifteen hours meeting with Ysasi in

about a nine-month period.   Even though Ysasi is the plaintiff and served as a key witness at trial,

this amount of time is excessive.   Mr. Blenden did not need to spend six hours meeting with

---

[5]The Defendants' nine-hour total appears to include a two-hour entry by Mr. Fredlund,
where he asserts that he visited the arrest site with Ysasi, and a four-hour entry, where he asserts
that he interviewed Ysasi, and Ysasi's brother, mother, and girlfriend.   See Fredlund Time Sheet
at 1-2.   According to Fredlund's time sheet, he spent only three hours meeting with or talking to
Ysasi outside of visiting the event's location and interviewing other witnesses.   See Fredlund
Time Sheet at 1-3.

Ysasi, even if this meeting was his first with Ysasi.   After one hour, it is unlikely that Mr. Blenden could learn any additional information about the case files.   He likely learned all of the necessary information in the first hour, especially considering his conversations with Mr. Proctor and considering the time he spent reviewing the case.   Accordingly, the Court will reduce this entry from six hours to one hour, reducing Mr. Blenden's total time by five hours.

### 5.   September 16, 2013, Meeting With Flynn.

On September 16, 2013, Mr. Blenden made a two-hour entry, which states: "Reviewing expert witness."   Blenden Time Sheet at 1.   The Defendants argue that this "entry is not detailed enough to warrant payment" and that, because Mr. Fredlund also seeks to recover attorneys' fees for five hours relating to communications with Flynn, the entry is duplicative and excessive. Response at 8.   The Court disagrees.   Flynn was Ysasi's sole expert witness in the case.   This entry, accordingly, corresponds with Mr. Blenden's interactions with Flynn and/or reviewing Flynn's report.   A request for attorneys' fees must be sufficiently detailed for the Court to determine the reasonableness of the fees, but each hourly entry does not need to state the precise activity that was undertaken.   Keenan v. City of Philadelphia, 983 F.2d at 473 ("However, 'it is not necessary to know the . . . the precise activity to which each hour was devoted . . . ."   (quoting Rode v. Dellarciprete, 892 F.2d at 1190)).   The Court will thus leave this entry undisturbed.

### 6.   September 16, 2013, Case Conference with Mr. Proctor.

On September 16, 2013, Mr. Blenden notes a one-hour entry, titled: "Request Proctor obtain Fredlund File and case conference."   Blenden Time Sheet at 2.   The Defendants argue that, because the case did not require three attorneys, Mr. Blenden cannot charge for conference time.   See Response at 8.   The Defendants also argue that this entry is not sufficiently detailed, because "there is no description as to the subject matter of the conference."   Response at 8.   The

Court has already concluded that it was reasonable to have three attorneys in the case. Additionally, the entry is sufficiently detailed for the Court to determine its reasonableness.   As the Third Circuit has held, "'it is not necessary to know . . . the precise activity to which each hour was devoted nor the specific attainments of each attorney.'"   Keenan v. City of Philadelphia, 983 F.2d at 473 (quoting Rode v. Dellarciprete, 892 F.2d at 1190).   It is reasonable for Mr. Blenden to confer with his co-counsel for one hour, especially given that, according to his time sheet, he had not talked with Mr. Proctor about the case in over a month.   See Blenden Time Sheet at 1-2 (noting that Mr. Blenden conferred with Mr. Proctor on August 14, 2013, and then again on September 16, 2013).   Mr. Blenden was not required to detail the precise topic of that conversation.   See Keenan v. City of Philadelphia, 983 F.2d at 473 ("However, 'it is not necessary to know the . . . the precise activity to which each hour was devoted . . . .'" (quoting Rode v. Dellarciprete, 892 F.2d at 1190)).   The Court, thus, finds the entry reasonable.

**7.      September 24, 2013, Preliminary Hearing.**

On September 24, 2013, Mr. Blenden notes an entry for two hours, titled: "Attending Preliminary."   Blenden Time Sheet at 2.   The Defendants object to this entry.   See Response at 9.   At the hearing, Ysasi noted that this was an errant entry and that Mr. Blenden did not attend a preliminary hearing on that date.   See Tr. at 2:22-3:2 (Blenden).   Because Mr. Blenden has conceded that this entry is incorrect, the Court will omit it from Mr. Blenden's total hours, reducing Mr. Blenden's total hours by two.

**8.      October 4, 2013, Continued Settlement Conference.**

On October 4, 2013, Mr. Blenden notes an entry for a quarter of an hour, titled: "Settlement Conference Continued."   Blenden Time Sheet at 2.   The Defendants argue that this entry "appears to be a charge for reviewing an Order by the Court."   Response at 9.   The Defendants

contend that fifteen minutes reviewing a brief Order of Continuance appears to be excessive and unreasonable.   See Response at 9.   The Court agrees.   It is unclear what this entry entails.

The parties originally had a settlement conference set for October 4, 2013.   See Order Granting Joint Motion to Vacate Settlement Conference at 1, filed September 24, 2013 (Doc. 32)("Order to Vacate").   The parties moved to vacate this settlement conference on September 31, 2013.   See Joint Motion to Vacate and Re-Set Rule 16 Settlement Conference at 1-2, filed September 18, 2013 (Doc. 31).   The Court vacated the October 4, 2013, settlement conference on September 24, 2013, and ordered that the parties' October 1, 2013, telephonic status conference be a scheduling conference to reset their settlement conference.   See Order to Vacate at 1.   At the October 1, 2013, status conference, the parties reset their settlement conference for November 21, 2013.   See Clerks Minutes Before the Honorable Carmen E. Garza United States Magistrate Judge, filed October 1, 2013 (Doc. 35)("Clerk's Minutes").

While the Defendants contend that Mr. Blenden's October 4, 2013, entry appears to be for Mr. Blenden reading the Court's Order to Vacate, see Response at 9, Mr. Blenden should have been aware before October 4, 2013, that the settlement conference was rescheduled for November 21, 2013.   The parties agreed at the October 1, 2013, meeting to reset the settlement conference for November 21, 2013.   By October 4, 2013, Mr. Blenden should have read the Order to Vacate. Mr. Blenden did not attend the October 1, 2013, status conference, see Clerk's Minutes at 1 (noting that Mr. Proctor and Mr. Fredlund appeared for Ysasi), yet it is unlikely that Mr. Blenden did not discover that the settlement conference had been reset until the day that it was originally set. Accordingly, it is not clear that this fifteen minute entry corresponds with Mr. Blenden's reading of the Order to Vacate.   Because the Court is unable to determine the substance of Mr. Blenden's October 4, 2013, entry, the Court finds that it is not sufficiently detailed.   The Court will, thus,

exclude one-fourth of an hour from Mr. Blenden's total hours by reducing Mr. Blenden's total hours by one-fourth of an hour.

### 9.    October 15, 2013, Travel and Ysasi Deposition.

Mr. Blenden notes, on October 12, 2013, that he spent five hours in an entry titled: "Travel & Attend Plaintiff's Deposition."   Blenden Time Sheet at 2.   The Defendants argue that Mr. Blenden should separate the time spent traveling and the time spent in the deposition.   See Response at 9.   They argue that all three of Ysasi's attorneys attended the deposition in Hobbs, New Mexico, and that Mr. Blenden and Mr. Proctor's presence were unnecessary and unreasonable.   See Response at 9.   They also contend that Mr. Blenden should not be compensated for his travel time at his full hourly rate.   See Response at 9.   The Court disagrees that all three attorneys were not necessary at the deposition.   Mr. Blenden argued most of the case at trial, and Mr. Fredlund examined Ysasi at trial.   Mr. Proctor drafted the Response to Memorandum in Support of Motion for Particial [sic] Summary Judgment, filed January 15, 2014 (Doc. 48)("MSJ Response"), in which he partially relied on Ysasi's deposition.   It was reasonable for all three attorneys to attend Ysasi's deposition given their various roles in the case.   The Court will, thus, not reduce their fees merely because all three attorneys attended the deposition.

Next, the Court will reduce Mr. Blenden's requested fee amount to account for his travel time.   The Tenth Circuit has held that "out-of-pocket expenses incurred during litigation may be awarded as attorneys fees under section 1988 if (1) the expenses are not absorbed as part of law firm overhead but are normally billed to a private client, and (2) the expenses are reasonable." Jane L. v. Bangerter, 61 F.3d at 1517 (citing Bee v. Greaves, 910 F.2d 686, 690 (10th Cir. 1990)). These expenses include travel expenses.   See Bee v. Greaves, 910 F.2d at 690 ("We specifically included in this category an attorney's travel expenses upon a 'finding that such costs would

normally be billed to a private client.'" (quoting Ramos v. Lamm, 713 F.2d at 559)). This inquiry requires the Court to determine "whether such expenses are normally billed to a private client in the local area and, if so, evaluate the reasonableness of the amount." Bee v. Greaves, 910 F.2d at 690. Based on the Court's experience and research, travel time in New Mexico is normally billed at an attorney's hourly rate. While there are certainly cases that suggest one-half rates for travel, see Valdez v. Squier, 676 F.3d 935, 914 (10th Cir. 2012)(noting that plaintiffs' requested fees for travel time was at half their hourly rate); Jackson v. Los Lunas Ctr., 489 F. Supp. 2d 1267, 1277 (D.N.M. 2007)(Parker, S.J.)(noting that plaintiff's attorney charged half his normal hourly rate for travel time); Home Loan Inv. Bank, F.S.B. v. Goodness & Mercy, Inc., No. CIV 10-4677 ADS/ETB, 2012 WL 1078963, at *7 n.6 (E.D.N.Y. Jan. 4, 2012)(Boyle, M.J.)("The Court notes that 'it is customary in this circuit to reduce attorney's fees by fifty percent for travel time.'" (quoting Pennacchio v. Powers, No. CIV 05-0985, 2011 WL 2945825, at *1 (E.D.N.Y. July 21, 2011)(Levy, M.J.))), the Court did not charge one-half rates when it was in practice and did not think most of the bar did -- neither the plaintiff's bar nor the defense bar. Nor should they. New Mexico is a huge state -- the fifth largest in land area. The bar also has some of the lowest rates in the nation. There is not a sound reason for New Mexico lawyers to bill at one-half rates, foregoing other full-time employment. Work is work, whether it is done in the library or on one of New Mexico's long roads. If a lawyer can spend time on the cellular phone doing other work, great, but they should not, of course, double bill. Otherwise, they should be compensated for hours on the road, which in New Mexico usually means in a car (because, in New Mexico, there is little or even no in-state air service) after hours. As the United States Court of Appeals for the Seventh Circuit has noted:

> Moreover, to award nothing for travel time in this case would be unreasonble [sic]. As the defendants do not contend that the total number of hours that the plaintiffs'

lawyers put in on the case was excessive, the travel time must have been worthwhile, and the only question therefore is the appropriate billing rate for it. Probably that is the same billing rate as would be appropriate for the other time the lawyers put in on the case.   When a lawyer travels for one client he incurs an opportunity cost that is equal to the fee he would have charged that or another client if he had not been traveling.   That is why lawyers invariably charge their clients for travel time, and usually at the same rate they charge for other time, except when they are able to bill another client for part of the travel time (a lawyer might do work for client A while flying on an airplane to a meeting with client B).   And if they charge their paying clients for travel time they are entitled to charge the defendants for that time in a case such as this where the plaintiffs have shown a statutory right to reasonable attorneys' fees.   Of course, if the travel is unnecessary the time spent in travel should be subtracted out, cf. <u>Hensley v. Eckerhart</u>, supra, 103 S. Ct. at 1939-40; but that, as we have said, is not an issue here.   If, though reasonable in terms of the amount of time consumed, the travel is unnecessarily luxurious, the court should not reimburse the plaintiffs for the entire out-of-pocket expenses of travel; but that is a completely separate issue from the hourly billing rate and an issue that the defendants will be entitled to explore on remand.   The presumption, which the defendants have not attempted to rebut, should be that a reasonable attorney's fee includes reasonable travel time billed at the same hourly rate as the lawyer's normal working time.

<u>Henry v. Webermeier</u>, 738 F.2d 188, 194 (7th Cir. 1984).

Accordingly, Mr. Blenden is entitled to his normal hourly rate for his travel time.   Rather than calculating his travel time hours separately and then using a different hourly rate to calculate his total fees, the Court will not reduce his requested travel time hours by half and will apply his normal rate to these hours.   Consequently, the Court will not reduce this entry.

### 10.   <u>October 16, 2013, Answers to Interrogatories and Production Request</u>.

Mr. Blenden asserts that, on October 16, 2013, he spent one hour in an entry titled: "Require of Answer to Interrogatories & Request for Production."   Blenden Time Sheet at 2. The Defendants argue that it is unclear whether this entry relates to discovery and disclosure from Ysasi or from the Defendants.   <u>See</u> Response at 9-10.   They contend that, because Mr. Proctor seeks to recover seven hours for discovery responses, Mr. Blenden's time is duplicative and excessive.   <u>See</u> Response at 10.   It is not necessary for the Court to determine whether

Mr. Blenden was responding to the Defendants' request for discovery and interrogatories, or drafting interrogatories and discovery requests.   The entry only needs to be sufficiently detailed for the Court to determine its reasonableness, see Keenan v. City of Philadelphia, 983 F.2d at 473, and spending eight hours, total, drafting interrogatories and discovery requests, and responding to interrogatories and discovery requests, is reasonable.   Outside of Mr. Proctor's seven hours and Mr. Blenden's one hour, none of Ysasi's attorneys request any fees for time spent either drafting interrogatories or discovery requests, or responding to them.   These eight hours, thus, appear to be the total amount of time that Ysasi's attorneys spent on interrogatories and production requests. Eight hours is a reasonable amount of time, and the Court will not disturb Mr. Blenden's requested one hour.

### 11.      October 17, 2013, and October 18, 2013, Flynn Deposition and Travel.

Mr. Blenden asserts that, on October 17, 2013, he spent four hours performing the work set forth in an entry titled: "Travel to Flynn Deposition"; and for October 18, 2013, he has an eight hour entry titled: "Flynn Deposition & Travel."   Blenden Time Sheet at 2.   The Defendants argue that Mr. Blenden should have separated his travel time from the time spent in the deposition and that Mr. Blenden should not be compensated at his full hourly rate for his travel time.   See Response at 10.   The Court disagrees.   As previously noted, the custom in New Mexico is for an attorney to bill for travel time at his or her full hourly rate.   Mr. Blenden can recover his full hourly rate for his travel time.   While the Defendants may be correct that Mr. Blenden should have separated his travel time from the time spent in Flynn's deposition, the Court can reasonably assume that Mr. Blenden spent eight hours traveling and four hours in the deposition.   On October 17, 2013, Mr. Blenden spent four hours traveling.   See Blenden Time Sheet at 2.   On October 18, 2013, he spent eight hours traveling and conducting the deposition.   See Blenden Time Sheet at 2.

It is likely that, because he spent four hours traveling the day before the deposition, four of the eight hours from October 18, 2013, were spent traveling, and four were spent in the deposition. The Court will thus fully compensate Mr. Blenden for the four hours spent in Flynn's deposition but will not decrease his requested travel hours.   Accordingly, the Court will allow Mr. Blenden to recover four hours for the deposition and eight hours for traveling.   The Court will thus not reduce Mr. Blenden's total requested hours.

### 12.   November 11, 2013, Review of Disclosures.

Mr. Blenden made a one-hour entry on November 11, 2013, titled: "Review of disclosure with Max."  Blenden Time Sheet at 2.   The Defendants argue that this entry is not sufficiently detailed to warrant payment.   See Response at 10.   They also argue that time spent reviewing Mr. Proctor's work is not recoverable, because it is duplicative and excessive.   See Response at 10.   This entry appears to be related to the disclosure of some information to the Defendants during discovery or from the Defendants to Ysasi.   It does not appear to be Mr. Blenden reviewing Mr. Proctor's work, but rather Mr. Blenden discussing some disclosure with Mr. Proctor.   The entry is, thus, not duplicative.   Moreover, this entry is sufficiently detailed to allow the Court to determine its reasonableness.   See Keenan v. City of Philadelphia, 983 F.2d at 473 ("A fee petition should include 'some fairly definite information as to the hours devoted to various general activities, e.g. pretrial discovery, settlement negotiations,' . . . .  '[I]t is not necessary to know . . . the precise activity to which each hour was devoted . . . .'"  (quoting Rode v. Dellarciprete, 892 F.2d at 1190)).   Spending one hour discussing with co-counsel whether to disclose certain materials to the opposing party, or the disclosures that the opposing side has made, is reasonable.   The Court will, thus, not disturb this requested hour.

### 13.   November 14, 2013, Review and Rejection of Settlement Offer.

Mr. Blenden asserts that, on November 14, 2013, he spent two hours performing the work described in an entry titled: "Review of and rejection of offer of judgment -- Client and Proctor." Blenden Time Sheet at 2.   The Defendants argue that spending two hours discussing a settlement offer is excessive, and that, because Mr. Proctor also seeks to recover two hours for reviewing the settlement offer, this entry is duplicative and unreasonable.   See Response at 10.   The Court disagrees.   A settlement offer will likely end the case.   If accepted, it would likely bar Ysasi from recovering damages above the proposed offer.   Such a decision -- whether to accept or reject a settlement offer -- should not be taken lightly.   Mr. Blenden notes that he spent two hours with Ysasi and Mr. Proctor reviewing the offer and eventually rejecting it.   This amount of time is not excessive or unreasonable.   A competent attorney should spend the necessary time to digest a proposed settlement offer, and the necessary time to explain the offer to his or her client.   Too many lawyers short change their time with their client, after leaving the client on the outside looking in on his or her litigation.   Spending time with a client and giving him or her advice whether to reject the offer and roll the dice for a bigger payoff at trial is in the future time well spent, especially if the case goes south on the client at trial.   It appears that Mr. Blenden and Mr. Proctor did their job of working directly with the client professionally and thoroughly.   The Court finds this entry reasonable and will not adjust it.

### 14.   November 21, 2013, Settlement Conference and Travel.

On November 21, 2013, Mr. Blenden made an entry for twenty-four hours titled: "Settlement Conference & Travel to Albuquerque ($45,000.00)."   Blenden Time Sheet at 2.   The Defendants argue that this amount of time is excessive and that the Settlement Conference lasted about five hours.   See Response at 10.   The Court agrees that this amount of time is excessive and

that Mr. Blenden cannot be compensated for all of it.   First, Mr. Blenden can recover his full hourly rate for travel time.   Mr. Blenden does not state what amount of time he spent traveling. Mr. Blenden works in Carlsbad, New Mexico.   See Blenden Aff. at 3 (noting on his signature block that his office is in Carlsbad).   He notes that the Settlement Conference took place in Albuquerque.   See Blenden Time Sheet at 2.   Consequently, Mr. Blenden may recover his hourly rate for his travel time between Carlsbad and Albuquerque as long as that time was dedicated exclusively to Ysasi's case.

    The parties do not state the distance between Carlsbad and Albuquerque, or the time it takes to travel between the two cities.   The Court must, accordingly, take judicial notice of this fact.   Rule 201 of the Federal Rules of Evidence allows the Court to, at any stage of the proceeding, take notice of "adjudicative" facts that fall into one of two categories: (i) facts that are "generally known within the territorial jurisdiction of the trial court"; or (ii) facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."   Fed. R. Evid. 201(b), (f).   "Adjudicative facts are simply the facts of the particular case."   United States v. Wolny, 133 F.3d 758, 764 (10th Cir. 1998)(quoting Advisory Committee Notes to rule 201).   The Court has discretion to take judicial notice of such facts, regardless whether requested.   See Fed. R. Evid. 201(c) ("The court . . . may take judicial notice on its own . . . .").   To determine the appropriate amount of travel time that Mr. Blenden may recover, the Court must take judicial notice of the amount of time it takes to travel between Carlsbad and Albuquerque.   Travel time is a fact of which courts regularly take judicial notice.   See, e.g., Green v. Burlington N. & Santa Fe Ry. Co., No. CIV 05-1596 L, 2006 WL 154329, at *1 n.3 (N.D. Tex. Jan. 19, 2006)(Lindsay, J.)(using Maps.com to take judicial notice of the travel time between the federal courthouse in Fort Worth, Texas, and the federal courthouse in Dallas, Texas);

<u>Kurschinske v. Meadville Forging Co.</u>, No. CIV 06-0087, 2008 WL 4462294, at *5 (W.D. Pa. Sept. 30, 2008)(Sean, J.)(taking judicial notice of the travel time between Pittsburgh, Pennsylvania, and Erie, Pennsylvania, to calculate reasonable attorneys' fees); <u>Home Loan Inv. Bank, F.S.B. v. Goodness & Mercy, Inc.</u>, 2012 WL 1078963, at *7 n.6 (taking judicial notice of the travel time from Central Islip, New York, to Manhattan, New York); <u>Witkowski v. Int'l Bhd. of Boilermakers, Iron Shipbuilders, Local Union 145</u>, No. CIV 06-0874, 2010 WL 1433104, at *12 (W.D. Pa. Apr. 7, 2010)(Conti, J.)(using MapQuest.com to take judicial notice of the travel time between Reynoldsville, Pennsylvania, and an attorney's office in Pittsburgh, Pennsylvania). The Court will take judicial notice of the time it takes to travel between Carlsbad and Albuquerque.

According to Mapquest.com, Googlemaps.com, and other mapping services, the travel time between Carlsbad and Albuquerque is between four hours and fifteen minutes and four hours and thirty minutes.  <u>See</u> Mapquest.com (noting that travel time from Carlsbad to Albuquerque is four hours and twenty-nine minutes); Googlemaps.com (noting that travel time from Carlsbad to Albuquerque is four hours and fifteen minutes); Bing.com/maps (noting that travel time from Carlsbad to Albuquerque is four hours and thirty minutes).  The Court is from Hobbs and its parents still live there, so the Court has made that drive many times.  It doubts it could drive to Carlsbad in less than four hours.   Also, that amount of time is a lot of time without a break or two. Because Mr. Blenden does not separate his travel time from time spent at the Settlement Conference, the Court will adopt the greater travel time, and take judicial notice that the travel time between Carlsbad and Albuquerque is four hours and thirty minutes.  Mr. Blenden had to drive from Carlsbad to Albuquerque and back, making his total travel time nine hours.   For his travel time to and from the Settlement Conferences, Mr. Blenden is entitled to recovery for nine hours.

For the remainder of Mr. Blenden's requested hours, the Court will compensate him for only the time spent at the Settlement Conference.   Mr. Proctor asserts in his time sheet that the Settlement Conference lasted four hours, and that he spent an additional two hours with Ysasi after the conference and additional two hours with Ysasi before the conference going over the settlement offer.   <u>See</u> Proctor Time Sheet at 2.   The Defendants assert that the Settlement Conference lasted five hours.   <u>See</u> Response at 10.   Mr. Proctor contends that he spent eight hours that day working on the case, four of which involved the Settlement Conference.   <u>See</u> Proctor Time Sheet at 2.   It is likely that Mr. Blenden worked more that day than just the actual Settlement Conference.   His time sheet is not sufficiently detailed to determine how much more he worked and on what he worked.   Mr. Blenden has the burden of proving the reasonableness of each hour worked.   <u>See</u> <u>Jane L. v. Bangerter</u>, 61 F.3d at 1510.   The Court will thus not assume that he worked the same amount as Mr. Proctor.   The Defendants contend that the Settlement Conference lasted five hours.   The Court will adopt the Defendants' contention and award Mr. Blenden five hours for the Settlement Conference.   These five hours and the nine hours for travel time brings Mr. Blenden's total hours for November 21, 2013, fourteen hours. Consequently, the Court will reduce Mr. Blenden's total hours by ten hours.

### 15.   <u>December 14, 2013, and October 15, 2013, Motions</u>.

Mr. Blenden notes that, on December 14, 2013, he spent two hours doing the work described in an entry titled: "Reviewing Motion for Summary Judgment"; and an additional two hours in an entry which states: "Conference with Proctor on Summary Judgment."   Blenden Time Sheet at 2.   He notes that, on December 15, 2013, he spent three hours performing the work described in an entry titled: "Conference on Filing Motion in Limine w/Proctor"; one hour performing the work described in an entry titled: "Conference re: Law on Motion in Limine"; and

an additional hour performing the work described in an entry titled: "Conference on Law Motion

to Dismiss."   Blenden Time Sheet at 2.   Mr. Blenden notes that, on January 8, 2014, he spent one

hour doing the work described in an entry titled: "Reviewing Motion in Limine"; and he notes that,

on January 10, 2014, he spent two hours doing the work described in an entry titled: "Reviewing

Proctor Memo on Summary Judg [sic] Motion."   Blenden Time Sheet at 3.   The Defendants

argue that this amount of time spent reviewing the MSJ Response and the Ysasi MIL,[6] in addition

to the twenty-six hours that Mr. Proctor spent preparing the MSJ Response and the Ysasi MIL, are

excessive and unreasonable.   See Response at 10-11.   The Court agrees.   Mr. Blenden's twelve

hours spent reviewing and discussing the MSJ Response and the Ysasi MIL are excessive,

especially when combined with Mr. Proctor's twenty-six hours.   Even though the Court's

Memorandum Opinion and Order on the MSJ was 120 pages long, see MSJ MOO, and the motions

were important to the case, this amount of time is excessive.   The MSJ Response is fourteen pages

long.   See MSJ Response at 1.   The Ysasi MIL is three pages long.   See Ysasi MIL at 1.   The

Memorandum in Support of Motion in Limine, filed January 16, 2014 (Doc. 50)("MIL Memo."),

is eleven pages long.   The Court will, thus, adjust these entries.   Again, these entries show some

inefficiencies in having three lawyers that should not be shifted to the Defendants.   Specifically,

the Court will exclude the hours Mr. Blenden asserts that he spent conferring with Mr. Proctor

about the Motions.   Also, given the work done, the total amount of time that Mr. Blenden and Mr.

Proctor spent on the motions is excessive.   The Court will reduce the amount sought for the four

entries in which they conferred about the motions to one-half hour each.   The Court will also

---

[6]In the Response, the Defendants contend that Mr. Blenden spent nine hours on December
14, 2013.   See Response at 10.   Mr. Blenden asserts that he spent only four hours working on the
case on December 14, 2013.   See Blenden Time Sheet at 2.   The Defendants likely intended to
include the five hours that Mr. Blenden requests from December 15, 2013, which would bring his
total hours from December 14, 2013, and December 15, 2013, to nine.   See Blenden Time Sheet
at 2.

reduce the amount sought for Mr. Blenden's December 14, 2013, two-hour entry for conferring

with Mr. Proctor about the MSJ to one-half hour; the Court will reduce the amount sought for his

three hour-entry from December 15, 2013, to one half hour; and the Court will reduce the amount

sought for his two one-hour entries from December 15, 2013, to one half hour.   These reductions

result in a total reduction of five hours from Mr. Blenden's total time.

### 16.   December 16, 2013, Review of Taser Information.

Mr. Blenden asserts that, on December 16, 2013, he spent four hours performing the work

described in an entry which states: "Review Taser information & reading preliminary in detail."

Blenden Time Sheet at 2.   The Defendants argue that the preliminary likely refers to the

preliminary transcript from Ysasi's criminal case and that all three of Ysasi's attorneys are seeking

to recover fees for time spent reviewing documents from the preliminary hearing.   See Response

at 11.   The Defendants contend that the charges are duplicative, that Mr. Blenden's reference to

the taser information is not sufficiently detailed, and that, at trial, the only evidence regarding a

taser consisted of a one-page report.   See Response at 11.

The Court concludes that this entry is unreasonable and that it should reduce any award for

the work stated there.   First, while the tasering of Ysasi was a significant event in the case,

spending four hours reviewing information on tasers and on the preliminary hearing transcript is

unreasonable.   While the Defendants note that a one-page document was the only evidence

entered at trial, Mr. Blenden may have reviewed additional information concerning tasers.   Mr.

Proctor, however, spent only one hour reviewing information regarding tasers.   See Proctor Time

Sheet at 7.   Even if the taser information concerned more documents than the one-page report,

Mr. Proctor was able to review this information in one hour.   See Proctor Time Sheet at 7.   It is

unreasonable that it would take Mr. Blenden four times as long to review the same information.

Second, the preliminary hearing transcript was only four pages long.   See Response at 13, 18-19.   While the transcript from the hearing was important to Ysasi's case, because, many trial witnesses testified at Ysasi's preliminary hearing -- giving Ysasi potential impeachment materials and giving him insight into the witnesses' testimony -- several hours reviewing a four-page document is excessive.   The Court concludes that Mr. Blenden should have spent, at most, one hour reviewing these four pages.   The Court will, thus, reduce an award for this entry.   It is reasonable for Mr. Blenden to spend one hour reviewing the taser information and one hour reviewing the preliminary hearing transcript.   The Court will thus reduce this entry by two hours.

### 17.   December 17, 2013, Researching and Reading Cases for Motion.

Blenden made a four-hour entry for December 17, 2013, titled: "Research & reading Buck & Manzarnaras and other cases for Motion."   Blenden Time Sheet at 3.   The Defendants argue that these four hours likely relate to the MSJ Response or the Ysasi MIL.   See Response at 11. They contend that, in light of the thirty-six hours[7] that Mr. Proctor spent preparing the MSJ Response and the Ysasi MIL, this amount of time is excessive and duplicative.   See Response at 11.   The Court agrees.   With the discussions between Mr. Proctor and Mr. Blenden regarding the MSJ and the Ysasi MIL (twelve hours), and with Mr. Proctor's preparation of and drafting the motions (twenty-seven hours), Mr. Blenden and Mr. Proctor are requesting thirty-nine hours in fees regarding the preparation and drafting of the motions.   This amount of time is excessive.

The MSJ is three pages long.   See MSJ at 1-3.   The Defendants also filed a twelve-page Memorandum in Support of Motion for Partial Summary Judgment, filed December 12, 2013

---

[7]The Defendants previously contended that Mr. Proctor spent twenty-six hours preparing the MSJ Response and the Ysasi MIL.   See Response at 10-11.   Based on Mr. Proctor's time sheets, it appears that Mr. Proctor is requesting fees for twenty-six hours' for work related to preparing the MSJ Response and the Ysasi MIL.   See Proctor Time Sheet at 3-4.   If the hearing on the motions is considered, Mr. Proctor is requesting twenty-seven hours relating to the motions. See Proctor Time Sheet at 3-4.

(Doc. 44)("MSJ Memo."). Its exhibits are eighteen pages. See MSJ Memo. at 1. The MSJ Response is fourteen pages long. See MSJ Response at 1. The Defendants' Reply on Motion for Summary Judgment, filed January 28, 2014 (Doc. 53)("MSJ Reply"), is twelve pages. Its exhibits are three pages. See MSJ Reply at 1. The Ysasi MIL is three pages long. See Ysasi MIL at 1. The MIL Memo. is eleven pages long. The Defendants' Response to Motion in Limine, filed January 30, 2014 (Doc. 57)("Defendants' MIL Response"), is seven pages long. The Defendants MIL is eight pages long. See Defendants MIL at 1-8. It has five pages of exhibits. See MIL at 1. Spending thirty-nine hours on these motions is excessive. Ysasi's motions comprise of only twenty-eight pages: fourteen for the MSJ Response, three for the Ysasi MIL, and eleven for the MIL Memo. While Mr. Blenden's and Mr. Proctor's asserted time likely includes time spent reviewing the Defendants' motions, the Defendants' motions, including exhibits, total only sixty-eight pages: thirty-three for the MSJ, fifteen for the MSJ Reply, seven for the Defendants' MIL Response, and thirteen for the Defendants' MIL. Assuming Ysasi's attorney's spent one hour per page they wrote -- which is too much in the circumstances of the case -- they still spent eleven hours reviewing the Defendants' sixty-eight pages. This amount of time is too much. The Court will thus reduce some of Mr. Blenden and Mr. Proctor's requested time for drafting and reviewing the motions.

For this entry, Mr. Blenden states that he researched case law for the motions. See Blenden Time Sheet at 3. Mr. Proctor, however, drafted the MSJ Response and the Ysasi MIL. See Proctor Time Sheet at 3-4. It is not clear why Mr. Blended was researching case law for motions that Mr. Proctor drafted and for which Mr. Proctor did his independent research for each motion. Accordingly, Mr. Blenden should not recover fees for this four-hour entry for two reasons. First, Mr. Blenden's and Mr. Proctor's total time working on these particular motions is

too much and needs to be reduced.   Second, Mr. Blenden and Mr. Proctor both bill time for

researching case law; yet, Mr. Proctor drafted the motions and not Mr. Blenden.   Again, the

inefficiencies of multiple lawyers should not be shifted to the Defendants.   Accordingly, the

Court will not compensate Mr. Blenden for this entry.   Consequently, the Court will reduce Mr.

Blenden's total time by four hours.

### 18.   Jury Instructions.

Mr. Blenden asserts that, on January 16, 2014, he worked four hours doing the work

described in an entry titled: "Beginning Research on jury instructions."   Blenden Time Sheets

at 3.   He asserts that, on January 17, 2014, he worked three hours doing the work described in an

entry titled: "Jury Instruction Research."   Blenden Time Sheet at 3.   He further notes that, on

January 20, 2014, he worked five hours doing the work described in an entry titled: "Revising Jury

Instructions," and, finally, he notes that, on January 21, 2014, he worked four hours doing the work

described in an entry titled: "Reviewing 9th & 7th circuit instructions."   Blenden Time Sheet at 3.

The Defendants argue that Mr. Blenden spent sixteen hours researching and preparing jury

instructions, which is in addition to the six and a half hours that Mr. Proctor asserts that he spent on

jury instructions and Mr. Proctor's additional eleven hours that appear to be related to jury

instructions.   See Response at 11-12.   The Defendants contend that most of Ysasi's submitted

jury instructions were from the New Mexico Uniform Jury Instructions.   See Response at 12.

They argue that the hours that Mr. Blenden and Mr. Proctor seek concerning jury instructions are

excessive and duplicative.

The Court concludes that the amount which Ysasi states for these requested hours are not

reasonable.   Mr. Blenden and Mr. Proctor assert that they spent at least twenty-two and a half

hours drafting jury instructions, and potentially thirty-three and a half hours drafting the jury

instructions.   This amount of time is too much.   Clear, accurate, and understandable jury instructions are essential in a trial.   See United States v. Medina-Martinez, 396 F.3d 1, 8 (1st Cir. 2005)("It is a long recognized principle in this Circuit that 'clear, easily understood jury instructions are vitally important in assuring that jurors grasp subtle or highly nuanced legal concepts.'"   (alterations omitted)(quoting United States v. DeStefano, 59 F.3d 1, 4 (1st Cir. 1995))); United States v. Morris, 20 F.3d 1111, 1117 (11th Cir. 1994) ("It is particularly important that the jury instructions be clear and unambiguous."); United States v. Fuller, 162 F.3d 256, 259 (4th Cir. 1998)("Jury instructions serve the important function of informing the jury about its factfinding role, of instructing them on the law, and of informing the jury about its role in applying the law to the facts to determine the ultimate question of the defendant's guilt or innocence."); United States v. Bernett, 495 F.2d 943, 963 (D.C. Cir. 1974)("From the outset we bear in mind the important role of jury instructions in the criminal trial.").   But see Boyd v. Illinois State Police, 384 F.3d 888, 899 (7th Cir. 2004)(Posner, J., concurring)("It may be unrealistic to think that jury instructions are very important to the jury; their principal importance may lie in placing bounds on what the lawyers can say to the jury in their closing arguments." (emphasis in original)).[8]   It is thus reasonable for Mr. Blenden and Mr. Proctor to spend a fair

---

[8]From the Court's perspective as a trial judge, the comments of the Honorable Richard A. Posner, United States Circuit Judge for the Seventh Circuit, about jury instructions reflects the elite's distrust of juries in general and the low esteem in which legal professionals hold lay people. At the beginning of a trial, the Court puts the preliminary instructions on the ELMO so that the jury can read along as the Court reads them aloud.   The Court starts discussing the final instructions in the preliminary instructions.   See Tenth Circuit Pattern Jury Instructions Criminal § 1.01, at 4 (2011)("The final part of the trial occurs when I instruct you on the rules of law which you are to use in reaching your verdict").   At the end of the trial, the Court again puts the jury instructions on the ELMO so that the jury can read the instructions as the Court is reading them aloud.   The Court gives a complete set of its final instructions to each juror for use during deliberation.   See Tom M. Dees, III, Juries: On the Verge of Extinction? A Discussion of Jury Reform, 54 SMU L. Rev. 1755, 1784-84 (2001)(noting that jurors deliberate faster, have fewer legal questions during deliberations, and remain focused during deliberations when provided their own copies of the jury instructions). The Court sends questionnaires to the jurors after every jury trial.   The Court talks

to the jurors in chambers after all jury trials.   The Court specifically asks the jurors how helpful the jury instructions were.   See United States District Court for the District of New Mexico Jury Service Questionnaire, filed December 5, 2014, (Doc. 111)("Jury Questionnaires")("Please indicate how well you understood the Judge's instructions to the jury"; "Were you given a copy of the instructions?"; "If yes, was having a copy helpful?").   They almost always say that the jury instructions were very helpful to them, that it walked them to their decision, that they thought the case was difficult, and they did not know how they would make their decision, but the jury instructions just led them to their decision and the result.   In the questionnaires from this trial, each juror who answered the question stated that he or she had "No Difficulty" understating the Court's instructions.   Jury Questionnaires at 2-11.   One juror commented that the "Instructions were great, they kept us focused."   Jury Questionnaires at 5.

The juries take them seriously, because, in the midst of the adversarial process, an authoritative figure is trying to give them the neutral law to apply.   Trial lawyers know this importance, and many display them up on the ELMO during their closings.   Highly disciplined trial attorneys often present jury instructions on the elements of a case during the first weeks the case are in their office, so that they know exactly what elements they must prove or against what elements they have to defend, and these elements guide their discovery and pretrial briefing. Judge Posner seems alone in his thought about jury instructions.   Perhaps his low regard for jury instructions is a result of never trying a case as an attorney.   See Richard A. Posner, Clinical and Theoretical Approaches to the Teaching of Evidence and Trial Advocacy, 21 QLR 731 (2003)(noting the he has never tried a case as an attorney but he has sat as a volunteer district judge in the Seventh Circuit).   The Court believes that juries are a backbone of our freedom.   In our republic/democratic form of government, after the professionals have passed and signed the laws, it is the lay people that are summoned to apply the law to the particular facts of a case; the professionals are somewhat placed aside.   Nothing is more democratic.

> The Supreme Court has recognized that the jury trial right that the Sixth Amendment affords to defendants was understood at the Founders' time to provide essential protections against government tyranny and safeguards liberty:
>
>> [T]he historical foundation for our recognition of these principles extends down centuries into the common law.   "[T]o guard against a spirit of oppression and tyranny on the part of rulers," and "as the great bulwark of [our] civil and political liberties,"   2 J. Story, Commentaries on the Constitution of the United States 540-541 (4th ed. 1873), trial by jury has been understood to require that "the truth of every accusation, whether preferred in the shape of indictment, information, or appeal, should afterwards be confirmed by the unanimous suffrage of twelve of [the defendant's] equals and neighbours . . . ." 4 [Sir William Blackstone, Commentaries on the Laws of England: In Four Books 343 (William D. Lewis ed., 2007)] (1769) . . . .

Apprendi v. New Jersey, 530 U.S. 466, 477 (2000).   As Hamilton first noted, this belief in the jury trial right as a safeguard to liberty was widely agreed upon during the constitution-framing era:

amount of time researching and drafting proposed jury instructions.   Twenty-two and a half

hours, however, is, under the circumstances of this case, not a reasonable amount of time.

Ysasi submitted a forty-four-page set of jury instructions.   <u>See</u> Plaintiff's Jury

Instructions, filed February 19, 2014 (Doc. 81).   The Defendants submitted an eleven-page set of

jury instructions.   <u>See</u> Defendants' Requested Jury Instructions, filed February 14, 2014

(Doc. 66).   Both parties submitted a fourteen-page set of joint jury instructions.   <u>See</u> Joint Jury

Instructions, filed February 14, 2014 (Doc. 67).   The Defendants filed a four-page motion

objecting to Ysasi's Jury Instructions.   <u>See</u> Defendants' Objections to Plaintiff's Proposed Jury

Instructions, filed February 14, 2014 (Doc. 68).   The Court drafted three sets of preliminary jury

---

The friends and adversaries of the plan of the Convention, if they
agree in nothing else, concur at least in the value they set upon the
trial by jury.   Or if there is any difference between them, it consists
in this; the former regard it as a valuable safeguard to liberty, the
latter represent it as the very palladium of free government.

<u>The Federalist No. 83</u>, at 456 (Scott ed. 1894)(Hamilton).   The jury trial right was
part and parcel of the Framers' belief that the common person should participate in
government, and essential to this participation was ensuring that the judiciary was
justly and correctly effectuating the laws, whether the laws were written or natural
laws.   <u>See</u> Clay S. Conrad, <u>Jury Nullification</u> 45 (1998)(citing Note, <u>The Changing
Role of the Jury in the Nineteenth Century</u>, 74 Yale L. J. 170, 172 (1964)).   <u>See
Diary of John Adams</u>, Feb. 12, 1771, <u>in</u> 2 <u>The Works of John Adams</u> 253 (1850)
(quoted in <u>Blakely v. Washington</u>, 542 U.S. at 306 ("[T]he common people, should
have as complete a control . . . in every judgment of a court of judicature [as in the
legislature.]")); <u>Letter from Jefferson to L'Abbe Arnold</u>, July 19, 1789, in 3 <u>Works
of Thomas Jefferson</u>, 81, 82 (1854) (quoted in Mark D. Howe, <u>Juries as Judges of
Criminal Law</u>, 52 Harv. L. Rev. 582, 582 (1939))("Were I called upon to decide,
whether the people had best be omitted in the legislative or judiciary department, I
would say it is better to leave them out of the legislative.   The execution of laws is
more important than the making of them.").

<u>United States v. Courtney</u>, 960 F. Supp. 2d 1152, 1164 (D.N.M. 2013)(Browning, J.).
Accordingly, the Court has a higher regard of jurors and their ability to understand jury
instructions.   They think they are important.   They are intelligent people and take their important
role seriously.   Courts should too take serious that role, and the elites should not denigrate jurors
in their written opinions.

instructions before filing the final preliminary instructions.   See Court's Third Proposed Preliminary Jury Instructions (with citations), filed February 18, 2014 (Doc. 72); Court's Final Preliminary Jury Instructions (Given), filed February 18, 2014 (Doc. 73).   The Court prepared four drafts of final jury instructions before giving its final instructions.   See Court's Fourth Proposed Jury Instructions, filed February 19, 2014 (Doc. 84); Court's Final Jury Instructions (Given)(without citations), filed February 19, 2014 (Doc. 86).   The Court heard arguments on the jury instructions each day of trial.   See Transcript of Trial at 3:25-11:17 (taken February 18, 2014)("1st Trial Day Tr.")(Blenden, Childress, Court); See Transcript of Trial at 1:8-7:18 (taken February 19, 2014)("2d Trial Day Tr.")(Blenden, Childress, Court).[9]   The jury instructions took time for the Court and the parties to write, because the Court granted summary judgment on some claims, see MSJ MOO at 119-20, and then submitted other claims to the jury.

While sixteen hours preparing the jury instructions is too much, the Court concludes that Mr. Blenden could have reasonably spent as much as ten hours on jury instructions.   The Court will thus reduce the total hours from these entries by six hours and will also reduce Mr. Blenden's total hours by six hours.

### 19.   January 31, 2014, Trip to Hobbs.

For January 31, 2014, Mr. Blenden asserts that he spent three hours performing the work described in an entry which states: "Travel to Hobbs -- confer with Proctor, Judge Shoobridge re: getting Manuel out of jail."   Blenden Time Sheet at 3.   The Defendants argue that costs and expenses concerning Ysasi's "arrest and status because of unrelated criminal charges" are unreasonable and cannot be taxed against the Defendants.   Response at 12.   The Court disagrees.

---

[9]While Mr. Blenden's asserted entries occurred before the Court provided the parties with drafts of its proposed instructions and permitted argument on the drafts at trial, if jury instructions take the Court a substantial amount of time to draft, it is reasonable that the parties would also spend a substantial amount of time on them.

This trip occurred about two and a half weeks before trial.   Mr. Blenden needed for Ysasi to be out

of jail for the trial in this case.   His trip to Hobbs appears to be in relation to this case and not

another criminal case; there is no indication that Mr. Blenden represents Ysasi in the criminal case.

Mr. Blenden can recover attorneys' fees for his trip.   Moreover, his fees will not be reduced for

travel time.   The Court will not reduce Mr. Blenden's requested fees because of travel time[10] and

will not modify this entry.

### 20.   February 7, 2014, Review of Trial Notebook.

For February 7, 2014, Mr. Blenden notes that he worked four hours performing the tasks

described in an entry which states: "Review of Trial Notebooks prepared by Max."   Blenden

Time Sheet at 3.   The Defendants argue that, because Mr. Proctor seeks to recover twelve hours

for preparing the trial notebooks and because Mr. Proctor attended the trial, Mr. Blenden's request

for reviewing the trial notebooks is excessive and unnecessary.   See Response at 12.   The Court

---

[10]It is unclear how much of the three hours Mr. Blenden spent traveling and how much he
spent conferring with Mr. Proctor and the Honorable William G.W. Shoobridge, District Judge,
Div. III, Fifth Judicial District Court, State of New Mexico.   The travel time between Carlsbad
and Hobbs is around an hour and ten minutes.   See Mapquest.com (noting that the travel time
between Carlsbad and Hobbs is one hour and eight minutes); Googlemaps.com (noting that the
travel time between Carlsbad and Hobbs is one hour and five minutes); Bing.com/maps (noting
that the travel time between Carlsbad and Hobbs is one hour and seven minutes).   Consequently,
Mr. Blenden spent between two hours and ten minutes, and two hours and sixteen minutes
traveling: there are not many places to stop between Carlsbad and Hobbs.   His meeting with
Mr. Proctor and Judge Shoobridge could not have been more than fifty minutes, even assuming
Mr. Blenden began the meeting as soon as he arrived in Hobbs and left as soon as the meeting
ended.   His meeting also could have been fairly short.   Without a more detailed time sheet, the
Court cannot be sure.   Because Mr. Blenden has the burden of proving the amount of time spent
on the case and the reasonableness of that time, the Court will treat the entire three hours as travel
time.   It is likely, assuming that Mr. Blenden obeyed the speed limit, that Mr. Blenden spent over
two-thirds of the three hours traveling.   Mr. Blenden could have more accurately detailed the
amount of time he spent at the meeting and the amount of time he spent traveling, but he did not.
Because Mr. Blenden has the burden of proof, it is reasonable, and more fair to the Defendants, to
treat the entire three hours as travel time rather than assuming that Mr. Blenden's meeting with
Mr. Proctor and Judge Shoobridge lasted at least thirty minutes.   In any case, because
Mr. Blenden may recover the same hourly rate for travel time, it is unnecessary to determine the
exact amount of time he spent traveling and that he spent conferring with Judge Shoobridge.

agrees that amount of time is too much.   While Mr. Proctor attended the trial and examined some witnesses, Mr. Blenden argued most of the case.   Mr. Blenden needed to be prepared for the various issues that can arise at trial.   It is reasonable that he would have, in preparation for trial, reviewed the trial notebook that his co-counsel prepared.   It is not reasonable, however, that he would spend four hours reviewing this notebook.   The Court will thus reduce this entry, and Mr. Blenden's total time, by two hours.

### 21.     Trial Preparation, Travel, and Hearing.

Mr. Blenden asserts that, on February 10, 2014, he worked six hours doing the work described in an entry which states: "Reviewing evidence & briefs for motion hearing."   Blenden Time Sheet at 3.   He asserts that, on February 11, 2014, he worked three hours performing the work described in an entry titled: "Making notes for argument of 2-13-14."   Blenden Time Sheet at 3.   Blenden notes that, on February 12, 2014, he worked three hours doing the work described in an entry titled "[r]e-reading case law for motion hearing," and five hours doing the work described in an entry titled "[t]ravel to hearing."   Blenden Time Sheet at 3.   He asserts that, on February 13, 2014, he worked nine hours: working one hour performing the work described in an entry titled "[c]onference with Proctor," and eight hours performing the work described in an entry titled "[p]reparation & hearing."   Blenden Time Sheet at 3.   The Defendants argue that some of these entries are duplicative with time for which Mr. Proctor is seeking recovery.   See Response at 12.   They argue that Mr. Blenden should not recover his full hourly rate for his travel time and that the hearing required only one attorney for Ysasi.   See Response at 12.   The Defendants contend that the hearing lasted two hours, and that fifteen hours of preparation is excessive and unreasonable.   See Response at 12.   They assert that Ysasi abandoned his state-law claims and did not oppose summary judgment for Lea County Detention.   See Response at 12.

As the Court has already concluded that Mr. Blenden may recover his full hourly rate for travel time, the Court will not reduce Mr. Blenden's requested travel time.   Additionally, the Court will overrule the Defendants' other objections.   The Defendants contend that the hearing required only one attorney and that fifteen hours of preparation is excessive.   See Response at 12. The Court disagrees.   The hearing concerned the MSJ, the Ysasi MIL, and the Defendants MIL. See Clerk's Minutes Before District Judge James O. Browning at 1, filed February 13, 2014 (Doc. 77)("Feb. 13, 2014, Clerk's Minutes.").   The hearing lasted one hour and fifty-three minutes. See Feb. 13, 2014, Clerk's Minutes at 1.   While Ysasi abandoned his state-law claims and claims against Lea County Detention, if the Court granted the MSJ, Ysasi would have lost a substantial portion of his case on his other claims as well.   Mr. Blenden had to be prepared to argue against the MSJ at the hearing to save the majority of his case.   The hearing also consisted of two motions in limine; each side filed one.   Finally, the hearing took place five days before trial was set to begin.   It is reasonable that Mr. Blenden would have thoroughly prepared for such a hearing that involved three important motions on the eve of trial.   The Court finds that the amount of time Mr. Blenden spent preparing for the hearing is reasonable and will not adjust that portion of his requested time.   The hearing was important to salvage a federal claim and get to the jury on that claim.   Consequently, the Court will not adjust these entries.

### 22.   **Time at Trial.**

Mr. Blenden asserts that he worked twelve hours on both February 18, 2014, and on February 19, 2014, performing the work described in entries titled: "Trial."   Blenden Time Sheet at 3.   The Defendants again argue that Ysasi did not require three attorneys in the case and that Ysasi should recover attorneys' fees only for the lead attorney in the case.   See Response at 12. As the Court has already concluded, it was reasonable for Ysasi, under the circumstances of this

case, to retain three attorneys in this case.   The Court will, thus, not adjust Blenden's requested hours in these entries.

### 23.   Mr. Blenden's Total Hours.

In his affidavit, Mr. Blenden requests fees for 180.25 hours at $300.00 per hour for a total of $54,075.00.   See Blenden Time Sheet at 3.   According to the Court's analysis above, the Court will reduce Mr. Blenden's requested hours by 38.25 hours.   This reduction brings Mr. Blenden's total hours to 142 hours, which results in Mr. Blenden's total fees being $42,600.00 (142 hours multiplied by $300.00).

### B.   MR. PROCTOR'S REQUESTED ATTORNEYS' FEES.

Mr. Proctor asserts that he spent 244 hours on the case at a rate of $250.00 per hour.[11]   The Defendants address almost each of Mr. Proctor's hourly entries.   The Court finds that some reduction in time is appropriate, but that Mr. Proctor is entitled to an award for most of the time he alleges.

### 1.   October 1, 2013, and February 13, 2014, Review of Preliminary Hearing Transcript.

Mr. Proctor made two entries for October 1, 2013, each for two hours, that are titled: "Review of Preliminary Hearing of Manuel Ysasi Transcribed 1st Time," and "Review of Hearing of Manuel Ysasi and making notes of Officer Testimony (2nd Review)."   Proctor Time Sheet at 1.

---

[11]In his affidavit, Mr. Proctor states that he bills at $250.00 per hour.   See Proctor Aff. ¶ 6, at 2.   In his time sheet, however, he billed at $267.03 per hour.   See Proctor Time Sheet at 1-12. It appears that the extra $17.03 per hour is to account for taxes.   For Mr. Blenden's requested fees, he did not account for taxes but instead multiplied his total hours by $300.   See Blenden Time Sheet at 3.   The Court has previously allowed attorneys to recover gross receipt taxes with their attorneys' fees.   See, e.g, Bell v. Bd. of Educ., No. CIV 06-1137, 2009 WL 1886160, at *22 (D.N.M. June 2, 2009)(Browning, J.); Two Old Hippies, LLC v. Catch the Bus, LLC, 277 F.R.D. 448, 465 (D.N.M. 2011)(Browning, J.).   The Defendants noted at the hearing that they do not object to the rates of Ysasi's attorneys.   See Tr. at 13:2-5 (Childress).   Accordingly, the Court will not adjust Mr. Proctor's calculated rate of $267.03 even though he asserts that he bills at $250.00 per hour.   The Defendants have not objected to Mr. Proctor's tax adjustment, and the Court finds such an adjustment reasonable.

For February 13, 2014, Mr. Proctor made a four-hour entry titled: "Review of Preliminary Hearing Trascripts [sic] (prior to trial)."   Proctor Time Sheet at 8.   The Defendants argue that Mr. Blenden and Mr. Fredlund also seek to recover time spent reviewing the preliminary transcript.   See Response at 13.   They argue that the condensed transcript was only four pages long and that the amount of time that Mr. Proctor spent reviewing it is excessive, especially considering that Mr. Proctor took notes the first time he reviewed the transcript.   See Response at 13, 18-19.   The Court agrees that the amount sought for this work is too much.

As the Court has already noted, more than an hour reviewing a four-page document is too much.   Mr. Proctor should not have spent more than one hour reviewing this document.   It is reasonable, however, that Mr. Proctor would review the preliminary hearing transcript early in the case and then again right before trial.   The Court will compensate Mr. Proctor for these separate reviews of the preliminary transcript, but will permit Mr. Proctor to recover one hour of fees per day reviewing the preliminary hearing transcript.   Accordingly, the Court will reduce the award for Mr. Proctor's total time by three hours.

### 2. October 1, 2013, Nolle Prosequi Review.

Mr. Proctor made a one-hour entry for October 1, 2014, which states: "Review of Nolle Prosque [sic]."   Proctor Time Sheet at 1.   The Defendants argue that the Nolle Prosequi is a one-page document, containing one sentence.   See Response at 13.   They contend that spending one hour reviewing one sentence is excessive.   See Response at 13.   At the hearing, Mr. Proctor noted that, during this one hour, he not only reviewed the document, but also called the prosecutor and Ysasi's prior attorney to determine why the prosecutor dropped the charges against Ysasi.   See Tr. at 19:16-23 (Proctor).   It is reasonable that Mr. Proctor would not only rely on the Nolle Prosequi document but would also call the attorneys in the case to determine why the case was

dropped.   One hour is a reasonable amount of time to make these telephone calls and to review the Nolle Prosequi process.   Accordingly, the Court finds this entry reasonable and will not adjust it.

### 3.   October 15, 2013, Deposition.

Mr. Proctor made for October 15, 2013, a one-hour entry titled "[m]eeting with C0-Counsel [sic] and Manual Ysasi prior to Deposition" and a four-hour entry titled "[d]eposition of Manuel Ysasi."   Proctor Time Sheet at 1-2.   The Defendants argue that all three of Ysasi's attorneys attended Ysasi's deposition and that having all three attorneys present was unnecessary. See Response at 13.   As discussed earlier, it was reasonable for all three attorneys to attend Ysasi's deposition.   Mr. Blenden's presence was necessary to give an opening statement and closing argument at trial.   Mr. Fredlund's presence was necessary to adequately examine Ysasi at trial, and Mr. Proctor's presence was necessary for him to adequately draft the MSJ Response.   It was reasonable for all three attorneys to attend the deposition.   Furthermore, it was reasonable for Mr. Proctor to spend at least one hour preparing Ysasi for the deposition; adequate preparation of a client for his or her deposition often takes as long as the deposition itself or longer.   Accordingly, the Court will not reduce these requested hours.

### 4.   November 14, 2013, Settlement Conference Preparation.

For November 14, 2013, Mr. Proctor made a four-hour entry titled: "Preparation for Settlement Conference."   Proctor Time Sheet at 2.   He also made for November 14, 2013, a one-and-a-half-hour entry titled: "Telephone Status."   Proctor Time Sheet at 2.   The Defendants do not challenge either of these entries, but again argue that Mr. Blenden's twenty-four hour entry for the Settlement Conference is excessive.   See Response at 13-14.  Because the Court has already addressed Mr. Blenden's requested fees, and because the Defendants do not challenge

Mr. Proctor's requested fees for the work, the Court finds these entries reasonable and will leave them undisturbed.

### 5.    November 14, 2013, Review of Scheduling Order.

Mr. Proctor made a one-hour entry for November 14, 2013, which states: "Review of Scheduling Order."  Proctor Time Sheet at 2.  The Defendants argue that one hour reviewing a Scheduling Order is excessive.   See Response at 14.   The Court agrees that this amount of time is too much.  The Scheduling Order, filed June 18, 2013 (Doc. 20)("Scheduling Order"), is only three pages long.   While Mr. Proctor likely had to adjust his calendar to conform with the Court's deadlines from the Scheduling Order, one hour reviewing a three page order and adjusting his calendar is too much.  It is reasonable that Mr. Proctor would spend, at most, fifteen minutes reviewing the Scheduling Order and adjusting his calendar.  The Court will, thus, modify this entry from one hour to one quarter hour.   This reduction results in a three quarter hour reduction in Mr. Proctor's total fees.

### 6.    November 21, 2013, Review of Offer of Judgment.

Mr. Proctor made a two-hour entry for November 21, 2013, titled: "Review of Offer of Judgment with Client."  Proctor Time Sheet at 2.  The Defendants argue that Mr. Blenden also seeks to recover two hours for reviewing an offer of judgment with Mr. Proctor and Ysasi.   See Response at 14.   The Defendants assert that two hours reviewing a settlement offer is excessive and that it was unnecessary for both attorneys to be present to review the offer.   See Response at 14.   The Defendants also contend that it is unclear what Mr. Proctor reviewed on November 21, 2013, because the Defendants served only one offer of judgment on December 13, 2013.   See Response at 14.   Because Mr. Proctor notes that he reviewed an offer of judgment on November 21, 2013, see Proctor Time Sheet at 2, and because Mr. Blenden notes that he reviewed an offer of

judgment on November 14, 2013, see Blenden Time Sheet at 14, 2013, it appears that Mr. Proctor and Mr. Blenden's entries do not refer to the Defendants' December 13, 2013, offer of judgment. See Response at 14.

While it is unclear whether Mr. Proctor's entry refers to a settlement offer that Ysasi contemplated sending the Defendants, whether it refers to an oral or unfiled settlement offer that the Defendants made to Ysasi, or whether it refers to Defendants' December 13, 2013, settlement offer but Mr. Proctor and Mr. Blenden's dates are incorrect, the two-hour entry is reasonable. Settling a case and relinquishing any potential claims that a plaintiff may have against a defendant is a weighty decision that parties and attorneys should not take lightly. Spending a total of four hours -- two for Mr. Blenden and two for Mr. Proctor -- discussing and reviewing a settlement offer is not an excessive amount of time. It is reasonable that Mr. Proctor desired to fully discuss the settlement offer, its ramifications, and its potential risks with Ysasi. This two-hour entry is thus reasonable, and the Court will not modify it.

### 7.   November 21, 2014, Settlement Conference.

For November 21, 2014, Mr. Proctor made a four-hour entry titled: "Settlement Conference." Proctor Time Sheet at 2. The Defendants argue that Mr. Blenden also seeks to recover fees for attending the settlement conference, and that it was not necessary for both Mr. Blenden and Mr. Proctor to attend the settlement conference. See Response at 14. The Court disagrees. As the Court has already noted, settling a case is a significant event, one which a party and attorney should not take lightly. Similarly, a settlement conference is significant as well. It is reasonable that multiple attorneys would represent a party at a settlement conference. Accordingly, it was reasonable for Mr. Blenden and Mr. Proctor to attend the settlement conference.

### 8.     November 21, 2013, Visit With Ysasi.

Mr. Proctor made a two-hour entry for November 21, 2013, titled: "Visit with Client after Settlement Conference."   Proctor Time Sheet at 2.   The Defendants argue that these two hours are duplicative of the two hours that Mr. Proctor spent reviewing the offer of judgment.   See Response at 14.   The Court disagrees.   After a four-hour Settlement Conference, Mr. Proctor and Ysasi likely better understood the Defendants' position, and likely better understood their own case, its weaknesses, and its strengths.   It is reasonable that Mr. Proctor would discuss the case and the Settlement Conference with Ysasi immediately after the Settlement Conference.   The Court thus finds this two-hour entry reasonable and will not adjust it.

### 9.     December 15, 2013, Review of Settlement Offer.

Mr. Proctor made a one-half-hour entry for December 15, 2013, titled: "Review of Offer of $77,000.00."   Proctor Time Sheets at 2.   The Defendants argue that, in light of Mr. Proctor's other hours spent reviewing the offer of judgment, this entry is excessive.   See Response at 15. The Court disagrees.   As the Court has already stated, settling a case is a significant event.   It is reasonable for Mr. Proctor to spend one half hour reviewing the Defendants' settlement offer in addition to the previous four hours that he and Mr. Blenden spent reviewing the offer of judgment. The Court finds this entry reasonable and will not disturb it.

### 10.     January 9, 2014, Motion for Extension of Time.

For January 9, 2014, Mr. Proctor made a two-hour entry titled: "Dictation of Motion for Extension of Time and Memorandum Order of Continuance Review."   Proctor Time Sheet at 3. He also made, for January 9, 2014, a one-hour entry titled: "Motion for Extension of Time." Proctor Time Sheet at 3.   The Defendants argue that these two motions relate to the MSJ Response.   See Response at 15.   They contend that Ysasi did not timely respond to the MSJ until

after the Defendants filed the Notice of Completion of Briefing, filed January 8, 2014 (Doc. 46)(asserting that Ysasi failed to respond to the MSJ within the required time period).   See Response at 15.   The Defendants assert that they should not have to pay for Ysasi's failure to meet deadlines and that three hours spent preparing a basic motion and order is excessive.   See Response at 15.

Moving for an extension of time to respond to a motion or to file a motion is routine in federal court.   Rarely will a case travel from the filing of the complaint to trial without a party filing a motion to extend time or a motion to continue.   It is not unreasonable for Ysasi to request an extension of time to respond to a motion.   Indeed, the Defendants did not oppose Ysasi's Motion for Extension of Time to File Answer and Memorandum, filed January 9, 2014 (Doc. 47)("Motion for Extension")(noting that the Defendants do not oppose Ysasi's request for an extension of time).   It is thus not unreasonable for Mr. Proctor to request an extension of time or for him to request attorneys' fees for the time spent drafting the Motion for Extension. Spending three hours drafting the Motion for Extension, however, is too much.   The unopposed Motion for Extension is three pages long.   See Motion for Extension at 1-3.   In drafting the Motion for Extension, it appears that Mr. Proctor contacted the Defendants' counsel to discuss the extension before filing the motion, because it was unopposed.   See Motion for Extension at 2. Mr. Proctor is asserting that it took him three hours to make a telephone call and to draft a three-page motion.   This amount of time is too much for the time involved.   The Court will, thus, reduce the award for these two entries from three hours to one hour, reducing Mr. Proctor's total time by two hours.

**11.** **January 10, 2014, Meeting With Mr. Blenden.**

For January 10, 2014, Mr. Proctor made a four-hour entry that states: "Meeting with Dick Blenden in Carlsbad."  Proctor Time Sheet at 3.  The Defendants argue that the entry is not sufficiently detailed to warrant payment and that, because the case did not require three attorneys, any conference time Ysasi's attorneys spent conferring with one another should not be recoverable.  See Response at 15.  This entry is sufficiently detailed, and it is reasonable for three attorneys to represent Ysasi.  First, Mr. Proctor's request needs to "include 'some fairly definite information as to the hours devoted to various general activities, e.g. pretrial discovery, settlement negotiations,'" but "'it is not necessary to know . . . the precise activity to which each hour was devoted . . . .'"  Keenan v. City of Philadelphia, 983 F.2d at 473 (quoting Rode v. Dellarciprete, 892 F.2d at 1190).  This four-hour entry is sufficiently detailed for the Court to determine the reasonableness of the hours.  It is reasonable for Mr. Proctor to spend four hours with his co-counsel discussing the case less than two months before trial.  Second, the Court has already concluded that it was reasonable for three attorneys to represent Ysasi.  Accordingly, the Court will not adjust this entry.

**12.** **January 20, 2014, Jury Instructions.**

For January 20, 2014, Mr. Proctor notes that he worked six hours in an entry titled: "Review of Jury Instructions with Citations."  Proctor Time Sheet at 5.  He also asserts that he worked an additional half hour in an entry titled: "Review of Jury Instructions without Citations."  Proctor Time Sheet at 5.  The Defendants assert that, in addition to these six and a half hours, Mr. Proctor is seeking to recover an additional ten hours for research that appears to be related to jury instructions.  See Response at 15.  They argue that, because Ysasi filed the MSJ Response on January 15, 2014, this research is related to jury instructions.  See Response at 15.  The

Defendants contend that Mr. Proctor and Mr. Blenden have requested a total of thirty-two and a half hours for jury instructions, which they maintain is excessive.   See Response at 15-16.

It is not clear to which hours, other than these on January 20, 2014, the Defendants assert that Mr. Proctor worked on jury instructions.   The Defendants argue that "Mr. Proctor also seeks an additional ten (10) hours for research beginning on 2/5/2014 which appears to be related to Jury Instructions."   Response at 15.   For February 5, 2014, Mr. Proctor made a three-hour entry titled: "Research of Case Law for Consent and Revocation [sic] of Consent: Keylow."   Proctor Time Sheet at 5.   Mr. Proctor also made an entry for February 5, 2014, titled: "Preparation of Trial Notebook together with case law and Plaintiff and Defendant's Motions with Complaint."   Proctor Time Sheet at 5.   It thus appears that, on February 5, 2014, Mr. Proctor researched case law to prepare his trial notebook and not to draft jury instructions.   Similarly, Mr. Proctor made a two-hour entry for February 6, 2014, titled "[r]esearch on Case Law on Unreasonable Force" and a four-hour entry for February 7, 2014, titled "[r]eview of Cases against dismissal and collateral estoppel because of lower Court probable cause: Kinslow."[12]   Proctor Time Sheet at 6.   These two entries are not explicitly related to jury instructions.   Mr. Proctor may have reviewed cases unreasonable force cases that are similar to Ysasi's case to prepare for trial.   Additionally, it unlikely that Mr. Proctor's research concerning collateral estoppel was directly related to the jury instructions.   Collateral estoppel is a legal question, not factual, and is thus an issue that the Court, and not the jury, decides.   See United States v. Gallardo-Mendez, 150 F.3d 1240, 1242 (10th Cir. 1998)(noting that collateral estoppel is a question of law).   It is not clear -- and unlikely -- that these additional entries directly relate to jury instructions.   Mr. Proctor notes, however, for February 13, 2014, that he spent one hour in an entry titled: "Review of Courts 4th Proposed Jury

_____

[12]Kinslow appears to refer to the Tenth Circuit opinion Kinslow v. Ratzlaff, 158 F.3d 1104 (10th Cir. 1998).   Kinslow v. Ratzlaff is a four-page opinion.   See 158 F.3d at 1104-07.

Instruction."   Proctor Time Sheet at 8.   Accordingly, between January 20, 2014, and February 13, 2014, Mr. Proctor spent at least seven and a half hours on jury instructions and at most sixteen and a half hours.[13]

Regardless whether Mr. Proctor spent seven and a half or sixteen and a half hours on jury instructions, the amount of time that Mr. Proctor spent on jury instructions is reasonable.   As the Court has noted, clear and accurate jury instructions are essential in a trial.   See, e.g, United States v. Medina-Martinez, 396 F.3d at 8.   Even if Mr. Proctor spent sixteen and a half hours working on jury instructions, and Mr. Blenden spent an additional sixteen hours, this amount of time would be reasonable.   Consequently, the Court will not adjust these requested hours.

### 13.   <u>January 21, 2014, Motion to Continue</u>.

Mr. Proctor made for January 21, 2014, an entry stating: "Motion and Order to Continue." Proctor Time Sheet at 5.   The Defendants argue that this entry is duplicative of time that Mr. Proctor has already charged for the Motion for Extension.   See Response at 16. Mr. Proctor's January 21, 2014, entry appears to relate to the Motion for Continuance, filed January 21, 2014 (Doc. 52)("Motion to Continue").   The Motion to Continue concerns continuing the Court's hearing on the MSJ, see Motion to Continue at 1, while the Motion for Extension

_____

[13]Mr. Proctor also asserts that, on February 17, 2014, he spent one hour performing the tasks described in an entry stating: "Review of Courts First, Second and Third Proposed Jury Instruction."   Proctor Time Sheet at 10.   He notes that, on February 18, 2014, he worked four hours doing the work described in an entry stating: "Jury Instructions."   Proctor Time Sheet at 11. He also states that, on February 19,2 2014, he spent three hours performing the work described in an entry titled: "4th Proposed Jury Instruction, PT Order, PL Jury Instruction, Special Verdict, Minutes, Courts First Propose Jury INsturction [sic], Courts 3rd Proposed Pre-Lim [sic] Jury Insturction [sic], Courts, [sic] Final Prelim, Court's Final Prelim Jury Instructions, Courts 2nd Proposed."   Proctor Time Sheet at 12.   The Defendant's asserted sixteen and a half hours that Mr. Proctor spent on jury instructions may also include these entries.   Because the Defendants did not specify to which entries they were referring, the Court is unable to determine to what entries they are objecting.   In any case, as the Court described earlier, given the importance of the jury instructions, and the number of drafts that the Court made, sixteen and a half hours is a reasonable amount of time to spend on jury instructions, and the Court will not reduce any entry because Mr. Proctor spent an excessive amount of time on jury instructions.

concerns a request that the Court allow an extension of time to respond to the MSJ, see Motion for Extension at 1.   The two motions are related but not identical or duplicative.   Each is distinct. The Court thus finds that they are not duplicative and that spending an hour drafting the Motion to Continue is reasonable.   Because both motions were unopposed, Mr. Proctor had to spend time conferring with Defendants' counsel.

### 14.    January 31, 2014, Tara Woods Subpoena.

For January 31, 2014, Mr. Proctor asserts that he worked one hour in an entry titled: "Supooena [sic]: Tara Woods."   Proctor Time Sheet at 5.   The Defendants argue that, because Ms. Woods did not testify at trial, Mr. Proctor cannot recover one hour for subpoenaing her.   See Response at 16.   Ms. Woods is the assistant district attorney who dismissed the criminal complaint against Ysasi.   See MSJ Response ¶ 19, at 8.   Ysasi contends that Ms. Woods would testify about the facts and circumstances surrounding the original criminal complaint against Ysasi.   See Pretrial Order at 18, filed February 18, 2014 (Doc. 78)("Pretrial Order").   The Defendants do not explain why this entry is not compensable.   They do not argue that Mr. Proctor intentionally wasted time subpoenaing Ms. Wood.   On the first day of trial, the Court informed the parties that he would grant the MSJ in part, dismissing some of Ysasi's claims.   See 1st Trial Day Tr. at 7:3-8:1 (Court).   Mr. Proctor may have subpoenaed Ms. Woods but then, after the Court granted the MSJ in part, decided that her testimony was no longer needed.   Mr. Proctor also may have subpoenaed Ms. Woods but then, as the case progressed at trial, determined that Ms. Woods' testimony was unnecessary.   That Ms. Woods did not testify does not mean that Mr. Proctor cannot recover attorneys' fees for subpoenaing her.   See Barrera v. Weiss & Woolrich S., 900 F. Supp. 2d 1328, 1333 (S.D. Fla. 2012)(Graham, J.)(rejecting argument that prevailing party should not recover subpoena costs and witness fees for witnesses who did not

testify).   Accordingly, the Court finds this entry reasonable and will not reduce fees for the work it describes.

### 15.   February 5, 2014, Research Unlawful Arrest.

Mr. Proctor notes that, on February 5, 2014, he worked three hours in an entry stating: "Research of Case Law on Unlawful Arrest."   Proctor Time Sheet at 5.   The Defendants argue that, because Ysasi did not prevail on his unlawful arrest claim, he cannot recover fees for the time Mr. Proctor spent researching this claim.   See Response at 16.   The Court has already concluded that Ysasi was the prevailing party even though he did not prevail on all of his claims.   Ysasi's unsuccessful unlawful arrest claim and his successful excessive force claim are related, because they are based on a common core of facts: Ysasi's arrest.   The Court will not reduce Mr. Proctor's attorneys' fees merely because he was unsuccessful on some of his claims.   See Hensley v. Eckerhart, 461 U.S. at 440 ("Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised."); Jane L. v. Bangerter, 61 F.3d at 1512 ("We have refused to permit the reduction of an attorneys fee request if successful and unsuccessful claims are based on a 'common core of facts.'").   Accordingly, the Court will not reduce Mr. Proctor's requested fees -- even for hours spent researching a claim that, in the end, was unsuccessful.   The Court will thus not modify this entry.

### 16.   Trial Notebook and Trial Exhibits.

Mr. Proctor asserts that, on February 5, 2014, he worked a total of seven hours described in three entries.   See Proctor Time Sheet at 5.   He asserts that he worked two hours doing the work described in an entry stating: "Preparation of Trial Notebook together with case law and Plaintiff and Defendant's Motions with Complaint"; three hours doing the work described in an entry

stating: "Preparation of Trial Notebook"; and two hours doing the work in an entry stating: "Preparation of Plaintiff's Exhibits for Trial Notebook."   Proctor Time Sheet at 5.   Mr. Proctor made for February 6, 2014, a five-hour entry stating: "Preparation of and Review of proposed Trial Exhibits from Pre-Liminary [sic] Hearing filed and medical file."   Proctor Time Sheet at 6.   He also made for February 7, 2014, a one-hour entry stating "[r]eview of Exhibits of Defendant's Counsel in support of motion for partial summary judgment: Hassen Affidavit adn [sic] Jail Records," and a five-hour entry stating "[p]reparation of Trial Exhibits."   Proctor Time Sheet at 6. The Defendants contend that it is unclear whether Mr. Proctor's trial notebook is distinct from the trial exhibits.   See Response at 16-17.   The Defendants contend that Ysasi provided them with only nineteen exhibits and that Ysasi untimely produced the exhibits to the Defendants.   See Response at 17.   They argue that four of the nineteen exhibits related to medical expenses and that the Court excluded them at trial because Ysasi did not have an authenticating witness.   See Response at 17.   They contend that Mr. Proctor's eighteen[14] hours that he spent on the trial notebook and trial exhibits, in addition to Mr. Blenden's four hours reviewing the trial notebook, are excessive.   See Response at 16-17.   The Defendants further contend that Mr. Blenden's four hours reviewing the trial notebook are duplicative.   See Response at 17.

Eighteen hours preparing a trial notebook and preparing trial exhibits is too much. Mr. Proctor asserts that he spent five hours preparing a trial notebook, eleven hours preparing trial exhibits, and two hours preparing both a trial notebook and trial exhibits.   See Proctor Time Sheet

---

[14]The Defendants assert that Mr. Proctor spent nineteen hours on his trial notebook and trial exhibits -- seven on February 5, 2014, and twelve on February 6, 2014, and on February 7, 2014.   See Response at 16-17.   It appears, however, that Mr. Proctor is requesting eighteen hours for this work -- seven hours on February 5, 2014, five hours on February 6, 2014, and six on February 7, 2014 -- and not nineteen.   See Proctor Time Sheet at 5-6.   Mr. Proctor's remaining hours from February 6, 2014, and February 7, 2014, concern preparing a witness list, subpoenaing a witness, researching case law, and conferring with Ms. Woods.   See Proctor Time Sheet at 6. Regardless whether Mr. Proctor spent eighteen or nineteen hours preparing his trial notebook and trial exhibits, the Court would find the amount of time reasonable.

at 5-6.   First, it is reasonable for Mr. Proctor to spend some time preparing a trial notebook, but five to seven hours is too much.   While every attorney tries cases differently, a trial notebook -- containing notes, documents, motions, et cetera -- can be beneficial at trial.   It is, however, not reasonable for Mr. Proctor to spend seven hours preparing such a notebook for a two-day trial. Second, it is not reasonable that Mr. Proctor spent eleven to thirteen hours preparing and reviewing his trial exhibits.   Ysasi only had nineteen trial exhibits.   <u>See</u> Response at 17.   Even with the time Mr. Proctor spent compiling these exhibits and reviewing them, thirteen hours is too much.

The Court concludes that Mr. Proctor should have spent, at most, five hours preparing the trial notebook and three hours preparing and reviewing the exhibits.   The Court will thus reduce Mr. Proctor's total time from these entries by ten hours.

### 17.      <u>February 6, 2014, Sara Yue Subpoena</u>.

Mr. Proctor made for February 6, 2014, a one-hour entry stating: "Subpoena: Sara Yue." Proctor Time Sheet at 6.   The Defendants argue that this hour is not compensable, because Yue did not testify at trial.   <u>See</u> Response at 17.   Ysasi asserted that Yue would testify to Ysasi's physical harm that was caused by the Defendants' conduct.   Pretrial Order at 17.   Recovering fees for subpoenaing a witness is not dependent on a witness testifying.   <u>See</u> <u>Barrera v. Weiss & Woolrich S.</u>, 900 F. Supp. 2d at 1333.   There are a number of reasons why Mr. Proctor did not call Yue to testify at trial.   Mr. Proctor may have intended to call Yue at trial as a rebuttal witness if the Defendants asserted that Ysasi did not suffer physical injuries but her testimony proved unnecessary, or Mr. Proctor may have decided not to call Yue as a witness after seeing other witnesses testify.   In any event, Mr. Proctor's attorneys' fees should not be reduced because he changed his strategy or decided not to call a witness after subpoenaing her.   The Court will not modify this entry.

### 18. February 7, 2014, Collateral Estoppel Research.

Mr. Proctor asserts that, on February 7, 2014, he worked four hours doing the tasks described in an entry titled: "Review of Cases against dismissal and collateral estoppel because of lower Court probable cause: Kinslow."   Proctor Time Sheet at 6.   The Defendants argue that Mr. Proctor should not recover fees for these four hours, because Ysasi did not succeed on his unlawful arrest claim.   See Response at 17.   As the Court has already concluded, because Ysasi was the prevailing party, and because his successful and unsuccessful claims were related, the Court will not reduce Mr. Proctor's requested fees merely because Ysasi did not succeed on all of his claims. See Hensley v. Eckerhart, 461 U.S. at 440 ("Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised."); Jane L. v. Bangerter, 61 F.3d at 1512 ("We have refused to permit the reduction of an attorneys fee request if successful and unsuccessful claims are based on a 'common core of facts.'").   The Court will not reduce Mr. Proctor's requested fees and will not modify this entry.

### 19. February 10, 2014, Review of MSJ.

Mr. Proctor notes that, on February 10, 2014, he spent two hours doing the work described in an entry stating: "Review of Defendant's Motion for Partial Summary Judgment."   Proctor Time Sheet at 7.   He notes that, on February 10, 2014, he spent two hours doing the work described in an entry stating "[r]eview Memorandum of Defendant's Motion for Summary Judgment" and another two hours doing the work described in an entry stating "[r]eview of Defendant's Response to Plaintiff's Answer to Motion for Summary Judgment."   Proctor Time Sheet at 7.   The Defendants argue that the MSJ was only two pages long.   See Response at 17. They argue that two hours reviewing a two page document is excessive.   See Response at 17.

The Defendants also contend that Ysasi filed the MSJ Response three weeks earlier and that it is unreasonable for Mr. Proctor to spend two hours reviewing the MSJ Response three weeks after filing it.  See Response at 17-18.   The Court agrees that two hours reviewing the MSJ is excessive, but disagrees that it was unreasonable for Mr. Proctor to spend two hours reviewing the MSJ Response.

The MSJ, not including the certificate of service, is only two pages long.  See MSJ at 2. The Defendants filed, in conjunction with the MSJ, the Memorandum in Support of Motion for Partial Summary Judgment, filed December 12, 2013 (Doc. 44)("MSJ Memo.").   The MSJ Memo. is eleven pages long and includes nineteen pages of exhibits.  MSJ Memo. at 1.  The Court held a hearing on the MSJ on February 13, 2013.  See Feb. 13, 2014, Clerk's Minutes at 1. If Mr. Proctor requested four hours in fees for reviewing the MSJ and the MSJ Memo. to prepare for the hearing, the Court would find this amount reasonable.   Mr. Proctor, however, states that he spent two hours reviewing the MSJ and two hours reviewing the MSJ Memo.  See Proctor Time Sheet at 7.   He thus asserts that he spent two hours reviewing the two-page MSJ.   See Proctor Time Sheet at 7.   This amount of time reviewing a two-page document is excessive. Accordingly, the Court will change this entry from two hours to one half hour, reducing Mr. Proctor's total requested time by one and a half hours.

As for the MSJ Response, it was reasonable for Mr. Proctor to spend two hours reviewing the MSJ Response.   Mr. Proctor asserts that he reviewed the MSJ Response on February 10, 2014, see Proctor Time Sheet at 7, and the Court held a hearing on the MSJ three days later on February 13, 2014, see Feb. 13, 2014, Clerk's Minutes at 1.   To adequately prepare for the hearing, Mr. Proctor likely needed to spend time reviewing the MSJ Response even though he filed it three

weeks earlier.   Accordingly, the Court will not adjust Mr. Proctor's two-hour entry for reviewing the MSJ Response.

### 20.   February 12, 2014, Taser Report.

Mr. Proctor asserts that, on February 12, 2014, he spent one hour performing the work set forth in an entry stating: "Review of Taser Report."   Proctor Time Sheet at 7.   The Defendants argue that this entry is excessive, because only a one page taser report was introduced into evidence at trial.   See Response at 18.   Additionally, the Defendants contend that this entry is duplicative with the time Mr. Blenden spent reviewing taser information.   See Response at 18. The Court disagrees.   As discussed earlier, the tasering of Ysasi was a significant part of Ysasi's excessive force claim.   It is reasonable for Mr. Proctor and Mr. Blenden to spend several hours reviewing information concerning tasers in preparing for trial.   The Court will thus not reduce the fee award based on this entry.

### 21.   February 12, 2014, Jail File Review.

Mr. Proctor notes that, on February 12, 2014, he worked two hours performing the tasks described in an entry stating: "Review Jail File."   Proctor Time Sheet at 7.   The Defendants argue that, because Ysasi did not oppose summary judgment in favor of Lea County Detention, and because the Court dismissed Ysasi's claims against Lea County Detention before trial, Ysasi did not prevail on his claims against Lea County Detention and this two hour entry is excessive.   See Response at 18.   The Court disagrees.   As noted earlier, Mr. Proctor's attorneys' fees will not be reduced because Ysasi was unsuccessful on some of his claims.   See Hensley v. Eckerhart, 461 U.S. at 440; Jane L. v. Bangerter, 61 F.3d at 1512.   Additionally, the Defendants' Response makes the assumption that this entry correlates solely with Ysasi's claims against Lea County Detention.   Mr. Proctor's entry does not denote that his jail file contained information relating

only to Ysasi's claims against Lea County Detention.   See Response at 18.   Ysasi was in jail before and during the litigation in this case.   Mr. Proctor's jail file may relate to Ysasi's time in jail, or evidence from and relating to his time in jail.   In any case, because the Court will not reduce Mr. Proctor's attorneys' fees for unsuccessful claims that are related to Ysasi's successful claims, even if the jail file contained information concerning solely Lea County Detention, the Court would not reduce this entry.   Accordingly, the Court finds the entry reasonable.

### 22.   February 12, 2014, Criminal Complaint Review.

Mr. Proctor notes that, on February 12, 2014, he performed the tasks described in a two-hour entry stating: "Review of Criminal Complaint."   Proctor Time Sheet at 7.   The Defendants contend that the criminal complaint is a one page document and that two hours reviewing this one document is excessive.   See Response at 18.   The Court agrees.   It should not take Mr. Proctor two hours to review a one page document.   The Court will thus modify this entry from two hours to one hour and reduce Mr. Proctor's total hours by one hour.

### 23.   February 12, 2014, Supplemental Reports.

For February 12, 2014, Mr. Proctor notes that he worked three hours performing the work described in an entry stating: "Review of Supplemental Reports by Rider and Brown."   Proctor Time Sheet at 7.   The Defendants argue that Brown's and Rider's supplemental reports were each two pages long.   See Response at 18.   They argue that three hours reviewing four pages is excessive.   See Response at 18.   The Court agrees; it should not take Mr. Proctor three hours to review four pages.   Accordingly, the Court will reduce this entry from three hours to one hour and will reduce Mr. Proctor's total time by two hours.

### 24.   February 13, 2014, Review of Pictures.

Mr. Proctor asserts that, on February 13, 2014, he spent two hours performing the work described in an entry stating "[a]ccumulation of Pictures of Manuel Ysasi after incident," and one hour performing the work described in an entry stating "[r]eview of Pictures."   Proctor Time Sheet at 8.   The Defendants contend that this amount of time is excessive.   See Response at 18. They argue that pictures were in Ysasi's exhibit notebook, but that Ysasi never moved to enter the pictures into evidence.   See Response at 18.   The Court agrees that this amount of time, especially given that some pictures did not come into evidence.   Three hours accumulating and reviewing the pictures is too much.

At trial, the Court admitted two pictures.   See Exhibit and Witness List, filed February 19, 2014 (Doc. 103)("Exhibit List").   Ysasi used three other pictures while examining Ysasi.   See Exhibit List at 1; 2d Trial Day Tr. at 102:13-103:10 (Fredlund, Ysasi).   It appears that, during the three hours from these entries, Mr. Proctor accumulated and reviewed five pictures.   This amount of time is too much given the task.   Even if accumulating the pictures took some time, it should not take more than ten or fifteen minutes to review five pictures.   The Court will thus reduce Mr. Proctor's two-hour entry to three quarter hours and will reduce his one-hour entry to one quarter hour.   This reduction reduces Mr. Proctor's total time by two hours.

### 25.   February 13, 2014, Conference with Blenden.

Mr. Proctor notes that, on February 13, 2014, he spent one hour performing the tasks described in an entry stating: "Conference with Dick Blenden."   Proctor Time Sheet at 8.   The Defendants argue that this one hour is not recoverable, because the case did not require multiple attorneys.   See Response at 19.   The Court has already concluded that it was reasonable for three attorneys to represent Ysasi in this case.   With multiple attorneys, it is reasonable that they would

confer with one another about the case.   It is thus reasonable that, less than a week before trial,

Mr. Proctor would spend at least one hour conferring with Mr. Blenden.   The Court finds this

entry reasonable and will not reduce the fee award based on this entry.

### 26.   February 14, 2014, Review Mr. Fredlund's File.

Mr. Proctor asserts that, on February 14, 2014, he worked four hours doing the work

described in an entry stating: "Review of File Received from Jon Fredlund's Office."   Proctor

Time Sheet at 8.   The Defendants argue that this entry is not sufficiently detailed to warrant

payment.   See Response at 19.   They also contend that it is duplicative of Mr. Fredlund's work

and that it is excessive, because three attorneys were unnecessary.   See Response at 19.

First, the entry is sufficiently detailed.   To be sufficiently detailed, the entry must "include

'some fairly definite information as to the hours devoted to various general activities, e.g. pretrial

discovery, settlement negotiations,'" but "'it is not necessary to know the exact number of minutes

spent nor the precise activity to which each hour was devoted nor the specific attainments of each

attorney.'"   Keenan v. City of Philadelphia, 983 F.2d 473 (quoting Rode v. Dellarciprete,

892 F.2d at 1190).   This entry is sufficiently detailed, because it details information concerning

the general activities that Mr. Proctor performed -- reviewing Mr. Fredlund's file.   See Proctor

Time Sheet at 8.

Second, this entry is not duplicative of Mr. Fredlund's work.   According to Mr. Proctor's

Time Sheet, he had not conferred with Mr. Fredlund about the case at all or at least had not billed

for any time spent conferring with Mr. Fredlund.   See Proctor Time Sheet at 1-8.   Mr. Fredlund's

time sheet notes that, before February 14, 2014, the last communication he had with Mr. Proctor

was on July 25, 2013.   See Fredlund Time Sheet at 2.   According to their time sheets, Mr. Proctor

and Mr. Fredlund had not discussed the case or at least had not billed for any discussions for over

seven months before February 14, 2013.   It is reasonable that, after Mr. Fredlund sent Mr. Proctor his files, Mr. Proctor would spend some time reviewing the files, especially considering the trial was four days away.   Reviewing the files was not duplicative of Mr. Fredlund's work, but instead was part of Mr. Proctor's preparation for trial.

Third, it was reasonable for both Mr. Fredlund and Mr. Proctor to represent Ysasi in this case.   However, four hours reviewing the file is too much.   Mr. Proctor spent one hour conferring with Mr. Fredlund the day before he reviewed the file.   See Proctor Time Sheet at 8.   During that conference, Mr. Proctor likely received the necessary information to evaluate the case, making it unnecessary to spend four hours reviewing Mr. Fredlund's files.   Accordingly, the Court will reduce this entry from four hours to one hour, reducing Mr. Proctor's total time by three hours.

### 27.   February 15, 2014, Review of Use of Force Policy.

For February 15, 2014, Mr. Proctor contends that he worked three hours performing the tasks described in an entry stating: "Review of Lea County Sheriff Department Policy on use of force."   Proctor Time Sheet at 9.   The Defendants contend that the Lea County Sheriff Department's use-of-force policy is only ten pages long and that three hours reviewing a ten-page document is excessive.   See Response at 19.   The Court agrees that the amount of time for that work is too much.   Mr. Proctor may have spent some time reviewing the sheriff's department's use-of-force policy in light of the Court's tentative rulings two days earlier.   At the February 13, 2014, hearing, the Court limited Flynn's testimony by ruling that Flynn could not discuss SOPs.   See Transcript of Hearing at 84:18-85:19 (taken February 13, 2014)(Court)("Feb. 13, 2014, Tr.").   The Court noted, at the hearing, that the Tenth Circuit has restricted the admissibility of SOPs in excessive force cases.   See Feb. 13, 2014, Tr. at 84:22-85:7 (Court).[15]   In light of the Court's

---

[15]While the Court has consistently disagreed with the Tenth Circuit's restrictions on the use of SOP evidence in excessive force cases, the law in the Tenth Circuit and in this District against

ruling on Flynn's testimony, and considering the similarity between the sheriff department's use-of-force policy and SOPs, Mr. Proctor may have been concerned that the sheriff department's use-of-force policy would be inadmissible.   It is reasonable that Mr. Proctor would spend some time reviewing the policy to both better understand the content of the policy and to determine how he could get the Court to admit it at trial.   Three hours is, however, too much.   The policy was only ten pages long.   It is not reasonable that Mr. Proctor would spend more than one hour reviewing the policy and considering its admissibility.   Accordingly, the Court will reduce the award for this entry, and Mr. Proctor's total hours, by two hours.

### 28.   February 15, 2014, and February 16, 2014, Review of Medical Bills.

Mr. Proctor asserts that, on February 15, 2014, he spent three hours performing the tasks described in an entry stating: "Review and Accumulation of Medical Bills from incident: Lea Regional ER, Doctors at ER, MRI, Medical Bill (MRI)."   Proctor Time Sheet at 9.   He also asserts that, on February 16, 2014, he spent one hour performing the tasks described in an entry stating: "Organization of Medical Bills."   Proctor Time Sheet at 9.   The Defendants argue that four hours reviewing and accumulating medical bills is excessive, because, at trial, there were only six pages of exhibits that related to medical bills or medical treatment.   See Response at 19. They also contend that the Court did not admit those medical bill and medical treatment exhibits into evidence, because Ysasi did not have an authenticating witness.   See Response at 19.

Four hours accumulating, organizing, and reviewing medical bills is not excessive.   In his February 15, 2014, entry, Mr. Proctor notes that he had to obtain medical bills from a number of sources.   See Proctor Time Sheet at 9.   Three hours obtaining medical bills from several sources

---

their use is, nonetheless, well established.   See United States v. Rodella, No. CR 14-2783 JB, 2014 WL 6634391, at *8 n.4 (D.N.M. Nov. 20, 2014)(Browning, J.)(citing various cases in which the Court expressed its disagreement with the Tenth Circuit's law concerning the admissibility of SOPs).

and then reviewing those bills is not excessive.   Additionally, for February 16, 2014, Mr. Proctor notes that he spent an hour organizing the medical bills.   See Proctor Time sheet at 9.   While only six pages of trial exhibits consisted of medical bills, Mr. Proctor may have started with more than six pages before organizing the bills and reducing the necessary information to six pages.   It is reasonable that Mr. Proctor would spend one hour organizing the medical bills.   Even though the Ysasi did not attempt to admit the medical bills at trial, they may have been beneficial to Ysasi. The medical bills helped Ysasi's attorneys determine amount of harm that he suffered. Additionally, Ysasi's attorneys may have used the medical bills at trial if the testimony of other witnesses did not sufficiently detail Ysasi's injuries.   Not using them at trial could have been a strategic decision, and Mr. Proctor wanted to have them on hand as a backup plan in case he was unable to present other evidence of Ysasi's injuries.   It was thus reasonable for Mr. Proctor to spend four hours obtaining, organizing, and reviewing the medical bills, and the Court will not reduce the fee award because of this entry.

### 29.   February 17, 2014.

Mr. Proctor asserts that he worked seventeen and a half hours on February 17, 2014.   See Proctor Time Sheet at 9-11.   Mr. Proctor asserts that he performed the tasks described in a one-hour entry stating: "Meeting with Bill Flynn"; in a two-hour entry stating: "Preparation of notes for cross examination of Deputy Brown"; in a one-hour entry stating: "Preparation of notes for Dick Blenden for Opening Statement"; in a two-hour entry stating: "Preparation of Pre-TrialOrder [sic] and Submissions to Counsel"; in a two-hour entry stating: "Meeting with Manuel Ysasi prior to trial and review of Testimony"; in a one-hour entry stating: "Meeting with Heather Thompson prior to trial and review of testimony"; in a two-hour entry stating: "Review of Motion in Limine to Exclude Testimony of Bill Flynn and Research Case Law in 10th Circuit"; in

a one-hour entry stating: "Review of Nor Lea Medical Records"; in a two-hour entry stating: "Print ou [sic] federal Court Docuemtns [sic] -- Research"; a two-hour entry titled: "Preparation for Trial with Co-Counsel in preparation of the Trial"; in a one-hour entry stating: "Review of Courts First, Second and Thrid [sic] Proposed Jury Instruction"; and in a one-half-hour entry stating: "Max had Telephone Confersation [sic] with Dr. Said."   Proctor Time Sheet at 9-11.   The Defendants contend that working seventeen and a half hours in one day appears excessive.   See Response at 19.    They also contend that spending two hours to print out court documents is excessive and is a clerical cost, which is not recoverable.   See Response at 19.   Finally, the Defendants argue that Mr. Proctor should not recover for the two hours he spent meeting with Mr. Blenden, because Ysasi did not need three attorneys.   See Response at 19.

First, Mr. Proctor's total time from February 17, 2014, is not excessive.   Working seventeen and a half hours in one day is not inherently excessive,[16] especially on the eve of trial. The trial started the next day: February 18, 2014.   It is reasonable that Mr. Proctor would work seventeen and a half hours on the eve of trial finishing preparations, reviewing notes, and double checking his evidence and witnesses.   Seventeen and a half hours is not, in and of itself, excessive.

Second, while Mr. Proctor cannot recover attorneys' fees for merely printing court documents, his entry notes that he also conducted research.   An attorney cannot recover fees for performing clerical tasks, see Johnson v. District of Columbia, 850 F. Supp. 2d at 80, and courts regularly classify printing documents as a clerical task.   See Cortes-Reyes v. Salas-Quintana, 806 F. Supp. 2de 470, (D.P.R. 2011)(Casellas, S.J.)("Additionally, several entire entries (and parts of many other entries) billed at attorneys' rates, adding up to several hours, are for clerical tasks such

---

[16]Each of the Court's current law clerks has worked at least one twenty-plus hour day during their time with the Court.

as printing, photocopying, faxing, mailing, and converting documents to PDF format.   This will not do."); <u>Allison v. City of Langsing</u>, No. CIV 03-0157, 2007 WL 2114726, at *1-2 (W.D. Mich. July 19, 2007)(Bell, C.J.)("With respect to time billed for proofing, printing and mailing, the Court agrees with Defendant that these tasks are clerical in nature and should not be billed as professional fees."); <u>Heimer v. Osage Cmty. Sch. Dist.</u>, No. C04-2014, 2005 WL 2807110, at *4 (N.D. Iowa Oct. 26, 2005)(Jarvey, M.J.)(concluding that printing is a clerical task for which attorneys could not recover attorneys' fees).   If Mr. Proctor's entry noted that he only printed out court documents, the hours spent printing would not be recoverable as attorneys' fees. Mr. Proctor, however, notes that he also researched during that two-hour period.   <u>See</u> Proctor Time Sheet at 10.   Researching is not a clerical task.   <u>See</u> <u>King v. State Bd. of Elections</u>, No. CIV 95-0827, 2003 WL 22019357, *3 n.3 (N.D. Ill. Aug. 26, 2003)("Unlike organizing files or picking up documents, research and writing are not typical ministerial tasks.").   Additionally, the time described in this entry is not excessive.   While printing for two hours may be excessive, researching for two hours is not.   The Court will, thus, not reduce Mr. Proctor's requested time, because the Court finds the entry reasonable and it does not describe a clerical task.

Third, it was reasonable for Mr. Proctor to confer with co-counsel on the eve of trial.   The Defendants, again, argue that Mr. Proctor should not recover attorneys' fees for meeting with co-counsel, because Ysasi did not need three attorneys.   <u>See</u> Response at 19.   Because it was reasonable for three attorneys to represent Ysasi in this case, it is also reasonable that his three attorneys would need to meet and confer, especially the day before trial.   This entry is, thus, not excessive, and the Court will not adjust it.

30.    **February 18, 2014, Trial**.

Mr. Proctor asserts that he worked twenty-one and a half hours on February 18, 2014.   See Proctor Time Sheet at 11.   He asserts that he completed the tasks described in a two-hour entry stating: "Preparation of notes for cross examination of Deputy Rider"; in a one-half-hour entry stating: "Review of Complaint for Damages prior to Trial"; in a one-hour entry stating: "Review of Defendant's Trial Exhibits"; in a two-hour entry stating: "Witness LIst [sic]"; in a twelve-hour entry stating: "Trail [sic] in Albuquerque"; and in a four-hour entry stating: "Jury Instructions." Proctor Time Sheet at 11.   The Defendants argue that working twenty-one and a half hours in one day, including twelve hours for trial, appears excessive.   See Response at 20.   They contend that the trial did not last twelve hours either day.   See Response at 20.   Additionally, they argue that all three attorneys should not be compensated for their time at trial, because three attorneys were unnecessary.   See Response at 20.

First, twenty-one and a half hours in one day is not, by itself, excessive.   On the first day of a condensed trial, it is reasonable that Mr. Proctor may have essentially worked all day.   If the trial lasted several weeks and Mr. Proctor billed over twenty-one hours each day of trial, the Court may question Mr. Proctor's asserted hours as well has his physical stamina to maintain that pace.   This trial, however, lasted two days.   It is reasonable that Mr. Proctor, on the first day of a two-day trial, would work over twenty-one hours.   The Court tried cases before it went on the bench and often had to work these hours; particularly in relatively short trials, everything in a short trial is so condensed, while a lawyer can put off some things in a longer trial.   In a two-day trial, a lawyer has to have final jury instructions and final arguments ready to go at the beginning with voir dire and the opening; while in a month-long trial, such tasks can be delayed.   The Court does not find the total time, by itself, unreasonable.

Second, the Court will reduce Mr. Proctor's twelve-hour trial entry to reflect the time spent in trial.   The first day of trial began at 8:32 a.m. and concluded at 5:12 p.m.   See Clerk's Minutes Before District Judge James O. Browning at 1, filed February 18, 2014 (Doc. 101)("Trial Minutes").   The total time at trial, not counting recesses and breaks, was six hours and fifty-seven minutes.   See Trial Minutes at 1.   Including breaks, the first day of trial lasted eight hours and forty minutes.   See Trial Minutes at 1.   Taking into account the time to park, go through security, and set up the courtroom, Mr. Proctor likely spent nine hours at the courthouse on February 18, 2014.   If Mr. Proctor had noted that he worked twelve hours on February 18, 2014, in an entry titled "Trial," without making any additional entries for February 18, 2014, as Mr. Blenden did, Blenden Time Sheet at 3, the Court would find this entry reasonable.   Those twelve hours would likely include preparation time for examinations, reviewing notes, reviewing exhibits, and working on jury instructions.   Mr. Blenden, however, made additional entries for reviewing notes, reviewing exhibits, and working on the jury instructions.   See Proctor Time Sheet at 11.   It is thus unclear what the additional three hours in his twelve-hour entry entails.   Because the Court is unable to determine the reasonableness of these three hours in his twelve-hour entry, the Court will reduce Mr. Proctor's twelve-hour entry to nine hours to reflect the amount of time that Mr. Proctor spent at the courthouse for trial.

Third, it was reasonable for three attorneys to represent Ysasi in this case.   The Court will permit each attorney to recover fees for their time at trial.   The Court will not reduce Mr. Proctor's requested fees because of Mr. Blenden and Mr. Fredlund's presence at trial.   To reflect the Court's reduction of Mr. Proctor's twelve-hour entry, however, the Court will reduce Mr. Proctor's total time by three hours.

31.   **February 29, 2014, Trial**.

Mr. Proctor represents that, on February 29, 2014, he worked twelve hours performing the work described in an entry which states: "Trial in Albuquerque."   Proctor Time Sheet at 11.   He also notes that, on February 29, 2014, he spent one-half-hour performing the work described in an entry which states "[s]pecial Verdict Form," and in one hour accomplishing the tasks in an entry titled: "Court's Final Jury Instruction x2 (review and print)."   Proctor Time Sheet at 11.   Finally, he notes that, on February 29, 2014, he worked four hours performing the tasks described in an entry which states: "4th Proposed Jury Instruction, PT Order, PL Jury Instruction, Special Verdict, Minutes, Courts First Propose Jury INsturction [sic], Courts 3rd Proposed Pre-Lim [sic] Jury Insturction [sic], Courts, [sic] Final Prelim, Court's Final Prelim Jury Instructions, Courts 2nd Proposed."   Proctor Time Sheet at 12.   The Defendants argue that twelve hours for trial is excessive.   See Response at 20.   The Court does not find this time excessive, but will reduce the fee award nonetheless for other reasons.

The second day of trial began at 8:27 a.m. and concluded at 6:19 p.m.   See Trial Minutes at 1.   The total time in trial, not counting recesses and breaks, which included the time in which the jury deliberated, was four hours and forty-three minutes.   See Trial Minutes at 1.   The total time, including recesses and breaks, was nine hours and fifty-two minutes.   See Trial Minutes at 1.   Again, if Mr. Proctor has asserted that he worked twelve hours, without any additional entries, the Court would assume that the twelve-hour entry was reasonable, because that entry would entail all of the additional work that is required for a trial.   Mr. Proctor, however, also billed for additional entries.   These additional entries are troubling to the Court.   Assuming Mr. Proctor's twelve-hour entry encompassed the time in which he was in the courthouse, which was only around ten hours, to recover fees for the additional entries, Mr. Proctor would have had to

work either before arriving at the courthouse or after leaving; otherwise, the entries would constitute double billing.   Mr. Proctor, however, could not have worked on these additional entries in the morning before trial or in the evening after court.

The Court provided the parties with copies of the special verdict form at the beginning of the second day of trial.   See 2d Trial Day Tr. at 1:8-9 (Court).   Mr. Proctor notes that he spent one half hour working on the special verdict form.   See Proctor Time Sheet at 11.   He could not have reviewed or edited the special verdict form before trial on February 19, 2014, because he was given a copy at trial, and he could not have worked on it after trial, because the jury returned a verdict that day.   In the same way, the Court modified the jury instructions as the trial went on the second day.   See 2d Trial Day Tr. 136:18-146:1 (Blenden, Proctor, Childress, Court).   The Court did not finish the third or fourth proposed jury instructions, or the final jury instructions, until the second day of trial.   Consequently, Mr. Proctor could not have reviewed these instructions until after the second day of trial began.   Additionally, because the Court instructed the jury that day, Mr. Proctor could not review the instructions after the second day of trial.   Therefore, his one-hour entry for reviewing the Court's final jury instructions and his three-hour entry for reviewing the Court's proposed jury instructions[17] had to take place during the second day of trial, for which Mr. Proctor already billed twelve hours.   Mr. Proctor cannot recover twice for the same

---

[17]In his February 19, 2014, three-hour entry, Mr. Proctor notes that he reviewed or worked on the preliminary jury instructions and the Court's proposed preliminary jury instructions.   See Proctor Time Sheet at 12.   The Court gave the jury the preliminary instructions on February 18, 2014.   See 1st Trial Day Tr. at 100:17-109:3 (Court).   Mr. Proctor would likely not be working on the preliminary instructions the day after they were given.   Likely, he was using the preliminary instructions and the elements of the causes of action in the preliminary instructions to draft the final jury instructions and to compare the final instructions with the preliminary instructions.   In drafting final jury instructions, the Court often uses the elements from the preliminary instructions and constantly reviews the preliminary instructions to see if the elements are consistent.   If Mr. Proctor had worked on the final jury instructions before the second day of trial, but after the preliminary instructions had been given, he could still recover attorneys' fees for reviewing the preliminary instructions.

hour of work.   The Court will thus compensate him for his time at trial but will exclude his

additional entries for work that he did at trial.   The Court will exclude Mr. Proctor's February 19,

2014, one-half-hour entry, his one-hour entry, and his three-hour entry.   Additionally, the Court

will reduce Mr. Proctor's twelve-hour entry from twelve hours to ten hours to reflect the amount of

time that he spent at the courthouse.   With these modifications, Mr. Proctor's total time is reduced

by six and a half hours.

**32.      February 17, 2014, through February 19, 2014, Travel Time.**

Mr. Proctor notes that, from February 17, 2014, to February 19, 2014, he spent ten hours

performing the tasks described in an entry which states: "Travel Time to and from Albuquerque."

Proctor Time Sheet at 12.   The Defendants argue that billing for travel time at Mr. Proctor's full

hourly rate is excessive and that the Defendants should not have to pay for all three attorneys'

travel time, because the case did not require three attorneys.   See Response at 20.   The Court

disagrees.   Mr. Proctor should recover his full hourly rate for travel time.   Additionally, because

it was reasonable for three attorneys to represent Ysasi in this case, all three may recover for their

travel time.   The Court will thus not disturb the fee award for this entry.

**33.      Mr. Proctor's Total Time.**

In the Motion, Mr. Proctor requests fees for 244 hours at $267.03[18] per hour for a total of

$65,155.51.   See Proctor Time Sheet at 12.   According to the Court's analysis, the Court will

reduce Mr. Proctor's requested hours by 36.75 hours.   This reduction brings Mr. Proctor's total

---

[18]As the Court has previously stated, in his Affidavit, Mr. Proctor asserts that he bills at
$250.00 per hour.   See Proctor Aff. ¶ 6, at 2.   Mr. Proctor, however, in his Time Sheet, billed at
$267.03 per hour.   See Proctor Time Sheet at 1-12.   He asserts in his Affidavit that $65,155.51 is
a fair amount for fees.   See Proctor Aff. ¶ 5, at 2.   To reach this amount, Mr. Proctor charged
$267.03 per hour, rather than $250.00 per hour.   See Proctor Time Sheet at 12.   The Defendants
noted at the hearing that they are not objecting to the rates of Mr. Ysasi's attorneys.   See Tr. at
13:2-5 (Childress).   Accordingly, because the Defendants do not object to Mr. Proctor's rate, and
because Mr. Proctor used $267.03 per hour in his requested fee amount, the Court will apply
$267.03 per hour in calculating Mr. Proctor's fees.

- 83 -

hours to 207.25 hours, which results in Mr. Proctor's total fees being $55,341.97 (207.25 hours multiplied by $267.03).

### C.   MR. FREDLUND'S REQUESTED ATTORNEYS' FEES.

Mr. Fredlund asserts that he spent 106.5 hours on the case at a rate of $250.00 per hour.[19] See Fredlund Aff. ¶ 6, at 2; Fredlund Time Sheet at 1-2.  Like Mr. Blenden's and Mr. Proctor's fee requests, the Defendants object to many of Mr. Fredlund's hourly entries.  See Response at 20-23.  The Court will sustain some of the Defendants' objections and reduce Mr. Fredlund's requested fees, but as a whole will grant Mr. Fredlund his requested fees.

### 1.   January 4, 2013, and January 7, 2013, Jim Klipstine.

Mr. Fredlund notes that, on January 4, 2013, he worked four and a half hours preforming the work described in a one-hour entry which states: "Conference with Jim Klipstine at his office"; in a one-hour entry which states: "Review of file at Klipstine office"; in a one-half-hour entry which states: "Received file from Jim Klipstine"; and in a two-hour entry which states: "Review of

---

[19]While Mr. Fredlund asserts that he spent 106.5 hours on the case and bills at a rate of $250.00, his requested fee of $29,016.56 does not reflect his asserted hourly rate.  See Fredlund Aff. ¶ 5, at 2.  If Mr. Fredlund billed 106.5 hours at $250.00 an hour, his requested fee would be $26,625.00 (106.5 hours multiplied by $250.00).  In his Time Sheet, Mr. Fredlund asserts that he copied 158 pages at $0.10 per page.  See Fredlund Time Sheet at 2.  Even with this additional $15.80 for copies, Mr. Fredlund's total fees should be $26,640.80.  Mr. Fredlund notes that his requested $29,016.56 amount takes into account taxes and costs.  See Fredlund Aff. ¶ 5, at 2.  Mr. Proctor's hourly rate of $267.03 also appears to take into consideration taxes.  Even at Mr. Proctor's hourly rate of $267.03, Mr. Fredlund's total fees would be $28,438.70 (106.5 hours multiplied by $267.03).  With the $15.80 in coping costs, the total would be $28,454.50.  Mr. Fredlund asserts that his total fee request of $29,016.56 includes costs, without detailing what the costs are.  See Fredlund Aff. ¶ 5, at 2.  Assuming Mr. Fredlund and Mr. Proctor are subject to the same taxes, Mr. Fredlund's requested fees appear to include unidentified costs.  Because the Court is unsure of what rate Mr. Fredlund used to calculate his requested fees, in calculating Mr. Fredlund's total fees -- after considering the Defendant's objections -- the Court will apply Mr. Proctor's rate of $267.03.  Mr. Proctor and Mr. Fredlund both assert that they bill at $250.00 per hour.  See Fredlund Aff. ¶ 6, at 2; Proctor Aff. ¶ 6, at 2.  If their hourly rates are adjusted to take taxes into account, they will likely be identical or very close.  The Court will thus apply Mr. Proctor's rate of $267.03 per hour in calculating Mr. Fredlund's fees.

Klipstine file at my office."   Fredlund Time Sheet at 1.   He also notes that, on January 7, 2013, he worked one half hour performing the work described in an entry which states: "Scheduled conference with Manuel Ysasi and Jim Klipstine."   Fredlund Time Sheet at 1.   The Defendants contend that they are not aware of any involvement in the case by Mr. Klipstine and that Mr. Klipstine has not requested attorneys' fees.   See Response at 20.   They argue that Mr. Fredlund's first hour meeting with Mr. Klipstine is reasonable, but that the next half-hour entry and the two hour entry for reviewing Mr. Klipstine's file are not reasonable.   See Response at 20.   The Defendants further argue that the half-hour entry for scheduling a conference is excessive.   See Response at 20.   The Court disagrees.

From the July 18, 2014, hearing and Mr. Fredlund's Time Sheet, it appears that Mr. Klipstine is the attorney who referred the case to Mr. Fredlund.   See Tr. at 3:6-9 (Blenden)(stating that an attorney whose license was being suspended referred the case to Mr. Fredlund).[20]   It is reasonable that Mr. Fredlund, in deciding whether to take a case, would want to spend some time reviewing the case.   It appears that Mr. Fredlund met with Mr. Klipstine, reviewed the case file at Mr. Klipstine's office, and then took the file back to his own office for further review before deciding to take the case.   It is not unreasonable for Mr. Fredlund to spend this relatively short amount of time reviewing a case file before agreeing to take the case.   An attorney should not be too quick to take a new case, especially one that requires the attorney to invest not just his or her time but his or her money as well.   Mr. Fredlund spent four and a half hours on February 4, 2013, reviewing the case file and meeting with Mr. Klipstine.   See Fredlund Time Sheet at 1.   Four and a half hours is a relatively short amount of time to review a case before

---

[20]A James W. Klipstine, Jr., had his law license indefinitely suspended on January 14, 2011, and was denied admission to practice law in the United States District Court for the District of New Mexico.   See In re Klipstine, 894 F. Supp. 2d 1351, 1360-61 (D.N.M. 2012)(Brack & Johnson, J.J., Vidmar, M.J.).

deciding to take it.   Consequently, the Court finds these entries reasonable and will not adjust them.

As for the February 7, 2013, one-half-hour entry, this entry is reasonable as well.   To schedule a conference with Mr. Klipstine and Ysasi, Mr. Fredlund may have had to call both Mr. Klipstine and Ysasi separately.   Mr. Fredlund and Mr. Klipstine also may have talked for half an hour in scheduling the meeting to prepare Mr. Fredlund for meeting his new client.   It is reasonable that Mr. Fredlund would spend one half hour scheduling a meeting with a client he had never met, especially considering Mr. Fredlund was scheduling for Mr. Klipstine to be at the conference.   The Court will not adjust the fee award for the work described in this entry.

### 2.       January 11, 2013, and January 12, 2013, Interactions with Flynn.

Mr. Fredlund notes that, on January 11, 2013, he spent two hours performing the tasks described in an entry which states: "Initial interview with Expert Witness, Bill Flynn."   Fredlund Time Sheet at 1.   He also notes that, on January 12, 2013, he spent two and a half hours performing the tasks described in an entry which states: "Convert paperwork to PDF to send to Bill Flynn."   Fredlund Time Sheet at 1.   The Defendants argue that these two entries contradict Flynn's deposition testimony.   See Response at 20.   They contend that Mr. Fredlund's secretary first contacted Flynn and that Mr. Fredlund himself did not contact Flynn until after Mr. Blenden joined the case.   See Response at 20-21.   The Defendants argue that Flynn testified that, when he spoke to Mr. Fredlund, the conversation was very basic, that Mr. Fredlund gave Flynn Mr. Blenden's name and telephone number, and that Mr. Fredlund told Flynn to call Mr. Blenden if he had any questions.   See Response at 21.   They assert that Mr. Blenden also seeks to recover seven hours relating to communications with Flynn, and that Mr. Fredlund's requested time is either incorrect, or excessive and duplicative.   See Response at 21.   Finally, the Defendants

argue that spending two and a half hours converting paperwork into Portable Document Format[21]

("PDF") files is excessive and is a clerical task.   Response at 21.

The Court finds that the evidence contradicts Mr. Fredlund's request and that converting

documents into PDF files is a clerical task.   Flynn testified that he was first contacted about the

case in August, 2013.   See Deposition of William Flynn at 5:24-6:2 (taken October 18, 2013),

filed April 7, 2014 (Doc. 100-1)("Flynn Depo.").   He testified that he initially talked to Mr.

Fredlund's assistant and not to Mr. Fredlund.   See Flynn Depo. at 6:25-7:3.   Flynn testified that

he took notes during this conversation, but that, because he did not hear from Mr. Fredlund for

some time, he destroyed the notes.   See Flynn Depo. at 7:10-15.   He testified that later he talked

to Mr. Fredlund, but that the conversation was "basic."   Flynn Depo. at 7:16-21.   Flynn's

relevant testimony is as follows:

> Q.    Okay.   Were you then contacted later?
>
> A.    Yes.
>
> Q.    Who contacted you at that time?
>
> A.    Actually, it was the same aid, who is now with another firm and referred me to Mr. Fredlund and that was the first time I had actually talked to John Fredlund.
>
> Q.    Okay.   Do you recall you discussion you had at that time?
>
> A.    Very, very basic.   He gave me Mr. Blenden's name and phone number and said that he would have everything I need for the case and I should contact him.

---

[21]"Portable Document Format (PDF) is a file format used to present documents in a manner independent of application software, hardware, and operating systems.   Each PDF file encapsulates a complete description of a fixed-layout flat document, including the text, fonts, graphics, and other information needed to display it."   Portable Document Format, Wikipedia.org, http://en.wikipedia.org/wiki/Portable_Document_Format (last visited January 1, 2015).

Flynn Depo. at 7:16-8:1.   At the hearing, Mr. Blenden stated that, when he joined the case, Mr. Fredlund and Mr. Proctor had retained an expert, but that they had not paid him.   See Tr. at 3:17-19 (Blenden).   Because Ysasi retained only one expert witness, this expert was likely Flynn. Furthermore, Mr. Blenden stated, in his Affidavit, that he was brought onto the case in August, 2013, and that he hired an expert witness.   See Blenden Aff. at 1.   Based on this information, the Court concludes that Mr. Proctor is not entitled to the two hours for interviewing Flynn.

Flynn testified unequivocally that his first conversation with Mr. Fredlund took place sometime after he had been retained.   See Flynn Depo. at 7:16-21.   Additionally, Mr. Fredlund testified that, during that conversation, Mr. Fredlund gave him basic information and told him to contact Mr. Blenden if he needed information about the case.   See Flynn Depo. at 7:22-8:1.   It is unlikely that Mr. Fredlund had a two-hour conversation with Flynn in which Mr. Fredlund gave Flynn only basic information that consisted of Mr. Blenden's contact information. Mr. Fredlund's two-hour entry likely cannot, therefore, be for this short basic conversation. Flynn, however, testified that this short conversation was the first time he spoke to Mr. Fredlund. See Flynn Depo. at 7:19-21.   In his time sheets, Mr. Fredlund asserts that this two-hour interview took place the day after he spent two hours researching expert witnesses.   See Fredlund Time Sheet at 1.   Additionally, he asserts that the interview was an initial interview with Flynn.   See Fredlund Time Sheet at 1.   It thus appears that this two-hour entry concerns the first communications Mr. Fredlund had with Flynn, the day after Mr. Fredlund discovered Flynn through his research.   Even though Mr. Fredlund asserts that this interview occurred, Flynn's testimony contradicts this entry.   Mr. Fredlund has the burden of proving the reasonableness of his attorneys' fees.   See Jane L. v. Bangerter, 61 F.3d at 1510.   He has presented no evidence to support this two-hour entry -- other than his own assertion that the interview occurred -- and there

is contradictory sworn testimony from Mr. Fredlund's own expert witness.   The Court will accordingly not permit Mr. Fredlund to recover fees for these two hours.

Additionally, Mr. Fredlund may not recover the two and a half hours of fees for converting paperwork into PDF files.   The Court will reduce the requested fees for this entry, because it is a clerical task, and not because Mr. Fredlund did not spend the asserted time doing the work described in the entry.   While Flynn testified that he was first contacted about the case in August, 2013, see Flynn Depo. at 5:24-6:2, his testimony suggests that he had been contacted before that time.   Flynn testified that he took notes during his initial conversation with Mr. Fredlund's assistant, but that, because he did not hear from Mr. Fredlund "for a period of time after that" initial call, he purged his notes.   Flynn Depo. at 7:10-15.   At the deposition, Flynn testified that he spoke with Mr. Blenden over the telephone in August, 2013.   See Flynn Depo. at 8:18-19. The deposition took place on October 18, 2013.   See generally Flynn Depo.   It would be odd for Flynn to destroy his notes from an August conversation because he did not hear from Mr. Fredlund in the intervening two months between the conversation and the deposition.   It would be even odder for Flynn to destroy the notes if the conversation with Mr. Fredlund's assistant and the conversation with Mr. Blenden both took place in August.   If Mr. Fredlund's assistant first contacted Flynn in August, 2013, and Flynn spoke with Mr. Blenden that same month, Flynn would also have talked to Mr. Fredlund during the time between those two conversations in August, 2013.   Flynn would have, thus, destroyed the notes from the first conversation after not speaking with Mr. Fredlund for less than a month.   This scenario is unlikely.   More likely is that Flynn misremembered when Mr. Fredlund's assistant first contacted him.   Mr. Fredlund asserts that he first contacted Flynn in January, 2013.   See Flynn Time Sheet at 1.   This scenario would put almost eight months between Flynn's initial contact and Flynn's conversation with Mr.

Blenden.   It is likely that, after not hearing from Mr. Fredlund for almost eight months, Flynn would destroy the notes from the initial interview, thinking that Mr. Fredlund decided not to use his testimony.   Based on Flynn's deposition and Mr. Fredlund's time sheet, the Court concludes that Mr. Fredlund contacted Flynn in January, 2013.

Mr. Fredlund asserts that, on January 12, 2013, he converted paperwork into PDF files to send to Flynn.   See Fredlund Time Sheet at 1.   Converting documents into PDF files is clerical work that is not compensable as attorneys' fees.   See, e.g., Cortes-Reyes v. Salas-Quintana, 806 F. Supp. 2d at 470 ("Additionally, several entire entries (and parts of many other entries) billed at attorneys' rates, adding up to several hours, are for clerical tasks such as printing, photocopying, faxing, mailing, and converting documents to PDF format.   This will not do."); Gooch v. Astrue, No. CIV 07-1674 LJO/GSA, 2009 WL 347084, at *2 (E.D. Cal. Feb. 9, 2009)(Austin, M.J.)("The Court agrees with Defendant that time spent converting pleadings to PDF format is non-compensable."); Segura v. Midland Credit Mgmt., Inc., No. CIV 12-0830 PAB/BNB, 2013 WL 560702, at *3 (D. Colo. Feb. 14, 2013)(Brimmer, J.)("Furthermore, a review of plaintiff's time entries reveals that 0.7 hours of plaintiff's fee request is devoted to non-compensable clerical or administrative tasks, namely, . . . converting documents into PDFs, . . . .").   Mr. Fredlund may not recover fees for these two and a half hours for performing a clerical task.   If Mr. Fredlund reviewed the files or did legal work while converting the files into PDF files, then he may be able to recover fees for these two hours.   Mr. Fredlund's next entry, however, states: "Included Criminal Defense File & Preliminary."   Fredlund Time Sheet at 1.   This entry is for two hours. See Fredlund Time Sheet at 1.   It appears that the second entry is for reviewing the criminal file and the preliminary hearing transcript, which means that the entry regarding converting paperwork into PDF files concerns only the conversion of documents into PDF files -- a clerical task.

Accordingly, the Court will not award Mr. Fredlund fees for this two-and-a-half-hour entry.   With the exclusion of these two entries, the Court will reduce Mr. Fredlund's total hours by four and a half hours.[22]

**3.     January 12, 2013, Criminal Defense File and Preliminary Hearing.**

Mr. Fredlund notes that, on January 12, 2013, he spent two hours performing the tasks described in an entry which states: "Included Criminal Defense File & Preliminary."   Fredlund Time Sheet at 1.   The Defendants argue that this entry is not sufficiently detailed to warrant payment.   See Response at 21.   They also contend that, if the entry relates to reviewing the preliminary hearing transcript, it is excessive and duplicative, because all three of Ysasi's attorneys are requesting fees for reviewing the preliminary hearing transcript.    See Response at 21.   The Court disagrees.

First, the entry appears to be related to Mr. Fredlund's correspondence with Flynn.   In addition to this entry, Mr. Fredlund notes that, on January 12, 2013, he converted paperwork to PDF files to send to Flynn and that he sent an electronic mail transmission to Flynn.   See Flynn Time Sheet at 1-2.   This entry, thus, appears to be related to Mr. Fredlund's review of the case file in determining what documents to provide Flynn and in deciding what to tell Flynn about the case. This entry is sufficiently clear, because the Court can determine the reasonableness of Mr. Fredlund's time from his description.

Second, the entry is not excessive or duplicative.   It is reasonable that, at this point in the case, Mr. Fredlund would spend two hours reviewing Ysasi's criminal file and the transcript from

---

[22]Mr. Fredlund includes additional entries regarding correspondences with Flynn to which the Defendants do not object.   These include a one-hour entry which states "[e]mail correspondence with Bill Flynn," and a two-and-a-half entry which states "[f]ollow-up conference with Bill Flynn and review with him of Preliminary Testimony."   Fredlund Time Sheet at 2. Because the Defendants do not object to these entries, the Court will not modify any fee award based on them.

the preliminary hearing to decide what information to provide Flynn.   Although Mr. Blenden and

Mr. Proctor also request fees for time spent reviewing the preliminary hearing transcript, the

preliminary hearing transcript was valuable to Mr. Fredlund and Ysasi.   It provided them with

sworn testimony concerning the facts giving rise to the case; it gave them insight into what and

how various witnesses might testify at trial; and it provided them with potential impeachment

material.   It is thus reasonable that all three attorneys would spend time reviewing the preliminary

hearing transcript.   Unlike Mr. Blenden's and Mr. Proctor's requests for reviewing the

preliminary hearing transcript, Mr. Fredlund's does not appear excessive.   This entry notes that he

reviewed the preliminary hearing transcript and the criminal file.   It is reasonable that

Mr. Fredlund would spend one hour reviewing the transcript and one hour reviewing the criminal

file.   Consequently, the Court will not modify this entry.

### 4.   **Drafting the Complaint.**

Mr. Fredlund asserts that he spent seventeen and a half hours drafting the Complaint.

See Fredlund Time Sheet at 2.   He asserts that, on January 21, 2013, he performed the worked

described in an entry which states: "Legal Research to Draft Complaint regarding 4th Amendment,

5th Amendment 14th Amendment."   Fredlund Time Sheet at 2.   He notes that, on January 22,

2013, he spent two hours performing the work described in an entry which states: "Legal Research

1983 Civil Rights suits and cases similar to Manuel Ysasi."   Fredlund Time Sheet at 2.

Mr. Fredlund notes that, on February 4, 2013, he worked three hours performing the work

described in an entry which states: "Draft Complaint."   Fredlund Time Sheet at 2.   He asserts

that, on February 5, 2013, he spent one and a half hours performing the tasks in an entry which

states: "Legal Research -- Unreasonable use of force in New Mexico."   Fredlund Time Sheet at 2.

He also asserts that, on February 5, 2013, he worked two hours doing the work described in an

entry which states: "Modified Complaint based on case law research."   Fredlund Time Sheet at 2.

Mr. Fredlund notes that, on February 7, 2013, he worked two hours performing the work described

in an entry which states: "Finalized Complaint and review for filing."   Fredlund Time Sheet at 2.

He also notes that, on February 7, 2013, he spent one and a half hours performing the tasks

described in an entry which states: "Review of audio and video and 911 calls."   Fredlund Time

Sheet at 2.   Finally, Mr. Fredlund asserts that, on February 25, 2014, he performed the tasks

described in an entry which states: "Complaint filed e-filing and summons issued."   Fredlund

Time Sheet at 2.

The Defendants argue that spending seventeen and a half hours drafting a three-count

complaint is excessive.   See Response at 21.   The Court disagrees.   The importance in drafting a

well-pled civil complaint for a federal court cannot be overstated.   See Ashcroft v. Iqbal, 556 U.S.

662 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).   A civil complaint defines a case.

It provides that defendants with notice of the allegations against them.   If the complaint does not

sufficiently and plausibly state a claim, the entire case will be dismissed.   Absent subsequent

modifications, a plaintiff will be bound by the complaint's claims and allegations.   It is reasonable

that Mr. Fredlund would spend a significant amount of time drafting the Complaint, especially in a

case such as this one.   The Complaint alleges federal constitutional claims and state law claims

against an entity and against individuals.   See Complaint ¶¶ 31-41, at 7-11.   While the Complaint

contains only three counts, it is not comprised solely of simplistic state law claims, such as

negligence, assault, or battery.   Mr. Fredlund had to research similar cases to ensure that he

alleged sufficient facts to support his claims.   It was thus reasonable for Mr. Fredlund to spend

seventeen and a half hours researching, drafting, and modifying the Complaint.   Consequently,

the Court will not disturb these entries.

### 5.      July 9, 2013, Proctor Conference.

Mr. Fredlund asserts that, on July 9, 2013, he spent three hours performing the tasks set forth in an entry which states: "Conference with Proctor regarding association and review of criminal file and dismissal."   Fredlund Time Sheet at 2.   The Defendants argue that, because the case did not require three attorneys, Mr. Fredlund should not recover fees for this entry.   See Response at 21.   The Court disagrees.   Because three attorneys were reasonable in this case, the Court will permit Mr. Fredlund to recover fees for conferring with co-counsel.   The Court will not modify the fee award for this entry.

### 6.      July 25, 2013, Third Review of Criminal File.

Mr. Fredlund notes that, on July 25, 2013, he worked two hours performing the tasks described in an entry which states: "Review of criminal file 3rd time prior to transfer to Proctor." Fredlund Time Sheet at 2.   The Defendants contend that this entry is duplicative and excessive, because Mr. Fredlund billed for the same activity in July 9, 2013.   See Response at 22.   The Court disagrees.   On July 9, 2013, Mr. Fredlund asserts that he conferred with Mr. Proctor and reviewed the criminal file.   See Fredlund Time Sheet at 2.   The entire three hours from July 9, 2013, was not spent reviewing the criminal file, because some of it was spent conferring with Mr. Proctor.   Even if Mr. Fredlund spent three hours reviewing the criminal case file on July 9, 2013, and two hours reviewing the case file on July 25, 2013, the Court would find these five hours reasonable.   A lot of the evidence for this case came from the prior criminal case.   It is reasonable that Mr. Fredlund would spend at least five hours, if not more, reviewing the criminal case file. These two entries are not duplicative.   If Mr. Fredlund spent five hours straight reviewing the criminal case file, or if he split up those five hours over two days, the amount of time reviewing the

case file is still reasonable.   The Court thus finds this entry reasonable and will not disturb the fee award for it.

### 7.   July 25, 2013, Proctor Call and Copies.

Mr. Fredlund notes that, on July 25, 2013, he performed the tasks described in a one-half-hour entry which states: "Phone with Proctor re: file to him and Blenden."   Fredlund Time Sheet at 2.   He also made an entry for July 25, 2013, which states: "Copies: 158 pages @ .10 page."   Fredlund Time Sheet at 2.   The Defendants argue that, because the case did not require three attorneys, Mr. Fredlund should not recover fees for conferring with Mr. Proctor about Mr. Blenden's participation in the case.   See Response at 22.   They also contend that the copying fees are not recoverable.   See Response at 22.   The Court concludes that Mr. Fredlund is entitled to compensation for his telephone conversation with Mr. Proctor and that he may recover costs for the copies.

The Court has already concluded that it was reasonable for three attorneys to represent Ysasi.   Mr. Fredlund may thus recover fees for discussing the possibility of bringing Mr. Blenden into the case.   He may also recover fees for the costs of making copies even if the local rules do not permit such costs.   The local rules note that costs for copies are recoverable only "when the exhibit is requested by the Court or when the copy is admitted into evidence in place of an original."   D.N.M.LR-Civ. 54.2(e).   Mr. Fredlund does not state what these 158 pages concern.   The Court did not request Mr. Fredlund to make copies.   Additionally, Mr. Fredlund does not assert that the copies were of exhibits that were admitted into evidence in place of an original document.   Accordingly, the local rules do not permit Mr. Fredlund to recover coping costs.

The Court has previously ruled that it may award costs that the local rules bar if the Court has a general statutory authority to do so.   See Guidance Endodontics, LLC v. Dentsply Int'l, Inc.,

791 F. Supp. 2d 1014, 1019-20 (D.N.M. 2011)(Browning, J.).   In Guidance Endodontics LLC v.

Dentsply International, Inc., the Court concluded that it had a broader authority to award costs

under the general costs statute, 28 U.S.C. § 1920, than the local rules explicitly permit.   See 791

F. Supp. 2d at 1019-20.   The Court reasoned:

> The Court agrees that the local rule is an alternative basis on which the Court can base its authority to award costs.   The Tenth Circuit appears to recognize that district courts have "more general statutory authority" under 28 U.S.C. § 1920, beyond their local rules.   Marathon Ashland Pipe Line LLC v. Maryland Casualty Co., 243 F.3d [1254 (10th Cir. 2001)]("The record does not reflect that the court was . . . exercising its more general statutory authority."). The Tenth Circuit also appears to recognize that district courts have discretion to apply "a more stringent local district court rule" when "no special circumstances suggest[] that the local rule should not be applied," despite a more general federal statute.   Moreover, rule 54.2's plain language does not appear to limit the court's authority under 28 U.S.C. § 1920.   D.N.M.LR-Civ. 54.2(a) states: "The cost of an original transcript of a court proceeding is taxable when requested by a party and authorized by the Court before transcription."   It does not include limiting terms, such as a statement that such a cost "is only taxable" when so requested.   In contrast, another provision of rule 54.2 expressly limits the Court's authority under 28 U.S.C. § 1920 ("A judge or clerk of any court of the United States may tax as costs . . . [c]ompensation of court appointed experts.").   See D.N.M.LR-Civ. 54.2(c)(2) ("An expert witness fee is not taxable under 28 U.S.C. § 1920 unless the Court, sua sponte or on motion by a party, appoints the expert and approves the fee amount.").   The Court concludes, therefore, that D.N.M.LR-Civ. 54.2(a) supplements, and does not circumscribe, 28 U.S.C. § 1920(2).   Cf. Zahran v. Cleary Bldg. Corp., 2 F. App'x 497, 499 (7th Cir. 2001)("[C]opies of papers necessarily obtained for use in the case are recoverable under Eastern District of Wisconsin Local Rule 9.02(d) and 28 U.S.C. § 1920(4);  . . . and deposition costs are recoverable under Eastern District of Wisconsin Local Rule 9.02(b) and 28 U.S.C. § 1920(2)."   (emphasis added)); Matima v. Celli, 228 F.3d 68, 82 (2d Cir. 2000)("[T]he district court properly awarded Ayerst costs in the amount of $4,520.05, pursuant to Local Rule 54.1(a) and 28 U.S.C. § 1920."   (emphasis added)); In re Baby Food Antitrust Litig., 166 F.3d 112 (3d Cir. 1999)("[T]o the extent that it conflicts with Section 1920, L. Civ. R. 54.1(g)(7) must give way." (citing Fed. R. Civ. P. 83 ("A local rule must be consistent with -- but not duplicate -- federal statutes . . . ."))); Disc Golf Ass'n, Inc. v. Champion Discs, Inc., 158 F.3d 1002, 1010 (9th Cir. 1998)(rejecting a party's argument that an award of costs did not conform to a local rule, because "[t]hat local rule is based on 28 U.S.C. § 1920(4) . . . .   Under that statute, the copies need not actually have been used as evidence to justify an award of costs").

Guidance Endodontics, LLC v. Dentsply Int'l, Inc., 791 F. Supp. 2d at 1019-20 (emphasis in the original).

In the same way that 28 U.S.C. § 1920 provides the Court with broader authority to award costs than the local rules, so does § 1988.   The Tenth Circuit holds that "out-of-pocket expenses" can be recovered pursuant to § 1988 if the costs are "'items that are normally itemized and billed in addition to the [attorney's] hourly rate.'"   Brown v. Gray, 227 F.3d 1278, 1297 (10th Cir. 2000)(quoting Ramos v. Lamm, 713 F.2d at 559)(alterations omitted).   The Tenth Circuit has held that these costs may include "photocopying, mileage, meals, and postage," if attorneys in the areas normally bill those costs separately to clients.   Sussman v. Patterson, 108 F.3d 1206, 1213 (10th Cir. 1997).   From the Court's experience before it came on the bench, at New Mexico law firms, and from reviewing lots of attorney bills, both as a lawyer and a judge, the Court can say it is customary that lawyers in New Mexico bill the costs of copying separately to clients, i.e., copying is not absorbed as overhead or covered by the hourly rate.   Section 1988, thus, permits copying costs to be recovered even though the local rules would not permit Mr. Fredlund to recover copying costs in this case.   At least one other court has permitted certain costs to be recovered under § 1988 when the court's local rules prohibited the costs.   See Tsombanidis v. City of W. Haven, 208 F. Supp. 2d 263, 285-86 (D. Conn. 2002)(Goettel, J.).   In Tsombanidis v. City of West Haven, the Honorable Gerard Louis Goettel, United States District Judge for the District of Connecticut, permitted the prevailing party to recover costs that the local rules barred.   See 208 F. Supp. 2d at 285-86.   Judge Goettel wrote:

> Both defendants have objected to these requested costs on the ground that they include items which are not taxable costs under 28 U.S.C. § 1920 and the Local Rules of this District, D. Conn. L. Civ. R. 17.   However, in awarding fees and costs under § 1988, this Court is not limited to taxable costs.   "[A]ttorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charted to their clients."   LeBlanc-Sternberg v. Fletcher, 143 F.3d

at 763 (internal citations and quotations omitted).   "Identifiable, out-of-pocket disbursements for items such as photocopying, travel and telephone costs are generally taxable under § 1988 and are often distinguished from nonrecoverable routine office overhead, which must normally be absorbed within the attorney's hourly rate."   Aston v. Secretary of Health & Human Services, 808 F.2d 9, 12 (2d Cir. 1986); Lambert v. Fulton County, 151 F. Supp. 2d at 1370 ("In short, with the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxes as costs under section 1988.")(internal citations and quotations omitted).   Thus, costs that are allowable under § 1988 encompass a far broader range of expenses than costs that are taxable under 28 U.S.C. § 1920 and the Local Rules.   See J.P. Sedlak Assocs. v. Connecticut Life & Cas. Ins. Co., No. 3:98CV145 (DFM), 2000 WL 852331 (D. Conn. Mar.31, 2000)(rejecting defendant's claim that the court may only award those costs delineated in 28 U.S.C. § 1920); but see Omnipoint Communications, Inc., 91 F. Supp. 2d at 500 (D. Conn. 2000)(relying on Local Rule 17 to disallow computerized legal research fees and express mail service).

Tsombanidis v. City of W. Haven, 208 F. Supp. 2d at 285-86.   Accordingly, the Court may award costs pursuant to § 1988, including costs for making copies, even if the local rules do not permit such costs.

Mr. Fredlund has presented evidence to support his request for these copying costs.   He supports his contention that he spent $15.80 on copies with his affidavit.   See Fredlund Aff. ¶ 1, at 1 (stating that time sheet sets forth his fees and costs).   The Court will thus not reduce this request for copying fees or this one-half-hour entry.

### 8.   July 25, 2013, Review of Photographs.

Mr. Fredlund asserts that, on July 25, 2013, he worked one hour performing the tasks described in an entry which states: "Review of photographs in file prior to transfer."   Fredlund Time Sheet at 3.   The Defendants argue that this entry is not sufficiently detailed to warrant payment and that there were not enough photographs to justify one hour of work.   See Response at 22.   The Court disagrees.   An entry needs only some definite information concerning the general work performed.   See Keenan v. City of Philadelphia, 983 F.2d at 473.   This entry

provides fairly specific information: Mr. Fredlund reviewed the photographs from the file that he later transferred to Mr. Proctor.   The entry is thus sufficiently detailed.   Additionally, one hour is not excessive.   The Defendants do not know how many photographs the file contained.   There may have been more photographs than were used at trial.   Regardless of the number of photographs, Mr. Fredlund likely intensely studied each photograph.   He needed to determine if the photographs evidenced Ysasi's injuries and if a jury would conclude, from the photographs, that Ysasi was injured.   The photographs likely gave Mr. Fredlund insight into some strengths or weaknesses in his case.   Spending one hour reviewing them is not excessive.   Moreover, at trial, Ysasi showed a video, which was shown several times, that contained an audio recording of Ysasi's arrest.   This video was a crucial piece of evidence, and Mr. Fredlund would likely have reviewed it many times in preparing for trial.   It is not clear whether this entry includes a review of the video as well as a review of photographs.   If so, this entry is more than reasonable, because the Court would expect Mr. Fredlund to spend more than an hour reviewing the video.   If not, then none of Ysasi's attorneys billed for reviewing the video.   This means that they likely did more work for which they have not asked for compensation.   In any case, because this entry is reasonable, the Court will not adjust the fee award for this entry.

### 9.      June 5, 2013, Stipulation to Telephonic Scheduling Conference.

Mr. Fredlund represents that, on June 5, 2013, he spent one half hour performing the tasks described in an entry which state: "Stipulation to telephonic Initial scheduling conference." Fredlund Time Sheet at 3.   The Defendants argue that this entry[23] is excessive.   See Response at 22.   The Court finds this entry reasonable.

---

[23]The Defendants assert that the entry "on 6/3/13 for on-half (1-1/2) hour to stipulate a telephonic conference appears to be excessive."   Response at 22.   While the Defendants reference a June 3, 2013, entry, Mr. Fredlund's only entry from June 3, 2013, concerns initial disclosures.   See Fredlund Time Sheet at 3.   The Court assumes that the Defendants meant to

The initial scheduling conference was scheduled for June 11, 2013.   See Notice, filed May 24, 2013 (Doc. 12).   The Court notified the parties that it would be out of town that day, and requested the parties to consent to permitting the Court to conduct the hearing telephonically and from out of district.   See Minute Order, filed June 4, 2013 (Doc. 15).   Both parties consented to the telephonic hearing with the Court being out of district.   See Consent to Telephonic Scheduling Conference at 1, filed June 5, 2013 (Doc. 16)(noting that the Defendants consented to the Court appearing telephonically); Notice of Consent to Conduct Initial Scheduling Conference Telephonically, filed June 6, 2013 (Doc. 18)("Notice of Consent")(noting that Ysasi consented to the Court appearing telephonically).   Ysasi's Notice of Consent is only one sentence long.   See Notice of Consent at 1.   Spending thirty minutes to write a single sentence would be excessive. Mr. Fredlund likely did more than write a single sentence for this entry.   He first had to decide whether to consent to the Court appearing telephonically.   Some attorneys prefer to see the Court face-to-face during all hearings and refuse to consent to the Court's telephonic appearance. Mr. Fredlund may have conferred with Mr. Proctor about whether to consent.   Mr. Fredlund may even have spent some time pondering whether to consent.   An attorney's time is not spent solely drafting motions without any thought of what goes into those motions.   It is thus reasonable that Mr. Fredlund would spend one half hour deciding whether to consent, and drafting the Notice of Consent, and file it.   The Court will leave the fee award for this entry undisturbed.

### 10.   October 15, 2013, Ysasi Deposition.

Mr. Fredlund asserts that, on October 15, 2013, he spent three hours performing the tasks described in an entry which states: "Deposition of Manuel Ysasi at my office with Blenden and Proctor."   Fredlund Time Sheet at 3.   The Defendants argue that, because three attorneys did not

---

object to Mr. Fredlund's June 5, 2013, entry, which concerns stipulating to a telephonic conference.

need to be present for Ysasi's deposition, this entry is duplicative.   <u>See</u> Response at 22.   The Court disagrees.   Mr. Fredlund examined Ysasi at trial.   He needed to know to what Ysasi would testify.   Mr. Fredlund needed to be intimately familiar with Ysasi's deposition testimony to know if Ysasi contradicted this testimony at trial.   Additionally, if Mr. Fredlund needed to refresh Ysasi's recollection at trial, he needed to know to what Ysasi testified at the deposition and when, during the deposition, Ysasi testified to what.   It was reasonable for Mr. Fredlund to attend the deposition.   His presence was not duplicative of Mr. Blenden or Mr. Proctor's presence, because each attorney had a distinct role in the case and each attorney's role required the attorney to be familiar with Ysasi's deposition testimony.   Accordingly, this entry is reasonable, and the Court will not modify the fee award for it.

### 11.    February 16, 2014, Preliminary Hearing Review.

Mr. Fredlund notes that, on July 16, 2014, he spent two hours performing the work described in an entry which states: "Review of preliminary hearing testimony."   Fredlund Time Sheet at 3.   The Defendants argue that Mr. Fredlund had already reviewed the preliminary hearing transcript, which makes this entry excessive.   <u>See</u> Response at 22.   They further argue that, because Mr. Blenden and Mr. Proctor also reviewed the preliminary hearing transcript, this entry is duplicative.   <u>See</u> Response at 22.   The Court disagrees that the entry is duplicative but concludes that it is excessive.   First, Mr. Fredlund's previous review of the preliminary hearing transcript took place on January 12, 2013 -- more than a year before his second review.   <u>See</u> Fredlund Time Sheet at 1.   It is reasonable that, a year after he first reviewed the transcript, Mr. Fredlund would need to review the transcript again on the eve of trial.   Second, because the transcript provided potential impeachment materials and insight into how witnesses would testify, it is reasonable that each attorney would want to be familiar with the transcript.   Two hours, however, is excessive.

As previously noted, the transcript was four pages long.   See Response at 13, 18-19.   Two hours reviewing four pages is excessive.   The Court will thus adjust this entry by reducing the requested time from two hours to one hour.   This adjustment will result in a one hour reduction of Mr. Fredlund's total time.

### 12.   February 16, 2014, Review of Trial Notebook and Exhibits.

Mr. Fredlund asserts that, on February 16, 2014, he worked four hours doing the work described in an entry which states: "Review of trial notebook and case law with exhibits." Fredlund Time Sheet at 3.   The Defendants argue that this amount of time is excessive and duplicative of time that Mr. Blenden and Mr. Proctor spent.   See Response at 22.   The Court disagrees.   Mr. Fredlund participated in the trial; he needed to be familiar with Ysasi's exhibits and trial notebook.   It is reasonable that Mr. Fredlund would spend at least four hours reviewing the trial notebook, case law, and exhibits.   This work is not duplicative of Mr. Blenden's or Mr. Proctor's work, because Mr. Fredlund, himself, needed to be familiar with this information. It would not have been enough for one of Ysasi's attorneys to be familiar with the information when all three participated in the trial.   The Court thus finds that this entry is not excessive or duplicative, and will not disturb the fee award for the work it describes.

### 13.   Travel Time.

Mr. Fredlund notes that, on February 17, 2014, he spent five hours performing the tasks described in an entry which states: "Travel to Albuquerque for trial."   Fredlund Time Sheet at 3. He also notes that, on February 20, 2014, he spent five hours performing the tasks described in an entry which states: "Return from Albuquerque."   Fredlund Time Sheet at 3.   The Defendants argue that it is excessive for Mr. Fredlund to recover his full hourly rate for travel time and that all three attorneys should not recover travel time.   See Response at 23.   The Court disagrees.   It is

common practice in New Mexico for attorneys to bill their full hourly rate for travel time. Mr. Fredlund can thus recover his full hourly rate for his travel time.   Additionally, because it was reasonable for three attorneys to represent Ysasi, it is reasonable for all three attorneys to bill for the time it took to travel to Albuquerque for trial.   Accordingly, the Court will not modify these entries.

### 14.   **Trial.**

Mr. Fredlund asserts that, on February 18, 2014, he worked twelve hours doing the work described in an entry titled: "Trial."   Fredlund Time Sheet at 3.   He also asserts that, on February 19, 2014, he worked twelve hours doing the work described in an entry which states: "Trial." Fredlund Time Sheet at 3.   The Defendants argue that this amount of time is excessive and that all three attorneys should not recover for time at trial.   See Response at 23.   The Court disagrees.   It was reasonable for three attorneys to represent Ysasi; thus, it is reasonable for all three attorneys to recover fees for the trial.   Additionally, the amount of time is not unreasonable.   Unlike Mr. Proctor's Time Sheet, Mr. Fredlund made the two twelve-hour entries and then one other three-hour entry for preparing Ysasi to testify.   See Fredlund Time Sheet at 3.   Mr. Proctor's twelve-hour entries likely include additional preparation for trial.   These entries are thus reasonable.   Additionally, all three attorneys should recover for time at trial.   It was reasonable for three attorneys to represent Ysasi, and it is reasonable for all three to recover fees. Accordingly, the Court will leave the fee award for these entries undisturbed.

### 15.   **Mr. Fredlund's Total Time.**

In his affidavit, Mr. Fredlund requests fees for 106.5 hours at $250.00 per hour for a total of $29,0165.56.   See Fredlund Time Sheet at 1-3; Fredlund Aff. ¶¶ 5-6, at 2.   According to the Court's analysis, the Court will reduce Mr. Fredlund's requested hours by 5 hours.   This reduction

brings Mr. Fredlund's total hours to 101.5 hours.   Because the Court is unable to determine the

hourly rate that Mr. Fredlund used in reaching his $29,165.56 amount, and because Mr. Proctor's

asserted hourly rate appears to take into consideration taxes for a base hourly rate of $250.00 per

hour, the Court will apply Mr. Proctor's hourly rate ($267.03) in calculating Mr. Fredlund's

attorneys' fees.   This hourly rate brings Mr. Fredlund's total fees to $27,103.55 (101.5 hours

multiplied by $267.03).   The Court will also award Mr. Fredlund his requested $15.80 for

copying costs, resulting in a total award of $27,119.35.

## IV.    THE COURT WILL AWARD COSTS.

Without any detail of specific costs, Ysasi requests $10,228.74 in costs in the Motion.   See

Motion ¶ 14, at 3.   He filed a separate Motion to Tax in which he states that he spent $9,100.50 on

Flynn, $569.69 on Ysasi's deposition, and $558.55 on Flynn's deposition, totaling $10,228.74 in

costs.   See Motion to Tax at 1.   The Clerk of the Court entered an order denying Motion to Tax.

See Clerk's Order at 2.   The Clerk of the Court found that the cost request lacked sufficient

documentation, receipt, or proof of payment.   See Clerk's Order at 1.   The Clerk further noted

that expert witness fees are not taxable unless the Court orders.   See Clerk's Order at 1.   The

Clerk of the Court denied the Motion to Tax, but stated that the parties could request, within seven

days of the Clerk's Order being entered, for the Court to review the denial of costs.   See Clerk's

Order at 2.   The Clerk filed his Order on June 27, 2014, see Clerk's Order at 1, and no party has

requested the Court to review it.

The Court will award Ysasi these costs pursuant to § 1988.   In awarding these costs, the

Court is taking Ysasi's word that he spent the amount of money that he asserts he spent.   The

Court so proceeds, in large part, because the Defendants do not dispute that these expenses were

incurred or that the amounts are unreasonable.   In other words, the expenditures, amounts, and

reasonableness are undisputed.  Within seven days of entering this Memorandum Opinion and Order, however, Ysasi must, if he wants this award, supplement his Motion and support his asserted costs by filing documentation evidencing the amount he spent on expert witness fees and depositions.  If Ysasi does not supplement the Motion with documentation, such as receipts or affidavits, within seven days, the Defendants may file a motion for the Court to reconsider this portion of this Memorandum Opinion and Order.  Without any documentation, the Court will grant the Defendants' motion to reconsider and will deny these requested costs.

First, the Clerk of the Court is correct in finding that, under the local rules, Ysasi is not entitled to costs.   As the Clerk of the Court noted, under the local rules, expert witness fees are not taxable.  <u>See</u> D.N.M.LR-Civ. 54.2(c)(2).   The local rules state: "An expert witness fee is not taxable under 28 U.S.C. § 1920 unless the Court, *sua sponte* or on motion by a party, appoints the expert and approves the fee amount.   An expert witness not appointed by the Court will be paid the same fee as a lay witness."  D.N.M.LR-Civ. 54.2(c)(2).  Because the Court did not appoint Flynn, Ysasi cannot recover expert witness fees for Flynn, but the local rules state that he can recover lay witness costs for Flynn.  <u>See</u> D.N.M.LR-Civ. 54.2(c)(2) ("An expert witness not appointed by the Court will be paid the same fee as a lay witness.").   Costs regarding a lay witness may be recovered for mileage or for the per diem rate specified in 28 U.S.C. § 1821, whichever amount is smaller.  <u>See</u> D.N.M.LR-Civ. 54.2(c)(1)(B).   Lay witness costs may also be recovered at statutory set witness fees and for subsistence.  <u>See</u> D.N.M.LR-Civ. 54.2(c)(1)(A).   The requests for lay witness fees, however, must be itemized between witness fees, mileage, and subsistence allowance.  <u>See</u> D.N.M.LR-Civ. 54.2(c)(1)(C).  Additionally, any request for costs must include "an itemized cost bill documenting costs and including receipts as required by rule or statute," and "a party's affidavit that the costs are allowable by law, correctly stated and necessary

to the litigation."   D.N.M.LR-Civ. 54.1.   Ysasi does not distinguish between witness fees, mileage, and subsistence in his request for costs.   Additionally, Ysasi does not include receipts or any documentation showing the costs for Flynn.   Finally, Ysasi does not provide an affidavit stating that the "costs are allowed by law, correctly stated and necessary to the litigation." D.N.M.LR-Civ. 54.1.   Accordingly, under the local rules, he cannot recover costs for the $9,100.50 that he spent on Flynn.   Similarly, under the local rules, Ysasi cannot recover costs for the Flynn or Ysasi deposition.   Ysasi has not provided any documentation evidencing the cost of the depositions and has not provided an affidavit stating that the costs are allowed by law and are correctly stated.   See D.N.M.LR-Civ. 54.1.

Even though Ysasi cannot recover costs under the local rules, § 1988 provides the Court with broader authority to award costs.   See Tsombanidis v. City of W. Haven, 208 F. Supp. 2d at 285-86.   The Defendants do not dispute the reasonableness of Ysasi's requested costs and do not deny that Ysasi incurred these costs.   See Response at 1-24.   The Defendants attended the depositions and observed Flynn testify at trial.   The Defendants know that Ysasi incurred these costs.   Additionally, expert witness fees and deposition costs are costs that are usually billed separately to a client and not absorbed into overhead or hourly rates.   See Brown v. Gray, 227 F.3d at 1297 (holding that, for § 1988, "items that are normally itemized and billed in addition to the hourly rate should be included in fee allowances in civil rights cases if reasonable in amount" (alterations omitted)(citation omitted)(internal quotation marks omitted)).   The Court will thus permit Ysasi to recover his requested costs for Flynn's expert witness fees, and for Flynn's and Ysasi's depositions.[24]

---

[24]The Defendants argue that the Court can reduce an expert witness' fees "if the expert's testimony is limited in its impact or effectiveness."   Response at 6 (citing San Francisco Baykeeper v. W. Bay Sanitary Dist., No. CIV 09-5676 EMC, 2011 WL 6012936 (N.D. Cal. Dec. 1, 2011)(Chen, J.); Bell v. Bd. of Educ., No. CIV 06-1137 JB/ACT, 2009 WL 1886160 (D.N.M.

- 106 -

June 2, 2006)(Browning, J.)).   They argue that, because the Court severely limited Flynn's testimony before trial, the Court should exclude or reduce Flynn's fees.   See Response at 6 (citing Lynn v. State of Maryland, 295 F. Supp. 2d 594 (D. Md. 2003)(Motz, J.); Foley v. Huppe, No. CIV 10-0335 JL, 2012 WL 5467527 (D.N.H. Nov. 9, 2012)(Laplante, J.)).   The Court will not reduce Ysasi's requested costs that concern Flynn's fees.

First, the cases the Defendants cite are inapposite.   In San Francisco Baykeeper v. West Bay Sanitary District, the Honorable Edward M. Chen, United States District Judge for the Northern District of California, did not award expert witness costs when the expert witness' testimony concerned claims on which the plaintiff was not successful.   See 2011 WL 6012936, at *13-14.   Judge Chen concluded that the plaintiff's successful and unsuccessful claims were not related, and he reduced the plaintiff's total fee award to account for time spent on the unrelated, unsuccessful claims.   See San Francisco Baykeeper v. W. Bay Sanitary Dist., 2011 WL 6012936, at * 12.   Similarly, in Bell v. Board of Education, the Court concluded that the plaintiff prevailed on some claims but failed on other unrelated claims.   See 2009 WL 1886160, at *15-16.   There, the Court reduced an award for expert witness fees to reflect the time the expert witness worked on the unrelated, unsuccessful claims.   See Bell v. Bd. of Educ., 2009 WL 1886160, at *19.   In both Lynn v. State of Maryland and Foley v. Huppe, the courts refused to permit the expert witnesses to testify at all.   See Lynn v. State of Maryland, 295 F. Supp. 2d at 599; Foley v. Huppe, 2012 WL 5467527, at *6.   Here, Flynn testified at trial.   Cf. See Lynn v. State of Maryland, 295 F. Supp. 2d at 599; Foley v. Huppe, 2012 WL 5467527, at *6.   Additionally, the Court has already concluded that all of Ysasi's claims were related.   Flynn's testimony did not concern unrelated claims on which Ysasi was unsuccessful.   Cf. San Francisco Baykeeper v. W. Bay Sanitary Dist., 2011 WL 6012936, at * 12; Bell v. Bd. of Educ., 2009 WL 1886160, at *19.   Accordingly, the Court will not reduce Flynn's testimony, because he testified and because his testimony concerned claims on which Ysasi succeeded or which were related to Ysasi's successful claims.

Second, while the Court limited Flynn's testimony, see Defendants' MIL MOO at 17, the Court limited Flynn's testimony because of the Defendants' MIL, which was filed seven days before trial, see Defendants' MIL at 1 (filed on February 11, 2014).   The Court held a hearing on the Defendants' MIL on Thursday February 13, 2014 -- five days before trial (two of which were on the weekend and one was a federal holiday).   See Feb. 13, 2014, Tr. at 83:16-88:17 (Blenden, Childress, Court).   Despite this limitation, Flynn still testified.   Ysasi may have presented Flynn's testimony at trial, despite the limitations, because either: (i) he had already invested so much money into Flynn that he decided to get something out of his investment; or (ii) Ysasi thought that Flynn's testimony was valuable and would have still hired Flynn despite the limitations.   Either scenario warrants the Court awarding Ysasi costs for Flynn's testimony.   In the first scenario, Ysasi presented Flynn's testimony, because Ysasi had already invested so much money into Flynn that it was too late to recoup or lessen his losses.   The reason that Ysasi was unable to lessen his losses was the Defendants' late filing of their MIL.   They filed the MIL a week before trial.   If they filed their MIL earlier, Ysasi might have decided to stop investing into Flynn and would not have presented Flynn's testimony at trial.   The Defendants' timing of their motion may thus have contributed, in some part, to Ysasi's costs incurred as a result of Flynn's testimony.   In the second scenario, Ysasi would have hired Flynn regardless of the Court's ruling in the Defendants' MIL MOO.   If Ysasi hired Flynn to testify to only his limited testimony, then none of his testimony would have been limited, and the Defendants would not request a reduction in fees.   Instead, Ysasi initially asked Flynn to testify above and beyond this limited testimony.   In both situations, however, Ysasi would have spent about the same amount of money on Flynn.

As stated earlier, while the Defendants do not dispute the reasonableness of these costs or that Ysasi expended the asserted amounts, Ysasi has not provided any documentation supporting his requested costs.   Ysasi may supplement his Motion and provide the Court with documentation, such as receipts or affidavits, within seven days of this Memorandum Opinion and Order being entered.   If Ysasi fails to supplement the Motion, the Defendants may move for the Court to reconsider this portion of the award, and deny Ysasi's requested costs for Flynn's fees and for the depositions.   Without any further documentation, the Court will grant the Defendants' motion to reconsider and will deny Ysasi's requested costs.   Until that happens, the Court will grant Ysasi's requested costs of $10,228.74.

**IT IS ORDERED** that the Motion for Award of Attorney's Fees, Tax and Costs, filed March 24, 2014 (Doc. 94)("Motion), is granted in part and denied in part.   Ysasi's attorneys are awarded $125,045.52 in fees: $42,600.00 for Mr. Blenden; $55,341.97 for Mr. Proctor; and $27,103.55 for Mr. Fredlund.   Additionally, the Court awards Mr. Fredlund $15.80 in copying costs.   The Court also awards Ysasi $10,228.74 in costs for expert witness fees and for depositions, bringing Ysasi's total award to $135,290.06.   Ysasi may supplement his Motion within seven days and provide the Court with documentation supporting his requested costs.   If Ysasi fails to supplement the Motion, the Defendants may move for the Court to reconsider that portion of the Court's award, and to deny Ysasi's costs for expert witness fees and for depositions. Without sufficient documentation, the Court will grant the Defendants' motion and will not award Ysasi these costs.

---

Flynn's preparation would have been about the same whether he gave an expansive opinion or an abbreviated opinion.   The Court should not punish Ysasi -- or more specifically, his attorneys -- because he initially asked Flynn to provide less restrictive testimony.   The Court will thus not reduce Flynn's expert witness fees even though the Court limited some of Flynn's testimony.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Jon C. Fredlund
Fredlund & Bryan
Hobbs, New Mexico

- and -

Max Houston Proctor
Hobbs, New Mexico

- and -

Dick A. Blenden
Blenden Law Firm P.A.
Carlsbad, New Mexico

 *Attorneys for the Plaintiff*

Ronald J. Childress
Elaine R. Dailey
Klecan & Childress
Albuquerque, New Mexico

 *Attorneys for the Defendants*